**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK**

_____

 NEW YORK, et al.,

               **Plaintiffs,**                     6:08-cv-644 (LEK/GJD)

     **v.**

**KEMPTHORNE, et al.,**

               **Defendants.**

_____

### DEFENDANT-INTERVENOR ONEIDA NATION'S ANSWER
### TO PLAINTIFFS' AMENDED COMPLAINT

Defendant-Intervenor Oneida Nation of New York, by counsel and pursuant to Fed. R. Civ. P. 8(b)-(c) and 12(a)-(b), answers as follows the amended complaint filed in this action by Plaintiffs State of New York, Governor David A. Paterson, Attorney General Andrew M. Cuomo, Madison County, and Oneida County.

**A.**      **First Defense:  Admissions and Denials**

Plaintiffs' amended complaint is not the short and plain statement of Plaintiffs' claims that is required by the Fed. R. Civ. P. 8(a)(2).  This is due to its length – sixty pages that include 269 numbered paragraphs.  It is due to the use of multiple allegations in each of those paragraphs.  It is due to the excessive use of legal argumentation, characterization of judicial decisions and statement of opinions, instead of factual allegation.  It is due to Plaintiffs' decision to take the relevant administrative trust regulation, to separate out each item listed as a possible consideration with respect to a trust transfer, and then to make each consideration the basis for a

separate cause of action.  The result is seventeen causes of action, most of which should have been pleaded as one APA claim challenging the trust decision at issue in this case.  And it is due to the inclusion of extraneous or irrelevant matters that should be stricken under Fed. R. Civ. P. 12(f).  In short, the amended complaint is at best a rambling brief, not a proper complaint readily susceptible of direct and short admission or denial.  By answering the amended complaint pursuant to Fed. R. Civ. P. 12, the Nation does not waive the argument that the complaint should be dismissed, or that much of it should be stricken, for the reasons set forth above.

The following admissions and denials respond to the specific numbered paragraphs in the amended complaint and to the prayer for relief at the end of that complaint.

1.      Admitted that the Secretary of the Interior has decided to accept from the Nation a conveyance of 13,003.89 acres of land owned by the Nation and located in Madison County and in Oneida County, the land thereafter to be held in trust by the United States for the benefit of the Nation pursuant to 25 U.S.C. § 465.  Admitted that the trust land decision is reflected in a record of decision (ROD) issued on behalf of the Secretary of the Interior on May 20, 2008 and did so for the purposes explained in the record of decision.  Admitted that the State of New York and its political subdivisions cannot tax or regulate land held by the United States in trust for the Nation's benefit, and that transfer of land to the United States to be held in trust will serve that purpose.  Admitted that Plaintiffs sue to overturn the trust land decision.  Admitted that the Nation has fee simple title to the land that was the subject of the May 20, 2008 record of decision.  Otherwise, denied.

2.      Denied.

3.      Denied.

4.     Admitted that the Nation recommended Malcolm Pirnie, Inc., to serve as a Department of Interior contractor and cooperated with Malcolm Pirnie and the Department during the trust process.  Otherwise, denied.

5.     Admitted that a purpose of the IRA was to stop allotment and another was to redress the loss of allotted lands.  Otherwise, denied.

6.     Admitted that the Nation owns and operates a profitable resort and casino property.  Otherwise, denied.

7.     Admitted that the ROD and federal law do not restrict the Nation's right to request under 25 U.S.C. § 465 that the Department of the Interior consider accepting transfer to the United States of additional land to be held in trust for the Nation, and that such requests might be made in the future.  Otherwise, denied.

8.     Denied.

9.     Admitted that Plaintiffs are as alleged and that they claim a right to sue under and to obtain relief under the specified statutes.  Otherwise, denied, including that Plaintiffs have stated a claim or are entitled to relief.

10.     Admitted that there is subject matter jurisdiction under 28 U.S.C. § 1331 for some, but not all, of the claims the complaint attempts to allege.  Otherwise, denied, including that there is subject matter jurisdiction regarding the seventeenth cause of action.

11.     Admitted that 28 U.S.C. §§ 2201 and 2202 authorize federal courts, where appropriate, to provide declaratory remedies and, in connection therewith, to issue injunctions.

Admitted that there exists an actual controversy as to some, but not all, of the claims the complaint attempts to allege.   Otherwise, denied, including that Plaintiffs are entitled to declaratory or injunctive relief, or any other relief and that there is an actual controversy regarding the fifteenth cause of action.

12.    Admitted as to some, but not all, of the claims the complaint attempts to allege, but, as to the entire complaint, denied that the decision for which review is sought is that of defendant Franklin Keel.  Denied further that the APA authorizes judicial review regarding the seventeenth cause of action.

13.    Admitted that the United States District Court for the Northern District of New York is a proper venue for this action.

14.    Admitted that the State of New York is body politic with many elements of sovereignty.  Otherwise, denied.

15.    Admitted.

16.    Admitted.

17.    Admitted.

18.    Admitted, except denied that Oneida County had its current boundaries or size in 1798, because thereafter parts of Oneida County were used to make up three other counties.

19.    Admitted as of the filing of suit.  Denied as of the filing of this answer.

20.    Admitted as of the filing of suit.  Denied as of the filing of this answer.  Admitted that he was one of the officials who bore responsibility for the trust land decision at issue here.

21.     Admitted as of the filing of suit.  Denied as of the filing of this answer.  Admitted that she was one of the officials who bore responsibility for the trust land decision at issue here.

22.     Admitted that he is Director for the Eastern Regional Office.  Otherwise, denied.

23.     Admitted.

24.     Admitted that, if the determination is sustained, title to the land at issue will be transferred from the Nation to the United States of America, which will record fee title in its name in trust for the Nation.

25.     Admitted that from 1795 forward the State obtained most of the referenced lands through unfair, deceptive and illegal transactions, and alienated some of it by division in severalty, a form of allotment of tribal land to individual Oneidas.  Otherwise, denied, including that the lands were ceded to New York rather than reserved from cession in 1788.

26.     Admitted that the illegal state actions introduced increasing numbers of non-Indians into area and reduced the number of Oneidas in the areas, as was the intention of the illegality.  Otherwise, denied, including that the land in Oneida hands dwindled to 32 acres.

27.     Admitted that many Oneidas moved to Wisconsin and to Canada and began new tribes there.  Admitted that the listed entities, not all of which are Indian tribes, have filed federal actions alleging a right to a remedy of some sort for past alienation of some of the lands involved in the challenged trust decision.  Otherwise, denied.

28.     Admitted that since the mid-1900s the area has been populated predominately by non-Indians, because the State illegally purchased the Oneidas' land for non-Indian use and for

the purpose of selling it to non-Indians.  Admitted that the populations in Madison County and Oneida County are roughly as alleged.  It is not possible to admit or deny the allegation concerning the percentage of Indians and Alaska Natives that "are recorded," because there is no indication what recording the allegation is about, and so the allegation is denied.

29.     Admitted that the town, villages and counties that exist today as political subdivisions of the State of New York were established in the late eighteenth century and in the nineteenth century, in the place of tribal lands and Indian villages and settlements that had been illegally wrested from the Oneidas.  Admitted that the State and its political subdivisions have exercised jurisdiction over most of the lands at issue for most of the past 200 years, whether legally or not.  Otherwise, denied.

30.     Admitted that the Nation acquired possession by purchase and registered fee simple title to approximately 17,000 acres of land beginning in the early 1990s.  Admitted that the purchases were funded in part by gaming profits.  Otherwise, denied.

31.     Admitted that, in the early 1990s, the Nation sought to and did negotiate a compact with the State that would permit it to conduct casino type gaming under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, et seq.  The remaining allegations are Plaintiffs' characterizations of federal statutes, and they require neither admission nor denial.

32.     Admitted.

33.     Admitted that the Nation constructed a gaming facility on restricted, treaty-acknowledged reservation land that the Nation had reacquired possession of through purchase,

to which it had fee title, and which was located in Verona, New York.  Admitted that the Nation

commenced operation of gaming at the site.  Otherwise, denied.

34.     Denied.

35.     Denied.

36.     Admitted that the Nation operates the referenced casino.  Otherwise, denied.

37.     Admitted that the Turning Stone Resort & Casino is profitable.  Otherwise,

denied.

38.     Admitted that the report is approximately accurately described.  Otherwise,

denied, including that revenues equate meaningfully to any per member number.

39.     Admitted that the EBITDA figure is approximately correct.  Otherwise, denied,

including that EBITDA computes meaningfully to any per member number.

40.     Admitted that the transfer is approximately accurately described.  Otherwise,

denied, including that such transfer equates meaningfully to any per member number.

41.     Denied.

42.     Admitted that the Nation operates some of the listed businesses.  Otherwise,

denied.

43.     Denied.

44.     Denied.

45.     Admitted that the Nation sued to challenge the legality of state and local real property taxation as to certain Oneida lands.  The other allegations concern Plaintiffs' legal opinions about  interpretation of a court decision and therefore require neither admission nor denial.

46.     The allegations concern Plaintiffs' legal opinions about interpretation of a court decision and therefore require neither admission nor denial.

47.     Admitted that the Court's opinion included the quoted sentence, with quotations and citations omitted.  Otherwise, the allegations are Plaintiffs' legal opinion concerning interpretation of a judicial decision and require neither admission nor denial.

48.     Denied.

49.     Admitted that the referenced letter referred to a policy not to accept a trust transfer of lands encumbered by tax liens and referred to the Sherrill decision as eliminating federal tax immunity, and that the letter was written before the United States District Court for the Northern District of New York ruled that the Nation is not subject to foreclosure to enforce tax liens and the land is exempt from property taxation under state law.  Otherwise, denied.

50.     Admitted that part of the trust application submitted on behalf of the Nation on April 5, 2005 included a two-page letter from Nation Representative Ray Halbritter and that the letter and accompanying documents were submitted to the Director or the Eastern Regional Office of the BIA, a part of the Department of the Interior.

51.     Upon information and belief, admitted that the Department of the Interior gave roughly the stated advice to Governor Pataki or his staff or delegees on some date.

52.     Upon information and belief, admitted that the Department of the Interior gave roughly the described request and deadlines.

53.     The land is more accurately and fully described in the administrative record, but admitted that the allegations are an approximate summary.

54.     The land is more accurately and fully described in the administrative record, but admitted that the allegations are an approximate summary.

55.     The land is more accurately and fully described in the administrative record, but admitted that the allegations are an approximate summary and that the Stockbridge-Munsee Community of Wisconsin has an asserted, without basis in law or fact, an interest in some of the land.

56.     Admitted that the United States has not previously acted under the Indian Reorganization Act to accept a trust land transfer in New York.  Otherwise, denied, including that the United States has never acquired land in trust for a New York Indian tribe, that having been done at least for the Tuscaroras.

57.     Admitted that this case concerns a large transfer of land to be held in trust. Admitted that, although there is no statute specifically mandating a trust transfer as to the Oneida Nation, in terms, 25 U.S.C. § 465 authorizes the transfer, which also is consistent with federal enforcement of the Treaty of Canandaigua and other federal treaties and the Nonintercourse Act, 25 U.S.C. § 177.  Otherwise, denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Admitted that the DOI undertook to draft an EIS.  Otherwise, denied, including that an EIS was required by NEPA.

62.     Denied.

63.     Denied.

64.     Admitted that the Department of the Interior retained Malcolm Pirnie as an independent contractor and that the Nation had recommended Malcolm Pirnie for the assignment.  Otherwise, denied.

65.     Admitted that the Department of the Interior, the Nation and Malcolm Pirnie entered into a Memorandum of Agreement.  Otherwise, denied.

66.     Admitted that a scoping report is done near the outset of the EIS process, and that it identifies issues to be considered.

67.     Admitted that the Department of the Interior considered the views of the Nation with respect to the scoping report.  Admitted that Plaintiffs failed for a substantial time to agree to and sign the agreement required for them to be cooperating agencies.  Otherwise, denied.

68.     The Nation is without sufficient information to admit or deny the allegations.

69.     Admitted that Plaintiffs made FOIA requests.  Otherwise, denied.

70.     The Nation is without sufficient information to admit or deny these allegations.

71.     The Nation is without sufficient information to admit or deny these allegations.

72.     The Nation is without sufficient information to admit or deny these allegations.

73.     The Nation is without sufficient information to admit or deny these allegations.

74.     The Nation is without sufficient information to admit or deny these allegations.

75.     The Nation is without sufficient information to admit or deny these allegations.

76.     The Nation is without sufficient information to admit or deny these allegations.

77.     Admitted that the Nation retained Mr. Sansonetti, a private attorney, to represent the Nation in connection with the trust process, that he filed lobbying disclosure forms in connection with that legal representation as required by law, that from some time in 2001 to some time in 2005 he had been the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, that ENRD had involvement in the Oneida land claim case in which the United States was a party, that he had limited involvement in that case, and that, from 1990 to 1993, he had been the Solicitor at the United States Department of the Interior.  Otherwise, denied, including the implication that there was anything wrong with the Nation's retention of counsel.

78.     Admitted that Mr. Sansonetti joined the specified law firm and that the Nation retained the firm so that its lawyers could provide legal representation in connection with the trust process, and that the firm or its lawyers filed lobbing disclosure forms as required by law. Otherwise, denied, including that there was anything wrong with the Nation's retention of counsel.

11

79.     Admitted.

80.     Admitted that Mr. Sansonetti, a lawyer for the Nation, invited Mr. Cason to visit the Nation, and that Mr. Cason visited the Nation, and as well the local and county governments, who also contacted Mr. Cason to invite him to visit.  Admitted that Mr. Sansonetti contacted Mr. Cason to advocate in support of the Nation's trust application, including regarding the preferred alternative in 2007, as did lawyers for officials of the state, local and county governments regarding their respective positions.  Admitted that Plaintiffs were provided a document referring to a "final entreaty" and that the EIS shows the entreaty failed.  Otherwise, denied.

81.     Admitted that Alternative B concerned study of the effect of ultimately taking 35,000 acres into trust.  Otherwise, denied, including that section 465 requires tribal ownership of land as a precondition to its acquisition by the United States to be held in trust.

82.     Admitted that the draft EIS was circulated and that Plaintiffs provided extensive, exclusively-negative comments, including with respect to taxation/jurisdiction scenarios and the other listed matters.  Admitted that others commented.  Otherwise, denied, including particularly that there were defects or deficiencies in the draft EIS.

83.     Denied.

84.     Admitted that, in the final EIS, Alternative I was formulated based on earlier alternatives and was selected as the preferred alternative, and that Alternative I involved a possible trust transfer of 13,086 acres of land.  Otherwise, denied.

85.     Denied.

86.    Admitted.

87.    Denied.

88.    Admitted that the ROD contains a discussion of nine alternatives denominated A through I and that the Counties proposed an alternative.  Otherwise, denied.

89.    Admitted that the ROD sets forth percentages of land in each county that might be taken into trust and notes that land within the Town of Verona and the VVS School District would be taken into trust, and that the summary at page 19 does not state a percentage of land in particular towns that might be taken into trust.  Otherwise, denied.

90.    Denied.

91.    Admitted that the ROD considers and does not ignore the effect of voluntary payments made by the Nation to county and local governments.  Otherwise, denied.

92.    Admitted that some years ago that the Nation stopped Silver Covenant payments to the referenced school district.  Regarding the percentage of land owned by the Nation in the referenced school district, the Nation is without sufficient information or knowledge about the acreage of the entire school district to admit or deny the allegation.  Otherwise, denied.

93.    Admitted that the Nation implemented a different formula to calculate payments to the referenced fire department for service.  Otherwise, denied.

94.    Denied.

95.    Admitted that the ROD evaluates the impact of closure of all Nation enterprises, including its Turning Stone Resort & Casino.  Admitted that Plaintiffs insist that Turning Stone

may operate only if the land under it is taken into trust.  Admitted that the ROD indicates that the Department of the Interior disputes that Turning Stone would close if land were not taken into trust.  Otherwise, denied.

96.  Denied.

97.  Denied.

98.  The responses to paragraphs 1 to 97, above, are incorporated here by reference.

99.  This paragraph concerns Plaintiffs' legal opinion concerning federal law and thus does not call for admission or denial.

100.  Denied.

101.  Admitted that the Department of the Interior has trust obligations to Indian tribes and is a trustee of all Indian lands.  Otherwise, denied.

102.  Denied.

103.  The responses to paragraphs 1 to 102, above, are incorporated here by reference.

104.  This paragraph concerns Plaintiffs' legal opinion concerning a provision of the Constitution and thus does not call for admission or denial.

105.  Denied.

106.  Denied.

107.    Admitted that a portion of the Constitution is correctly quoted.   Otherwise, denied.

108.    Admitted that the State opposes the trust decision.   Otherwise, denied, including that the State's consent is required.

109.    Admitted that a portion of the Constitution is correctly quoted.   Otherwise, denied.

110.    Denied.

111.    The responses to paragraphs 1 to 110, above, are incorporated here by reference.

112.    This paragraph concerns Plaintiffs' legal opinion concerning the history, meaning or interpretation of federal statutes and thus does not call for admission or denial.   Otherwise, admitted that the referenced statutory provision was a part of the Indian Reorganization Act and that one purpose of the Act was to stop allotments of Indian lands and to reverse the effect of earlier allotments, and denied in all other respects.

113.    Admitted that section 478 contains the quoted language.   Otherwise, denied, including that the allegations assert compliance with the statutory requirements for voting under sections 478 and 478a and that the Oneidas validly voted against application of the IRA.

114.    Denied.

115.    Denied.

116.    Admitted that the ROD refers explicitly to section 2202 and not to section 2201 and that those sections contain the quoted words.

15

117.    Denied.

118.    Admitted that section 465 contains the quoted words.  Otherwise, denied.

119.    Admitted that section 465 contains the quoted words.  Otherwise, denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    The responses to paragraphs 1 to 122 above, are incorporated here by reference.

124.    Admitted that the allegation concerns a statutory purpose.  Otherwise denied, including that the statutory purpose was restricted.

125.    Denied.

126.    Admitted that Nation businesses have, overall, been successful and that the Nation is able to manage its affairs, and otherwise denied.

127.    Admitted that there are tax liens and that the Department of the Interior's policy has been to accept marketable title to property conveyed to the United States to be held in trust, which sometimes requires tax liens to be cleared prior to execution of a transfer of title to the United States.  Otherwise, denied.

128.    Denied.

129.    The responses to paragraphs 1 to 128 above, are incorporated here by reference.

130.    Admitted.

131.    Denied.

132.    Admitted that the Nation recommended Malcolm Pirnie to DOI as a qualified contractor, that DOI selected Malcolm Pirnie and contracted with the company, and that the Nation was a third party fee payer that paid the contractor's bills in accordance with regular agency practice.  Otherwise, denied.

133.    Admitted that the State and Counties were not parties to the referenced memorandum of understanding among the applicant, the contractor and the contracting agency, because the State and Counties were none of those things.  Admitted that the State and Counties were not asked regarding selection of a consultant for the Department of the Interior. Otherwise, denied.

134.    Admitted that that the second two sentences are approximately accurate descriptions of the referenced documents.  Otherwise, denied.

135.    Admitted that lawyers for the Nation submitted the referenced letter, that it sought approval of Malcolm Pirnie as consultant to the Department of the Interior, and that attached to the letter were materials that included publicly available materials assembled in support of the letter.  Otherwise, denied.

136.    Denied.

137.    Admitted that Malcolm Pirnie prepared a preliminary outline and that the outline contains the quoted words.  Otherwise, denied.

138.    The responses to paragraphs 69 to 76, above, are incorporated here by reference. Otherwise, the Nation is without sufficient knowledge or information to admit or deny the allegations of this paragraph.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    The responses to paragraphs 1 to 142 above, are incorporated here by reference.

144.    Denied.

145.    Admitted that the referenced sections contains the quoted language.   Otherwise, denied.

146.    Denied.

147.    Denied.

148.    Admitted.

149.    Denied.

150.    Denied.

151.    The responses to paragraphs 1 to 150 above, are incorporated here by reference.

152.   Admitted.

153.   Admitted that the ROD contains the quoted words.  Otherwise, denied.

154.   Denied.

155.   Denied.

156.   Admitted that the Nation's casino resort, governmental offices and housing occupy more than 1,000 acres.  Otherwise, denied.

157.   Denied.

158.   The responses to paragraphs 1 to 157 above, are incorporated here by reference.

159.   Admitted that the cited regulation so directs the Secretary.  Otherwise, denied.

160.   Admitted that an actual transfer of the Nation's lands to the United States to be held in trust would immunize them from local property taxation, that local governments now bill the Nation for millions of dollars in taxes that they assert are property taxes and that local governments could increase those tax bills in the future.  Otherwise, denied.

161.   Admitted that the Nation has a recent history of economically and socially successful use of properties returned to the Nation's possession.  Otherwise, denied.

162.   The Nation is without sufficient information to admit or deny these allegations.

163.   The Nation is without sufficient information to admit or deny these allegations.

164.   The Nation is without sufficient information to admit or deny these allegations.  .

165.    Admitted that the two counties have billed but not collected taxes approximately in the amounts alleged.  Otherwise, denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Admitted as to the second sentence. Otherwise, denied.

170.    Admitted that the record of decision refers to the Nation's commitment with respect to surrounding communities and that it contains the quoted words.  Otherwise, denied.

171.    Denied

172.    Admitted that the ROD contains the referenced text.  Otherwise, denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    The responses to paragraphs 1 to 175 above, are incorporated here by reference.

177.    Admitted as to the first sentence.  Otherwise, denied.

178.    Denied.

179.    Denied.

180.    Admitted that the regulations were promulgated prior to the *Sherrill* decision, which specifically points to the regulations, 25 C.F.R. § 151.10, as the proper means of the Nation to begin to exercise sovereignty over land.  Otherwise, denied.

181.    Denied.

182.    Denied.

183.    Denied.

184.    Admitted that state environmental laws do not apply on Nation land.  Otherwise, denied.

185.    Admitted that many state laws and regulations may not apply to Nation lands after they are transferred to the United States to be held in trust.  Otherwise, denied.

186.    Denied.

187.    Denied.

188.    Admitted that the record of decision acknowledges the absence of building permits and zoning approvals and that it contains the quoted words.  Otherwise, denied.

189.    Admitted that some of the land on which Turning Stone Resort & Casino is located at a rural New York State Throughway Exit, that much of it was unused or was used to grow corn from time to time, and that nearby land around the Thruway exit was and is either used by the State of New York for toll booths, paved parking lots or to store heavy road equipment, salt and the like.  Admitted that the casino at Turning Stone has a gaming floor

exceeding 120,000 feet and that adjacent or nearby are an arena and a twenty-story hotel. Admitted that the ROD contains the quoted words.  Otherwise, denied.

190.    Admitted that the record of decision contains the quoted words and refers to the Nation's history of meeting or exceeding state environmental laws.  Otherwise, denied.

191.    Denied.

192.    The responses to paragraphs 1 to 191 above, are incorporated here by reference.

193.    Admitted.

194.    Admitted that the record of decision discusses the Department's past administration of trust land and its ability to administer land to be received from the Nation and held in trust and that much of the discussion occupies less than one page.  Otherwise, denied.

195.    Admitted that the quoted words are in the record of decision, which explained that the United States would gain little additional responsibilities as a consequence of the trust acquisition under analysis, particularly since the Nation is able to manage its lands.

196.    Denied.

197.    Admitted that the referenced regional office is about 800 miles from Central New York.  Otherwise, denied.

198.    The responses to paragraphs 1 to 197 above, are incorporated here by reference.

199.    Admitted.

200.    Admitted that the referenced statement is technically accurate.  Otherwise, denied.

201.    Admitted that, after discussions, the Nation gave access to National Grid, that National Grid determined the pipeline was damaged, and that it is likely that the pipeline was damaged by a contractor during a Nation construction project.  The Nation is without sufficient information to admit or deny the allegation regarding "Dig Safely" notification.  Otherwise, denied, including the allegation that the allegations regarding the pipeline are an "example."

202.    Admitted that the Nation built a helipad without prior notice to National Grid. Otherwise, denied.

203.    Admitted that New York has laws regarding prior notification.  Otherwise, the Nation is without sufficient information to admit or deny the allegations in this paragraph.

204.    Admitted that the City of Oneida provides sewer service to most properties within the city and has easements on Nation property within the city.  Admitted that all sewer systems may pose health and safety concerns, including those that are improperly maintained. Otherwise, denied.

205.    Denied.

206.    Denied.

207.    The responses to paragraphs 1 to 206 above, are incorporated here by reference.

208.    Admitted that the regulation contains the quoted words.  Otherwise, denied.

209.    Denied.

210.    Admitted that the first clause in this paragraph correctly summarizes material in the ROD.  Otherwise, denied.

211.    Admitted that the letters of credit have not yet eliminated any tax liens that exist. Otherwise, denied.

212.    Denied.

213.    Denied.

214.    Denied.

215.    Denied.

216.    Denied.

217.    The responses to paragraphs 1 to 216 above, are incorporated here by reference.

218.    Denied.

219.    Denied.

220.    Denied.

221.    Admitted that the regulation contains the quoted words.  Otherwise, denied.

222.    Admitted that the record of decision and final environmental impact statement evaluate the four taxation/jurisdiction scenarios and that two of them are labeled as alleged. Otherwise, denied.

223.    Admitted that the record of decision states that the Department of the Interior disputes the CC-AEC scenario.  Otherwise, denied.

224.    Admitted that the record of decision evaluates the PTNP-DC scenario, which assumes a continuing, unresolved property tax dispute.  Otherwise, denied.

225.    Admitted that the final environmental impact statements takes into account the likelihood that the Nation will act consistently with federal law and will take various state and local laws into consideration.  Otherwise, denied.

226.    Denied.

227.    Admitted that the Nation built a co-generation plant, Turning Stone Resort & Casino and golf courses.  Otherwise, denied.

228.    Denied.

229.    Denied.

230.    Denied.

231.    Denied.

232.    Denied.

233.    Denied.

234.    The responses to paragraphs 1 to 233 above, are incorporated here by reference.

235.    Admitted that the record of decision contains the quoted words.   Otherwise, denied.

236.    This paragraph asserts Plaintiffs' legal opinion concerning the meaning or interpretation of administrative regulations, is not factual and does not call for admission or denial.

237.    Admitted that the record of decision contains the quoted words.   Otherwise, denied.

238.    Denied.

239.    Denied.

240.    The responses to paragraphs 1 to 239 above, are incorporated here by reference.

241.    The responses to paragraphs 69 to 76, above, are incorporated here by reference. Otherwise, the Nation is without sufficient knowledge or information to admit or deny the allegations of this paragraph.

242.    The Nation is without sufficient knowledge or information to admit or deny the allegation of this paragraph.

243.    Denied.

244.    This paragraph asserts Plaintiffs' view concerning the meaning or interpretation of a federal statute and in that respect does not call for admission or denial.

245.    The Nation is without sufficient knowledge or information to admit or deny the allegations of this paragraph.

246.    The Nation is without sufficient knowledge or information to admit or deny the allegations of this paragraph.

247.    The Nation is without sufficient knowledge or information to admit or deny the allegations of this paragraph.

248.    The Nation is without sufficient knowledge or information to admit or deny the allegations of this paragraph.

249.    The Nation is without sufficient knowledge or information to admit or deny the allegations of this paragraph.

250.    The Nation is without sufficient knowledge or information to admit or deny the allegations of this paragraph, except it is denied that Plaintiffs approached the trust process with good faith.

251.    Denied.

252.    Denied.

253.    The Nation is without sufficient information to admit or deny an allegation that there was a FOIA violation.

254.    Denied.

255.    Denied.

256.    The responses to paragraphs 1 to 255 above, are incorporated here by reference.

257.   Admitted that the regulation contains the quoted language.  Denied that the added italics properly convey the meaning of the regulation, or that NEPA required an EIS here.

258.   The responses to paragraphs 240 to 245 are incorporated here.

259.   Denied.

260.   Denied.

261.   The responses to paragraphs 1 to 255 above, are incorporated here by reference.

262.   Admitted.

263.   Admitted.

264.   Denied.

265.   Denied.

266.    This paragraph asserts Plaintiffs' view concerning the meaning or interpretation of an administrative guidance document and in that respect does not call for admission or denial.

267.   Admitted that the Secretary of the Interior has not made the referenced findings and has not obtained gubernatorial concurrence.  Otherwise, denied.

268.   Admitted that the record of decision contains the quoted words.  Otherwise, denied.

269.   Denied.

270.    Denied that Plaintiffs are entitled to any of the relief for which they have prayed in their prayer for relief.  Instead, the Court should enter judgment against Plaintiffs, in favor of defendant and intervenor, dismissing this action and awarding intervenor costs and such other relief as they may be entitled to, whether at law, in equity or otherwise.

271.    All allegations in the complaint not specifically admitted above are denied.

**B.    Second Defense:  Sovereign Immunity**

272.    The doctrine of tribal sovereign immunity bars the seventeenth cause of action.

**C.    Third Defense:  Lack of Equity, and Unclean Hands**

273.    The injunctive/equitable relief sought by Plaintiffs is barred because it would be inequitable to award it.

274.    Plaintiffs' claims are barred by the doctrine of unclean hands.

**D.    Fourth Defense:  Failure to State a Claim**

275.    The complaint fails to state a claim upon which relief can be granted.

**E.    Fifth Defense:  Lack of Subject Matter Jurisdiction**

276.    The Court lacks jurisdiction over the subject matter in Plaintiffs' seventeenth cause of action.

**F.      Sixth Defense:  Lack of Standing**

277.    Plaintiffs lack standing, including without limitation as to the seventeenth cause of action.

**G.      Seventh Defense:  Failure to Comply with Short and Plain Statement Requirement**

278.    The complaint should be dismissed for failure to comply with Rule 8(a)'s requirements, or, alternatively, much of it should be stricken under Rule 12(f).

Dated:  January 30, 2008                              Respectfully submitted,


                                         ___/s/_____
                                         Peter D. Carmen (501504)
                                         Meghan Murphy Beakman (512471)
                                         Oneida Nation Legal Department
                                         Oneida Nation of New York
                                         5218 Patrick Road
                                         Verona, New York  13478
                                         (315) 361-8687 (telephone)
                                         (315) 361-8009 (facsimile)
                                         pcarmen@oneida-nation.org


                                         -and-


                                         ___/s/_____
                                         Michael R. Smith (601277)
                                         David A. Reiser
                                         ZUCKERMAN SPAEDER LLP
                                         1800 M Street, N.W.
                                         Washington, D.C. 20036
                                         (202) 778-1800  (telephone)
                                         (202) 822-8106 (facsimile)
                                         msmith@zuckerman.com


                                         *Attorneys for Oneida Nation of New York*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August 2008 I filed the foregoing with the Clerk of Court via the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.


    /s/
Peter D. Carmen