UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK; DAVID A. PATERSON,
in his capacity as Governor of the State of New York;
ANDREW M. CUOMO, in his capacity as Attorney
General of the State of New York; MADISON COUNTY,
NEW YORK; and ONEIDA COUNTY, NEW YORK,

                              Plaintiffs,

     -against-                                    6:08-CV-644 (LEK/GJD)

KENNETH SALAZAR,[1] Secretary, United States
Department of the Interior; JAMES E. CASON,
Associate Deputy Secretary of the Interior; P. LYNN
SCARLET, Deputy Secretary of the Interior; FRANKLIN
KEEL, Eastern Regional Director, Bureau of Indian Affairs;
UNITED STATES DEPARTMENT OF THE INTERIOR,
BUREAU OF INDIAN AFFAIRS; UNITED STATES
DEPARTMENT OF THE INTERIOR; UNITED STATES
OF AMERICA; JAMES A. WILLIAMS, Acting Administrator,
United States General Services Administration; UNITED
STATES GENERAL SERVICES ADMINISTRATION,

                              Defendants,

     -and-

ONEIDA NATION OF NEW YORK,

                              Intervenor Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

        Plaintiffs filed this action on June 19, 2008, challenging a May 20, 2008 Record of Decision

("ROD") in which the United States Department of the Interior ("DOI") decided to accept over

13,000 acres of land in central New York into trust for the benefit of the Intervenor Defendant the

_____

        [1] On January 20, 2009, Kenneth Salazar was confirmed as the Secretary of the United States
Department of the Interior and, therefore, replaces Dirk Kempthorne as a Defendant in this action
pursuant to Federal Rule of Civil Procedure 25(d).  See FED. R. CIV. P. 25(d).

Oneida Nation of New York ("Oneida Indian Nation" or "OIN").  Plaintiffs filed their Second

Amended and Supplemental Complaint on February 12, 2009, adding five claims related to the

DOI's acceptance of administrative custody over an 18-acre parcel – which previously had been

used by the United States as an annex to the Griffiss Air Force Base – to be held in trust for the

benefit of the OIN.  See Second Am. Compl. (Dkt. No. 94).

　　　Presently before the Court are five Motions: Motions filed by Defendants (Dkt. No. 36) and

the OIN (Dkt. No. 51) seeking dismissal of Plaintiffs' First, Second and Seventeenth Causes of

Action; a Motion filed by Plaintiffs seeking summary judgment on their Third Cause of Action

(Dkt. No. 57); and Motions filed by Defendants (Dkt. No. 111) and the OIN (Dkt. No. 110) seeking

dismissal of Plaintiffs' five supplemental claims.  For the reasons that follow, Defendants' and the

OIN's Motions to dismiss are granted, and Plaintiffs' Motion for summary judgment is denied.

## I.　　BACKGROUND[2]

　　　On April 4, 2005, the OIN submitted a request to the DOI's Bureau of Indian Affairs

("BIA") requesting that the Secretary of the Interior (the "Secretary") take approximately 17,370

acres in trust for the OIN.  ROD at 2, 6 (Dkt. No. 57, Attach. 3).  The request included 330 parcels,

---

　　　[2] The above-captioned case is one of several filed in this Court by different plaintiffs raising
challenges to various aspects of the DOI's May 20, 2008 Record of Decision.  See 5:08-CV-633;
5:08-CV-648; 5:08-CV-649; 6:08-CV-647; 6:08-CV-660.  These cases represent only the latest
chapter in a long saga of litigation involving the OIN's land claims in New York.  For a more
detailed historical background of the OIN and this litigation, see, for example, the Supreme Court's
opinion in City of Sherrill, New York v. Oneida Indian Nation of New York ("Sherrill"), 544 U.S.
197 (2005); the Second Circuit's opinion in Oneida Indian Nation of New York v. City of Sherrill,
New York ("Oneida Indian Nation"), 337 F.3d 139 (2d Cir. 2003) (reversed by the Supreme Court
in Sherrill); or this Court's opinions in Oneida Indian Nation of New York v. New York, 500 F.
Supp. 2d 128 (N.D.N.Y. 2007) and Oneida Indian Nation of New York v. New York, 194 F. Supp.
2d 104 (N.D.N.Y. 2002).

or 440 tax lots, all owned by the OIN and located in Madison County and Oneida County, New

York.  Id. at 6.  According to the ROD, the OIN "submitted its fee-to-trust request in response" to

the Supreme Court's decision in Sherrill.  Id.

Pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq.,

the DOI issued a draft Environmental Impact Statement ("EIS") regarding the proposed fee-to-trust

request on November 24, 2006.  ROD at 2, 6.  Public comments were solicited until February 22,

2007, and public hearings were held on December 14, 2006 and February 6, 2007.  Id. at 2, 6.  The

DOI issued its final EIS on February 22, 2008.  Id. at 2, 7.  On May 20, 2008, the DOI, "based on

the Department's review of the Draft EIS, the Final EIS, comments received from the public,

Federal agencies, State agencies, local governmental entities, and potentially affected Indian tribes,

and the applicable statutory and regulatory criteria for acquiring title to lands in trust status[,]"

issued its decision to accept approximately 13,003.89 acres in trust for the OIN.  Id. at 2.

Plaintiffs filed their Complaint in this action on June 19, 2008 (Dkt. No. 1), and amended

their Complaint on July 15, 2008 (Dkt. No. 19).  On September 30, 2008, Defendants filed the

presently pending Motion for partial dismissal.  Dkt. No. 36.  The OIN moved to intervene on

October 1, 2008.  Dkt. No. 37.  The Court granted that motion on November 5, 2008.  Dkt. No. 48.

The OIN filed a Motion seeking partial dismissal on November 10, 2008.  Dkt. No. 51.  On

November 17, 2008, Plaintiffs filed their summary judgment Motion.  Dkt. No. 57.

On January 7, 2009, the Defendants filed a Notice of Administrative Action ("Notice")

pursuant to 40 U.S.C. § 523,[3] alerting the Court and the other parties that:

---

[3] 40 U.S.C. § 523(a) provides that:

The Administrator of General Services shall prescribe procedures necessary to transfer

> [O]n December 30, 2008, the Bureau of Indian Affairs formally acknowledged receipt of administrative custody and accountability for the former United States Air Force Space Command Complex at the Verona Research Facility, Germany Road, Verona, New York.  Such property is held in trust by the Secretary of the Interior for the Oneida Indian Nation of New York.  The trust acquisition was mandated by 40 U.S.C. § 523, and accordingly was non-discretionary. . . .
>
> The property accepted into trust is not part of the land the Department of the Interior proposes to accept into trust pursuant to the May 20, 2008 Record of Decision that is the subject of [this case and related cases].

Dkt. No. 72.

The land at issue in the December 30, 2008 Notice consists of an 18.195 acre parcel located in Verona, New York.  See Defs.' Mem. in Supp. at 4 (Dkt. No. 111, Attach. 1).  The land was acquired in fee by the United States in 1952 from a private landowner.  See id.; Second Am. Compl. ¶¶ 107, 109.  The United States used the 18-acre parcel as part of the Verona Test site, an annex to the Griffiss Air Force Base.  See Second Am. Compl. ¶ 114; Defs.' Mem. in Supp. at 4.  Griffiss Air Force Base closed in 1995, and the Air Force vacated the Verona Test Site in 1996.  See Defs.' Mem. in Supp. at 4; Second Am. Compl. ¶¶ 116-17.  On January 23, 2001, the Air Force issued a Report of Excess Real Property for the 18-acre parcel of the former Verona Test Site.  Dkt. No. 111, Attach. 4.

In a letter dated May 24, 2002, DOI informed the General Services Administration ("GSA")

_____

> to the Secretary of the Interior, without compensation, excess real property located within the reservation of any group, band, or tribe of Indians that is recognized as eligible for services by the Bureau of Indian Affairs.

40 U.S.C. § 523(a).  40 U.S.C. § 523(b) provides in relevant part that "the Secretary shall hold excess real property transferred under this section in trust for the benefit and use of the group, band, or tribe of Indians, within whose reservation the excess real property is located."  40 U.S.C. § 523(b).

that "[a]s to whether the Verona Test Site is situated within the reservation set aside for the Oneida Indian Nation by the Treaty of Canandaigua, our research reveals that the test site is indeed located within the exterior boundaries of the 1794 reservation."  Dkt. No. 111, Attach. 6.  On May 28, 2002, GSA issued a letter stating that it "hereby transfers the Property to the BIA to be held in trust by the Department of the Interior, for the benefit and use of the Oneidas . . . ."  Dkt. No. 111, Attach. 7. DOI acknowledged custody and accountability for the 18-acre parcel per the Notice issued on December 30, 2008.  Dkt. No. 72.

On February 10, 2009, the parties stipulated to the filing of a Second Amended and Supplemental Complaint, and the Court approved that stipulation on February 11, 2009.  Dkt. Nos. 91, 92.  Plaintiffs' Second Amended and Supplemental Complaint contains seventeen causes of action challenging DOI's May 20, 2008 decision to accept over 13,000 acres in trust for the OIN, as well as five causes of action challenging DOI's December 30, 2008 acknowledgment of administrative custody over the 18-acre parcel.  See generally Second Am. Compl.  Plaintiffs have asserted constitutional, statutory, and regulatory claims, alleging, *inter alia*, violations of the non-delegation doctrine; the Tenth Amendment; the land into trust provision of the Indian Reorganization Act, 25 U.S.C. § 465; the regulations in 25 C.F.R. part 151; NEPA; the Freedom of Information Act; and the Indian Gaming Regulatory Act ("IGRA").  See generally Second Am. Compl.  Plaintiffs seek, *inter alia*, a declaratory judgment that the Defendants' action in taking the subject lands into trust was unlawful; an injunction prohibiting Defendants from taking any of the subject lands into trust; a declaratory judgment that the 18-acre transfer is null and void; and an injunction prohibiting Defendants from transferring any other excess or surplus federal land into trust for the OIN.  Id. at 73-74.  The Court held oral argument on the pending Motions on June 24,

2009.  See Tr. (Dkt. No. 130).

## II.    DEFENDANTS' AND THE OIN'S MOTIONS TO DISMISS

### A.    Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept the allegations made by the non-moving party as true and "draw all inferences in the light most favorable" to the non-moving party.  In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95 (2d Cir. 2007).  "The movant's burden is very substantial, as '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotation and citations omitted)).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113 (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)).  In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court "'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir.

6

2008) (quoting <u>Merritt v. Shuttle, Inc.</u>, 245 F.3d 182, 186 (2d Cir. 2001)).  A defendant's challenge

to a plaintiff's constitutional standing to sue is properly brought under Rule 12(b)(1).  <u>See</u> <u>Alliance</u>

<u>for Environmental Renewal, Inc. v. Pyramid Crossgates Co.</u>, 436 F.3d 82, 89 n.6 (2d Cir. 2006)

("Although we have noted that standing challenges have sometimes been brought under Rule

12(b)(6), as well as Rule 12(b)(1) . . . the proper procedural route is a motion under Rule 12(b)(1).")

(internal citations omitted).

### B.     Non-Delegation Doctrine

Defendants and the OIN move to dismiss Plaintiffs' First Cause of Action, which alleges

that Section 465 of the Indian Reorganization Act (the "IRA"), 25 U.S.C § 465 ("Section 465"), is

an unconstitutional delegation of legislative authority.  Defs.' Motion to dismiss (Dkt. No. 36);

OIN's Motion to dismiss (Dkt. No. 51); Second Am. Compl. ¶¶ 132-136.  In their Complaint,

Plaintiffs specifically aver that:

> Section 465 violates [the non-delegation doctrine] by giving the Secretary of the Interior
> unbounded discretion to acquire land "for the purpose of providing land for Indians."
> The statute contains no limiting standards.  The regulations, which cannot in any event
> provide a standard where the statute contains none, are similarly lacking in any
> meaningful standard.  Those regulations merely list factors that the Secretary should
> consider when taking land into trust, but place no boundaries upon that authority.

Second Am. Compl. ¶ 134.

Article I, § 1, of the Constitution vests "all legislative powers herein granted . . . in a

Congress of the United States."  U.S. CONST. art. I, § 1.  Accordingly, Congress "is not permitted to

abdicate, or to transfer to others, the essential legislative functions with which it is vested."  <u>Panama</u>

<u>Refining Co. v. Ryan</u>, 293 U.S. 388, 421 (1935); <u>see also</u> <u>Whitman v. Am. Trucking Ass'ns</u>, 531

U.S. 457, 472 (2001); <u>Mistretta v. United States</u>, 488 U.S. 361, 371 (1989) ("The nondelegation

doctrine is rooted in the principle of separation of powers that underlies our tripartite system of government.").  However, the Supreme Court has recognized that "Congress simply cannot do its job absent an ability to delegate power under broad general directives" and therefore Congress may confer decision making authority on agencies.  Mistretta, 488 U.S. at 372.  "[W]hen Congress confers decision-making authority upon agencies, Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to perform.'"  Whitman, 531 U.S. at 472 (quoting J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)).  The Supreme Court "has deemed it 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'"  Mistretta, 488 U.S. at 372-73 (quoting Am. Power & Light Co. v. SEC, 328 U.S. 90, 105 (1946)).

Plaintiffs argue that Section 465 lacks the requisite intelligible standard and therefore is an unconstitutional delegation of legislative authority.  "In a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency."  See Whitman, 531 U.S. at 472.  In pertinent part, Section 465 provides:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.
>                                        ***
> Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

25 U.S.C. § 465.

8

Every court to consider a delegation challenge to Section 465 has rejected it and found that agency regulations sufficiently limit the Secretary of the Interior's discretion.  See, e.g., Michigan Gaming Opposition v. Kempthorne, 525 F.3d 23, 33 (D.C. Cir. 2008); Carcieri v. Norton, 497 F.3d 15, 43 (1st Cir. 2007) (en banc), rev'd on other grounds sub nom. Carcieri v. Salazar, ___ U.S. ___, 129 S. Ct. 1058 (2009); South Dakota v. United States Dep't of Interior, 423 F.3d 790, 799 (8th Cir. 2005) ("South Dakota II");[4] United States v. Roberts, 185 F.3d 1125, 1137 (10th Cir. 1999); Shivwitz Band v. Utah, 428 F.3d 966, 972-74 (10th Cir. 2005); Nevada v. United States, 221 F. Supp. 2d 1241, 1250-51 (D. Nev. 2002).  In support of this repeatedly rejected delegation challenge, Plaintiffs primarily rely on South Dakota v. United States Dep't of Interior, 69 F.3d 878 (8th Cir. 1995) ("South Dakota I") and Michigan Gaming Opposition v. Kempthorne.  Pls.' Opp'n to Defs.' Mot. to dismiss at 23-25 (Dkt. No. 61).  Neither of these opinions, however, has any precedential value nor are they persuasive.  Plaintiffs cite to the dissent in Michigan Gaming Opposition, and South Dakota I was vacated by the Supreme Court, 519 U.S. at 919-20.  In fact, on remand, the Eighth Circuit held that Section 465 contains standards sufficient to guide the Secretary of the Interior's exercise of discretion, and therefore the delegation challenge failed.  See South Dakota II, 423 F.3d 790.

Further, in its most recent delegation challenge decision, the Supreme Court stated that it has "almost never felt qualified to second-guess Congress regarding permissible degrees of policy judgment that can be left to those executing or applying the law."  Whitman, 531 U.S. at 474-75.  In

_____

[4]  In South Dakota v. United States Dep't of Interiors, 69 F.3d 878 (8th Cir. 1995), the Eighth Circuit held that Section 465 was an unconstitutional delegation of legislative power because "providing land for Indians" did not provide an intelligible standard.  However, the Eighth Circuit reversed its holding en banc in South Dakota II.

9

fact, only twice in its history, and not since 1935, has the Supreme Court invalidated a statute on the grounds of excessive delegation of legislative authority.  The Supreme Court has upheld the constitutionality of statutes promulgated for the "public interest," as well as to ensure fairness and equity.  See, e.g., Nat'l Broad. Co. v. United States, 319 U.S. 190, 225-26 (1943); New York Cent. Sec. Corp. v. United States, 287 U.S. 12, 24-25 (1932); Am. Power & Light Co., 328 U.S. at 104-05; Yakus v. United States, 321 U.S. 414, 420 (1944).

The statutory preamble describes the IRA as "[a]n Act to conserve and develop Indian lands and resources."  48 Stat. 984 (1934).  "The intent and purpose of the [IRA] was 'to rehabilitate the Indian's economic life and give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'"  Mescalero Apache Tribe v. Jones, 411 U.S. 145, 152-154 (quoting H.R. Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934)).  It is clear that the IRA and Section 465, more specifically, were promulgated in the public interest and to ensure fairness and equity.  Moreover, "an intelligible principle exists in the statutory phrase 'for the purpose of providing land for Indians' when it is viewed in the statutory and historical context of the IRA."  Michigan Gaming Opposition, 525 F.3d at 31 (quoting 25 U.S.C. § 465).  "This principle involves providing lands sufficient to enable Indians to achieve self-support and ameliorating the damage resulting from . . . prior federal policy."  Id. (internal citations and quotations omitted).

This Court similarly will not second-guess Congress and joins every other federal court that has addressed this issue in finding that Section 465 is not an unconstitutional delegation of legislative authority.  Accordingly, Plaintiffs' facial challenge to Section 465 is dismissed.

**C.**     **Tenth Amendment**

In their Second Cause of Action, Plaintiffs allege that Section 465, as applied, violates the

10

Tenth Amendment.  <u>See</u> Second Am. Compl. ¶¶ 137-44.  Plaintiffs contend that "Section 465 far exceeds the power granted to Congress to regulate commerce with the Indian tribes, is unauthorized by any other provision of the U.S. Constitution, and deprives the State of its sovereignty with respect to lands taken into trust."  <u>Id.</u> ¶ 144.  Defendants and the OIN contend that this claim must be dismissed on the grounds that the Secretary's action was a valid exercise of authority pursuant to the Indian Commerce Clause.  <u>See</u> Defs.' Motion to dismiss (Dkt. No. 36); OIN's Motion to dismiss (Dkt. No. 51).

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. CONST. amend. X.  "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress."  <u>New York v. United States</u>, 505 U.S. 144, 156 (1992) (citations omitted).

Plaintiffs' Tenth Amendment claim must be dismissed, as Section 465 represents a valid exercise of congressional authority pursuant to the Indian Commerce Clause.[5]  Pursuant to the

---

[5] Plaintiffs' Second Cause of Action presents an issue of first impression in the Second Circuit and has been addressed only sparingly by other courts.  In <u>Carcieri v. Kempthorne</u>, 497 F.3d 15 (1st Cir. 2007) (en banc) (reversed on other grounds), the State of Rhode Island and associated plaintiffs challenged the DOI's decision to accept a 31-acre parcel of land into trust for an Indian Tribe.  The plaintiffs brought numerous statutory and constitutional claims, including a Tenth Amendment challenge.  The First Circuit affirmed the District Court's grant of summary judgment for the DOI on all claims.  As to the Tenth Amendment claim, the First Circuit held that "[b]ecause Congress has plenary authority to regulate Indian affairs, section 465 of the IRA does not offend the Tenth Amendment."  497 F.3d at 40 (citation omitted).  The plaintiffs petitioned for certiori on various grounds, but not on the Tenth Amendment claim.  In <u>Carcieri v. Salazar</u>, ___ U.S. ___, 129 S. Ct. 1058 (2009), the Supreme Court reversed the First Circuit on statutory grounds.

Indian Commerce Clause, Congress has the power "[t]o regulate commerce . . . with the Indian tribes[.]" U.S. CONST. art. I, § 8, cl. 3.  As the Supreme Court has repeatedly noted, Congress possesses plenary authority to legislate in matters involving Indian affairs.  See, e.g., United States v. Lara, 541 U.S. 193, 200 (2004) (describing Congress' powers to legislate in respect to Indian matters as "plenary and exclusive"); South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 343 (1998) ("Congress possesses plenary power over Indian affairs, including the power to modify or eliminate tribal rights."); Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 192 (1989) ("[T]he central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs[.]") (citing Morton v. Mancari, 417 U.S. 535, 551-52 (1974)).  "With the adoption of the Constitution, Indian relations became the exclusive province of federal law." County of Oneida v. Oneida Indian Nation of New York, 470 U.S. 226, 234 (1985).

Given the Supreme Court's broad interpretation of the Indian Commerce Clause, the Secretary's determination to take land into trust for the OIN pursuant to Section 465 must be read as a valid exercise of the power delegated to Congress by the Constitution.  As the Secretary's authority to take land into trust for Indians springs from powers delegated to Congress in Article I, Section 465 as applied herein does not implicate the Tenth Amendment.  See New York, 505 U.S. at 156.

Plaintiffs also cite to the Enclave Clause in support of their Tenth Amendment claim.  See Second Am. Compl. ¶¶ 141-42.  The Enclave Clause provides that Congress has the power "to exercise exclusive Legislation in all Cases . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts . . . and other needful Buildings[.]" U.S. CONST. art. I, § 8, cl. 17.  Defendants' and the OIN's Motions address the

Enclave Clause issue as a distinct claim.  However, Plaintiffs contend that they "do not assert a claim under the Enclave Clause" in their Second Cause of Action, but rather cite the Enclave Clause "as an example of the particularity used by the Framers . . . when they intended to permit land within a state to be removed from state jurisdiction."  Mem. in Opp'n at 46 (Dkt. No. 61).  Regardless, the Enclave Clause is not implicated by the DOI's accepting land into trust pursuant to Section 465.  Accepting land into trust does not amount to exclusive federal jurisdiction over the subject land, as would be required for the Enclave Clause to apply.  See Nevada v. Hicks, 533 U.S. 353, 361 (2001) ("Our cases make clear that the Indians' right to make their own laws and be governed by them does not exclude all state regulatory authority on the reservation.  State sovereignty does not end at a reservation's border."); Surplus Trading Co. v. Cook, 281 U.S. 647, 651 (1930) (noting that an Indian reservation represents a "typical illustration" of federally owned land that does not implicate the Enclave Clause).

Accordingly, Plaintiffs' Second Cause of Action is dismissed.[6]

**D.    Indian Gaming Regulatory Act**

In their Seventeenth Cause of Action, Plaintiffs claim that the Secretary's determination to take land into trust for the OIN violates the Indian Gaming Regulatory Act ("IGRA").  See Second Am. Compl. ¶¶ 295-303.  It is undisputed that the ROD includes the land where the Turning Stone

---

[6] Plaintiffs further argue that its citizens "cannot operate a republic government . . . if the United States can unilaterally remove unlimited amounts of land from the jurisdiction of the state, and confer on some other, quasi-sovereign entity the right to make and enforce laws on such removed areas."  Mem. in Opp'n at 48.  The Court agrees that the Constitution might be implicated if the Federal Government sought to remove "unlimited" amounts of land from a state's jurisdiction; however, that is not the situation presented here.

13

Casino is located.  Plaintiffs contend that IGRA prohibits Class III gaming[7] on lands acquired in trust without the Secretary determining that doing so "would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community," and without obtaining the consent of the Governor.  25 U.S.C. § 2719(b)(1)(A).

Defendants argue that Plaintiffs fail to state a claim pursuant to IGRA for two reasons: (1) because the Turning Stone Casino is situated within the boundaries of the OIN reservation, the Secretary need not comply with 25 U.S.C. § 2719(b)(1)(A) before taking the subject land into trust; and (2) the plain language of IGRA (25 U.S.C. § 2719(c))[8] expressly states that it does not affect the Secretary's authority to take land into trust.  See Defs.' Motion to dismiss (Dkt. No. 36).  The OIN moves to dismiss this claim for the same reasons, and in addition, argues that because IGRA does not authorize suits to enforce 25 U.S.C. § 2719 ("Section 2719"), there is no federal jurisdiction over this claim.  See OIN's Motion to dismiss (Dkt. No. 51).

IGRA establishes the requirements for lawful Class III gaming on Indian lands.  See 25 U.S.C. § 2710(d).  IGRA defines "Indian lands" as including, *inter alia*, "all lands within the limits of any Indian reservation[.]"  25 U.S.C. § 2703(4)(A).  Section 2719 provides, in relevant part, that:

(a) Prohibition on lands acquired in trust by Secretary

Except as provided in subsection (b) of this section, gaming regulated by this chapter shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988, unless–

---

[7] Class III gaming is defined in IGRA as "all forms of gaming that are not class I gaming or class II gaming[,]" 25 U.S.C. § 2703(8), and "includes such things as slot machines, casino games, banking card games, dog racing, and lotteries."  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 48 (1996).

[8] 25 U.S.C. § 2719(c) provides that "[n]othing in this section shall affect or diminish the authority and responsibility of the Secretary to take land into trust."

14

(1) such lands are located within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988; or

* * *

(b) Exceptions

(1) Subsection (a) of this section will not apply when–

(A) the Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination; or

* * *

(c) Authority of Secretary not affected

Nothing in this section shall affect or diminish the authority and responsibility of the Secretary to take land into trust.

25 U.S.C. § 2719.

Plaintiffs' IGRA claim must be dismissed.  Because the Turning Stone Casino is within the boundaries of the OIN reservation, the procedures required by 25 U.S.C. § 2719(b)(1)(A) do not apply.  In Oneida Indian Nation, in a series of consolidated cases, the OIN brought suit against the City of Sherrill and Madison County, New York, alleging that properties once part of the OIN's ancestral land that OIN members had reacquired on the open market were within the OIN reservation and therefore not subject to taxation.  The Second Circuit held, *inter alia*, that the OIN reservation, as recognized by the 1794 Treaty of Canandaigua, has never been disestablished, and that therefore the lands were not subject to taxation.  337 F.3d at 160-65, 167; see id. at 165 ("Construing the Buffalo Creek Treaty liberally and resolving, as we must, all ambiguities in the

15

Oneidas' favor, we conclude that neither its text nor the circumstances surrounding its passage and implementation establish a clear congressional purpose to disestablish or diminish the OIN reservation.").

In Sherrill, the Supreme Court reversed and remanded, holding that "'standards of federal Indian Law and federal equity practice' preclude the Tribe from rekindling embers of sovereignty that long ago grew cold." 544 U.S. at 214.  The Supreme Court noted how the "long lapse of time, during which the Oneidas did not seek to revive their sovereign control through equitable relief in court, and the attendant dramatic changes in the character of the properties, preclude OIN from gaining the disruptive remedy it now seeks." Sherrill, 544 U.S. at 216-17.  However, the Supreme Court noted that it "need not decide today whether, contrary to the Second Circuit's determination, the 1838 Treaty of Buffalo Creek disestablished the Oneida's reservation, as Sherrill argues." 544 U.S. at 216 n.9.

Plaintiffs argue that sovereignty is a distinguishing characteristic of an Indian reservation, and that accordingly the OIN reservation must be considered disestablished because the Supreme Court's decision in Sherrill confirmed that the OIN cannot exercise sovereignty over lands reacquired in fee after over a century of non-tribal ownership.  However, the Second Circuit's holding in Oneida Indian Nation that the OIN reservation has not been disestablished remains binding precedent on this Court.  In Oneida Indian Nation of New York v. Madison County, 401 F. Supp. 2d 219 (N.D.N.Y. 2005) (Hurd, J.), Madison County unsuccessfully argued that relying upon the Second Circuit's holding that the Oneida reservation was not disestablished is contrary to the Supreme Court's decision in Sherrill.  Judge Hurd concluded that, because the Supreme Court "explicitly declined to decide whether the Second Circuit erred in determining that the reservation

was disestablished . . . the Second Circuit holding that the reservation was not disestablished remains undisturbed." Oneida, 401 F. Supp. 2d at 231.

This Court agrees that the Second Circuit's holding remains good law. In Sherrill, the Supreme Court not only expressly declined to address the Second Circuit's determination that the OIN reservation had not been disestablished, but also noted that "'only Congress can divest a reservation of its land and diminish its boundaries.'" 544 U.S. at 216 n.9 (quoting Solem v. Bartlett, 465 U.S. 463, 470 (1984) (other citations omitted)); see Solem, 465 U.S. at 470 ("Once a block of land is set aside for an Indian Reservation and no matter what happens to the title of individual plots within the area, the entire block retains its reservation status until Congress explicitly indicates otherwise."). Congress has not divested the OIN of its reservation. Therefore, the Turning Stone Casino is "located within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988." 25 U.S.C. § 2719(a).[9] Accordingly, the provisions of 25 U.S.C. § 2719(b)(1)(A) do not apply, and Plaintiffs' IGRA claim must be dismissed.[10]

**E.      Supplemental Claims**

Plaintiffs assert both constitutional and statutory claims challenging the DOI's December 30, 2008 acknowledgment of administrative custody over the 18-acre parcel which was previously an

---

[9] Plaintiffs also argue in their pleading and papers that the land upon which the Turning Stone Casino is located does not fit within the DOI's definition of Indian reservation in the regulations governing land into trust applications. However, the Court finds this contention to be without merit. For purposes of an IGRA challenge, the Court must look to the definitions within IGRA and its accompanying regulations, and as explained above, the land upon which the Turning Stone Casino is situated clearly fits within "Indian lands" pursuant to IGRA. See 25 U.S.C. § 2703(4)(A).

[10] Based upon the foregoing, the Court need not address the other grounds upon which Defendants and the OIN move for dismissal of this claim.

annex to the Griffiss Air Force Base.  <u>See</u> Second Am. Compl. ¶¶ 304-41.  Defendants contend that

the Plaintiffs' supplemental claims must be dismissed for lack of subject matter jurisdiction.  <u>See</u>

Defs.' Motion to dismiss (Dkt. No. 111).  Specifically, Defendants argue that Plaintiffs'

supplemental claims do not fall within the waiver of sovereign immunity for title challenges

provided by the Quiet Title Act, 28 U.S.C. § 2409a, and that Plaintiffs lack standing to challenge the

transfer of the 18-acre parcel.  Defendants and the OIN also argue that the supplemental claims must

be dismissed for failure to state a claim.  <u>See</u> Defs.' Motion to dismiss (Dkt. No. 111); OIN's

Motion to dismiss (Dkt. No. 110).  As explained below, the Court concludes that Plaintiffs lack

standing to raise their supplemental claims.  Accordingly, these claims are dismissed, and the Court

need not address the other grounds upon which the Defendants and the OIN seek dismissal.

Defendants contend that the Plaintiffs lack standing to challenge the federal government's

determination of how to dispose of its own property among its agencies.  Defendants argue that

Plaintiffs fail to adequately demonstrate an injury in fact because Plaintiffs are not harmed by the

transfer of federal property from one federal agency to another.  Defendants contend that Plaintiffs

cannot complain of any impairment of local and state jurisdiction over the parcel by virtue of the

land being held in trust, as state and local jurisdiction was already impaired by virtue of the land's

ownership by the federal government.  Defendants further argue that even if Plaintiffs could show

injury, this Court cannot provide redress for that injury, as the land would still be owned by the

federal government.

Plaintiffs counter that if the transfer of the 18-acre parcel to the DOI in trust for the OIN is

allowed to stand, Plaintiffs will suffer an injury in fact "because they would be permanently and

significantly deprived of their sovereignty and the ability to tax, regulate or otherwise exercise

jurisdiction over these lands[.]" Mem. in Opp'n at 11 (Dkt. No. 115). Plaintiffs allege that they would also suffer injury because "OIN would be able to develop these lands without proper oversight or compliance with state or local law, thereby putting at risk the governance, health and safety of neighboring landowners and the community." Id.

"[T]he threshold issue of standing [is] 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" Horne v. Flores, ___ U.S. ___, 129 S. Ct. 2579, 2592 (2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Constitutional standing requires a showing of three elements: "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, LLP, 549 F.3d 100, 106-07 (2d Cir. 2008) (emphasis in original) (citing Lujan, 504 U.S. at 560-61). A plaintiff "bears the burden of showing that he has standing for each type of relief sought." Summers v. Earth Island Institute, ___ U.S. ___, 129 S. Ct. 1142, 1149 (2009) (citation omitted).

Plaintiffs have failed to demonstrate an injury-in-fact sufficient to demonstrate their standing to pursue their supplemental claims. In regards to Plaintiffs' first alleged injury – that the transfer would impair Plaintiffs' ability to exercise sovereign jurisdiction over the parcel – the land in question is already owned by the United States. Therefore, state and local jurisdiction is already impaired, although by no means eliminated, by virtue of the federal government's ownership of the land. Even if the land were not held in trust for the OIN, the state's ability to regulate the land is subject to the doctrine of preemption. Accordingly, the Court agrees with Defendants that any

injury Plaintiffs might claim regarding this land stems not from the transfer but from federal

ownership over the land and federal preemption.  Cf. Kleppe v. New Mexico, 426 U.S. 529, 543

(1976) ("Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within

its territory, but Congress equally surely retains the power to enact legislation respecting those lands

pursuant to the Property Clause. . . . And when Congress so acts, the federal legislation necessarily

overrides conflicting state laws under the Supremacy Clause.") (citations omitted).

The Court does not agree with Plaintiffs that "[a]s a fee owner, the United States' rights are

essentially the same as any other fee owner in the absence of a cession of jurisdiction by the State."

Mem. in Opp'n at 10.  In support of their position, Plaintiffs cite to dicta in Fort Leavenworth R.R.

Co. v. Lowe, 114 U.S. 525 (1885).  In Fort Leavenworth, the owner of a railroad challenged the

taxation of the railroad by the state, on the grounds that the track was entirely within a federal

military reservation.  In dicta, the Supreme Court indicated that where the United States acquired

lands without consent of the state to cede jurisdiction, "the possession of the United States, unless

political jurisdiction be ceded to them in some other way, is simply that of an ordinary proprietor."

Fort Leavenworth, 114 U.S. at 531; see id. at 527 (in absence of state's cession of jurisdiction, "[s]o

far as the land constituting the reservation was not used for military purposes, the possession of the

United States was only that of an individual proprietor.").  However, the Supreme Court in Kleppe

noted that the dicta in Fort Leavenworth "fail[ed] to account for the raft of cases in which the

[Property] Clause[11] has been given a broader construction."  Kleppe, 426 U.S. at 539; see also

---

[11] The Property Clause provides that "[t]he Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State."  U.S. CONST. art. IV, § 3, cl. 2.

United States v. Gabrion, 517 F.3d 839, 847 (6th Cir. 2008) ("Indeed, Kleppe certainly appears to support – if not stand for – the broad proposition that the federal government's rights in federally owned property are never merely those of an ordinary proprietor, despite the dicta" in, *inter alia*, Fort Leavenworth).

As the federal government's ownership over the 18-acre parcel is more than that of an ordinary proprietor, Plaintiffs cannot show that their alleged injury is a result of the proposed land-in-trust transfer as opposed to federal ownership of the land. Thus, Plaintiffs also cannot show causation between Defendants' action and the alleged injury. Similarly, Plaintiffs cannot establish that it is likely, as opposed to merely speculative, that their claimed injury would be redressed if Plaintiffs were to succeed on the merits of their supplemental claims. See Lujan, 504 U.S. at 561. Even if the transfer were overturned, the land would still be owned by the federal government, and accordingly, the state's jurisdiction over the land would be subject to federal preemption. Therefore, a favorable decision on the merits of Plaintiffs' claims would not preclude the federal government from using the land in some way that could impair the state's jurisdiction over the land. See Kleppe, 426 U.S. at 543.

The Court further agrees with Defendants that Plaintiffs' second alleged injury – the possible harm posed by the OIN's ability to develop the land without proper state oversight – lacks the imminence necessary to support standing. Plaintiffs do not allege that the OIN is currently developing the land in a manner harmful to Plaintiffs, and there is no indication in the record to suggest that the OIN is planning to develop the land in a manner that would implicate Plaintiffs' concerns. Thus, Plaintiffs' allegations regarding what the OIN might do with the land are too speculative and hypothetical to demonstrate an injury in fact. See Lujan, 504 U.S. at 560 (to support

standing, plaintiffs must have suffered an injury that is "concrete and particularized" and "actual and imminent, not conjectural or hypothetical") (citations and internal quotation marks omitted); <u>see also</u> <u>Sauk County v. United States Dep't of Interior</u>, No. 07-cv-543, 2008 WL 2225680, at *5 (W.D. Wis. May 29, 2008) (finding no standing to challenge DOI's acceptance of land into trust status where plaintiff's asserted environmental injury was based on a "series of speculations"). Accordingly, Plaintiffs lack standing to challenge the DOI's acceptance of administrative custody over the 18-acre parcel, and Plaintiffs' supplemental claims must be dismissed.

## III.   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### A.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>see</u> <u>Beard v. Banks</u>, 548 U.S. 521, 529 (2006) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" <u>Brown v. Henderson</u>, 257 F.3d 246, 251 (2d Cir. 2001) (quoting <u>Cifra v. General Electric Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 586 (1986) (citations omitted).  The nonmovant "must come forth with evidence

sufficient to allow a reasonable jury to find in her favor."  Brown, 257 F.3d at 251 (citation

omitted).  The nonmoving party "may not rely merely on allegations or denials in its own

pleadings;" bald assertions or conjecture unsupported by evidence are insufficient to overcome a

motion for summary judgment.  FED. R. CIV. P. 56(e)(2); see also Carey v. Crescenzi, 923 F.2d 18,

21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### B.    Discussion

Plaintiffs move for summary judgment on their Third Cause of Action on the grounds that

there is no statutory authority for the Secretary to take land into trust for the OIN.  See generally

Mot. for Sum. Judg. (Dkt. No. 57);  Reply to Opp'n to Mot. for Sum. Judg. (Dkt. No. 109).

Specifically, Plaintiffs contend that "25 U.S.C. § 2202 does not apply to the OIN because the OIN

does not fall within the definition of tribe contained in 25 U.S.C § 2201(1)."[12]  Reply at 4.

Defendants and the OIN dispute Plaintiffs' reading of 25 U.S.C. § 2201(1) ("Section 2201(1)") and

contend that land can, in fact, be accepted into trust for the OIN pursuant to Section 465.  See

generally OIN's Opp'n to Mot. for Sum. Judg. (Dkt. No. 84); Defs.' Opp'n to Mot. for Sum. Judg.

(Dkt. No. 87).  For the following reasons, this Court finds that there are extant issues of fact which

preclude the granting of summary judgment on this ground.[13]

---

[12]  Under Section 2201(1), "Indian tribe" or "tribe" means "any Indian tribe, band, group, pueblo, or community for which, or for members of which, the United States holds lands in trust." 25 U.S.C. § 2201(1).

[13]  In their Third Cause of Action, Plaintiffs also allege that:

Section 465 does not authorize the Secretary to take land into trust for the benefit of the OIN for the separate reason that Section 465 authorizes the acquisition of lands only "for the purpose of providing land for Indians."  25 U.S.C. § 479 defines "Indians" for

### i.      Voting to Opt-Out of the IRA

Plaintiffs contend that the United States lacks the authority to take land into trust for the

OIN, pursuant to Section 465 of the IRA, because the OIN voted to reject the IRA.  Mem. in Supp.

at 1 (Dkt. No. 57, Attach. 1).  Plaintiffs rely on section 18 of the IRA, enacted as part of the original

IRA in 1934 and codified at 25 U.S.C. § 478 ("Section 478").  Id.  It provides:

> This Act shall not apply to any reservation wherein a majority of the adult Indians,
> voting at a special election duly called by the Secretary of the Interior, shall vote against
> its application.  It shall be the duty of the Secretary of the Interior, within one year after
> June 18, 1934, to call such an election, which election shall be held by secret ballot upon
> thirty days' notice.

25 U.S.C. § 478.

In 1935, Congress extended the voting deadline and changed the majority vote requirement

from a majority of eligible adults to a majority of those voting, assuming at least thirty percent

(30%) of eligible adults voted.  See 25 U.S.C. § 478a.  A tribe that did not vote, or that did not meet

the statutory requirements, did not, under Section 478, reject the IRA.  Defendants concede that the

OIN opted out of the IRA by tribal vote.  Defs.' Opp'n to Mot. for Sum. Judg. at 2 and n.2.  The

OIN, however, argues that not only is there "an authoritative DOI document collecting tribal votes,"

which proves that they did not vote against the IRA, but also that Plaintiffs have not shown that the

---

> purposes of the IRA to "include all persons of Indian descent who are members of any
> recognized tribe *now* under federal jurisdiction." (emphasis added)[.]  Upon information
> and belief, the OIN does not meet this requirement as the OIN was not a "recognized
> tribe *now* under federal jurisdiction" as of the date of the IRA's enactment in 1934.
> Accordingly, the Secretary may not take the subject land into trust for the benefit of the
> OIN because the IRA, by its express terms, allows land to be taken into trust only for the
> benefit of tribes that were federally recognized as of the IRA's 1934 enactment.

Second Am. Compl. ¶¶ 152-54.  The Court notes that Plaintiffs expressly preserved this issue and
properly "reserve[d] their right to move at a later time for summary judgment on this and other
grounds."  Mem. in Supp. at 6 n.4.

24

requirements for a valid election pursuant to Sections 478 and 478a have been met.  The ROD indicates that the OIN voted to reject the IRA but does not address whether the vote satisfied the statutory requirement.  See Siegfried Aff., Ex. A. at 33 (Dkt. No. 57, Attach. 3); OIN's Statement of Facts ¶ 1 (Dkt. No. 84, Attach 9).  It is, therefore, an issue of fact whether the OIN validly voted to reject the IRA.  However, it is unnecessary to decide whether the OIN rejected the IRA, as Congress enacted the Indian Land Consolidation Act ("ILCA"), 25 U.S.C. § 2202[14] ("Section 2202") to amend or repeal any possible Section 478 trust land disability.  See 25 U.S.C. § 2202.

### ii.  Defining "Tribe" Under 25 U.S.C. § 2201(1)

In the ROD, the DOI invoked Section 2202 as authority for accepting land into trust for the OIN pursuant to Section 465.  See Siegfried Aff., Ex. A. at 33-34 ("In the 1983 Indian Land Consolidation Act, 25 U.S.C. § 2202, Congress extended the provisions of Section 5 to all tribes except as otherwise provided under Federal law.  Therefore, no statutory limitation on acquiring land in trust is applicable to the Nation's request."); OIN's Statement of Facts ¶ 1.  Plaintiffs, however, argue that pursuant to the definition section of ILCA, Section 2201, the OIN are not considered a "tribe."  Mem. in Supp. at 8.

Under Section 2201(1),  "Indian tribe" or "tribe" is defined as "any Indian tribe, band, group, pueblo, or community for which, or for members of which, the United States holds lands in trust." 25 U.S.C. § 2201(1).  Plaintiffs contend that under Section 2201(1), the meaning of "tribe" is restricted to those tribes for which the United States holds land in trust and urge this Court to adopt this reading.  See Mem. in Supp. at 8.  According to Plaintiffs' reasoning, the "all tribes" provision

---

[14]  Section 2202 states that "the provisions of section 465 of this title shall apply to all tribes notwithstanding the provisions of section 478 of this title . . ."  Id.

in Section 2202 would then be restricted to only those entities that already have trust land.  The Defendants and the OIN contest Plaintiffs' reading of the statute.  See OIN's Opp'n to Mot. for Sum. Judg. at 8; Defs.' Opp'n to Mot. for Sum. Judg. at 3.   Defendants and the OIN argue that the statutory purpose, legislative history, and canons of construction refute Plaintiffs' interpretation. This is an issue of first impression.

A principle purpose of both the IRA and ILCA was to restore Indian economic life through expanding tribal land bases.  The IRA was promulgated in 1934 as "[a]n Act to conserve and develop Indian lands and resources."  48 Stat. 984 (1934).  "The intent and purpose of the [IRA] was 'to rehabilitate the Indian's economic life and give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'"  Mescalero Apache Tribe v. Jones, 411 U.S. 145, 152-54 (quoting H.R. Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934)); see also Morton v. Mancari, 417 U.S. 535, 542 (1974) ("The overriding purpose of the [IRA] was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically").  ILCA was subsequently enacted in 1983 to further effectuate this purpose by, inter alia, removing the Section 478 disability and expanding the reach of the IRA and Section 465, specifically.  See H.R. Rep. No. 97-908, 7 (1982) ("Section 203 [25 U.S.C. § 2202] extends the provisions of section 5 of the Act of June 18, 1834 [i.e., the IRA] to all tribes.").  Restricting the definition of "tribe" under Section 2201(1) to only include tribes for which the United States already holds land in trust would vitiate the very purpose and intent of ILCA.[15]

_____

[15]  Even assuming arguendo that this Court was incorrect about Congress' intent and purpose of the IRA and ILCA, which it is not, the DOI's interpretation, which is consonant with that of the Defendants and the OIN, would be entitled to deference.  In determining whether to accept an administrative agency's interpretation of a statute that it is tasked with administering, the Court should first inquire whether:

Further, the canons of statutory construction support giving the word "tribe" a less restricted meaning.

The Supreme Court has stated that according to the rule of the last antecedent, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows. . . ." Barnhart v. Thomas, 540 U.S. 20, 26 (2003).  In Barnhart, the Court construed a statute providing disability benefits to a claimant if "he is not only unable to do his previous work but cannot . . . engage in another kind of substantial gainful work which exists in the national economy." Id. at 21-22.  The question was whether "which exists in the national economy" modifies only the phrase it followed, "another kind of substantial gainful work," or whether it modifies all previous phrases, specifically "his previous work." Id.  The Court of Appeals had read the limiting language to modify all prior phrases.  The Supreme Court said that this was in "disregard[]" of the rule of the last antecedent, under which the limitation at the end of the statute applied only to the last antecedent, not to an earlier phrase in the statute.  Justice Scalia, writing for a unanimous Court, explained "the error of the Third Circuit's perception" that the limitation at the

---

Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter.  If, however, the Court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).  As evidenced by the ROD, the DOI's interpretation of Section 2201(1) is consistent with Defendants and the OIN.  See Siegfried Aff., Ex. A. at 33-34.  In order to uphold the DOI's interpretation, the court need only find that the DOI's interpretation "is a sufficiently rational one." Chem. Mfrs. Ass'n v. Natural Res. Def. Council, Inc., 470 U.S. 116, 125 (1985).  Here, Plaintiffs fail to proffer any argument that pushes the DOI's interpretation "over the edge of reasonable interpretation." Whitman, 531 U.S. at 485.

end of the statute applied to more than the last antecedent:

> Consider, for example, the case of parents who, before leaving their teenage son alone in the house for the weekend, warn him, "You will be punished if you throw a party or engage in any other activity that damages the house." If the son nevertheless throws a party and is caught, he should hardly be able to avoid punishment by arguing that the house was not damaged. The parents proscribed (1) a party, and (2) any other activity that damages the house. As far as appears from what they said, their reasons for prohibiting the home-alone party may have had nothing to do with damage to the house--for instance, the risk that underage drinking or sexual activity would occur. And even if their only concern was to prevent damage, it does not follow from the fact that the same interest underlay both the specific and the general prohibition that proof of impairment of that interest is required for both.

Id. at 27-28.

In Barnhart, the Court relied on FTC v. Mandel Brothers, Inc., 359 U.S. 385 (1959), which construed a statute defining "invoice" as "a written account, memorandum, list, or catalog . . . transported or delivered to a purchaser, consignee, factor, bailee, correspondence, or agent, or any other person who is engaged in dealing commercially in fur products or furs." The Court of Appeals had interpreted "who is engaged in dealing commercially in fur products or furs" as applying to all prior phrases, such as "purchaser" and "consignee." The Supreme Court reversed, holding that the limitation applied only to the last antecedent, "any other person." The "limiting clause is to be applied only to the last antecedent." 359 U.S. at 389 & n.4; see also United States v. Kerley, 416 F.3d 176, 180 & n.2 (2d Cir. 2005) (in statute defining "support obligation" as "any amount determined under a court order or an order of an administrative process pursuant to the law of a State or of an Indian tribe," qualifying phrase "pursuant to, etc." applies to last antecedent, "order of an administrative process," and not to earlier antecedent, "court order"). The Court rejects Plaintiffs' position that the last antecedent rule "make[s] nonsense of the definition" of tribe under

Section 2201(1).[16]  See Reply at 28.

Finally, the Supreme Court has also said that "[w]hen we are faced with . . . two possible constructions [of a statute], our choice between them must be dictated by a principle deeply rooted in th[e] Court's Indian jurisprudence: '[s]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'"  County of Yakima v. Confederated Tribes, 502 U.S. 251, 269 (1992) (quoting Montana v. Blackfeet Tribe, 471 U.S. 759, 766 (1985)); accord County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 247 (1985).  Based on the foregoing discussion, this Court finds that "for which, or for members of which, the United States holds lands in trust" only applies to the last antecedent, "community," and not to the entirety of Section 2201(1).  Accordingly, this Court finds for Defendants and the OIN and denies Plaintiffs' Motion for summary judgment.

## IV.    CONCLUSION

Based on the foregoing discussion, it is hereby

---

[16]  Further, a feature of, or corollary, to the rule of the last antecedent is the rule of punctuation.  It confirms the proper reading of the trust land qualification at the end of Section 2201(1) as applying only to the word "community."  "When a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents."  Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd, 186 F.3d 210, 215 (2d Cir. 1999) (abrogated on other grounds) (for term defined as "clause in a contract or an arbitration agreement, signed by the parties," modifier applied to all antecedents because it was set off by a comma).  Where the comma is not used to set off the modifier, then there is confirmation that the modifier applies only to the last antecedent.  See id. at 216 n.1.

Under this rule of punctuation, it would be necessary to insert a comma, as shown below, to read the trust land qualification at the definition's end as applying to "tribe" and the entire series that comes before, rather than as just applying to the last antecedent, "community," i.e., "Indian tribe" or "tribe" means "any Indian tribe, band, group, pueblo, or community *[,]* for which, or for the members of which, the United States holds land in trust."  Obviously, however, there is no such comma in Section 2201(1).  The absence confirms that the trust land qualification modifies only the antecedent to which it is connected, "community."

**ORDERED**, that Defendants' and Intervenor Defendant's Motions seeking dismissal of Plaintiffs' First, Second, and Seventeenth Causes of Action (Dkt. Nos. 36, 51) are **GRANTED**; and it is further

**ORDERED**, that Defendants' and Intervenor Defendant's Motions seeking dismissal of Plaintiffs' supplemental claims (Dkt. Nos. 110, 111) are **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Motion for summary judgment on their Third Cause of Action (Dkt. No. 57) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:      September 29, 2009
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

30