UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK; DAVID A. PATERSON, in his capacity
as Governor of the State of New York; ANDREW M. CUOMO, in
his capacity as Attorney General of the State of New York;
MADISON COUNTY, NEW YORK; and ONEIDA COUNTY,
NEW YORK,

Plaintiffs,

    – against –

KENNETH L. SALAZAR, Secretary, United States Department of
the Interior; JAMES E. CASON, Associate Deputy Secretary of
the Interior; P. LYNN SCARLETT, Deputy Secretary of the
Interior; FRANKLIN KEEL, Eastern Regional Director, Bureau of
Indian Affairs; UNITED STATES DEPARTMENT OF THE
INTERIOR, BUREAU OF INDIAN AFFAIRS; UNITED
STATES DEPARTMENT OF THE INTERIOR; UNITED
STATES OF AMERICA; JAMES A. WILLIAMS, Acting
Administrator, United States General Services Administration;
UNITED STATES GENERAL SERVICES ADMINISTRATION,

**Civ. Action No.
6:08-cv-00644 (LEK)
(GJD)**

Defendants,

    and

ONEIDA NATION OF NEW YORK,

Defendant-Intervenor.

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH COURT ORDER TO PRODUCE FOIA DOCUMENTS

# **Table of Contents**

Page

Introduction ............................................................................................................. 1

Statement of Facts ................................................................................................... 3

    A.    Associate Deputy Secretary James Cason's Early Promises that Essential Documents would be Available Through FOIA ......................................... 3

    B.    Plaintiffs' FOIA Requests and Government's Obstruction of those Requests ........... 4

    C.    FOIA's Broad Mandate of Disclosure ....................................................... 4

    D.    Plaintiffs' FOIA-based Causes of Action .................................................. 6

    E.    The November 6, 2008 Order requiring FOIA Production by December 31, 2008 .... 6

    F.    The Government's Materially Incomplete and Improper Production on January 2, 2009 ............................................................................................. 6

Argument ................................................................................................................. 7

I.    The Government's Latest Disregard of its FOIA Obligations, in Violation of this Court's November 6, 2008 Order. ................................................................. 7

    A.    The Government Defendants' Violation of the November 6, 2008 Order Warrants an Order to Produce All Documents Responsive to the FOIA Requests and to Stay Further Proceedings until the Government Defendants Comply. .................................................................................... 9

    B.    The Production Was Technically and Procedurally Deficient ..................................... 9

    C.    Documents Were Improperly Withheld Without Explanation ................................... 11

II.    The Government's Privilege Log is Inadequate to Determine whether Privileges and Exemptions were Properly Asserted. ........................................................... 11

    A.    Failure to Identify Author and Recipient ................................................. 12

    B.    Failure to Provide Basic Information about the Documents ..................................... 12

    C.    Failure to Articulate Factual Basis for Assertion of Privilege or Exemption ........... 13

III.    Government Defendants Improperly Rely on Deliberative Process Privilege. .................... 13

    A.    The Deliberative Process Privilege Does Not Apply ................................................. 13

    B.    The Government's Assertion of the Deliberative Process Privilege is in any Event
Overbroad and Legally and Factually Unsupported ................................................... 14

Conclusion .................................................................................................................................. 16

# **Table of Authorities**

Page(s)

Cases

Allocco Recycling, LTD. v. John Doherty,
    220 F.R.D. 407 (S.D.N.Y. 2004) ................................................................................15

Armstrong v. Guccione,
    470 F.3d 89 (2d Cir. 2006)..........................................................................................3

Coastal States Gas Corp. v. DOE,
    617 F.2d 854 (D.C. Cir. 1980) ....................................................................................4

Coopervision, Inc. v. CIBA Vision Corp.,
    No. 2:06CV149, 2007 U.S. Dist. LEXIS 57111 (E.D. Tex. Aug. 6, 2007)..............10

Elec. Privacy Info. Ctr. v. DOJ,
    416 F. Supp. 2d 30 (D.D.C. 2006) ..............................................................................8

Grand Cent. P'ship, Inc. v. Cuomo,
    166 F.3d 473 (2d Cir. 1999).......................................................................................14

Information Network for Responsible Mining v. Bureau of Land Management,
    611 F.Supp. 2d 1178 (D. Colo. 2009)......................................................................5, 8

Nat'l Council of La Raza v. DOJ,
    411 F.3d 350 (2d Cir. 2005)......................................................................................4, 5

Payne Enters. v. U.S.,
    837 F.2d 486 (D.C.C. 1988) ........................................................................................8

Rahman v. Smith & Wollensky Rest. Group, Inc.,
    No. 06 Civ. 6198, 2009 U.S. Dist. LEXIS 30275 (S.D.N.Y. Mar. 18, 2009).....................9, 10

Rein v. United States PTO,
    553 F.3d 353 (4th Cir. 2009) ...........................................................................11, 12, 13, 15

Roberson v. Giuliani,
    346 F.3d 75 (2d Cir. 2003)...........................................................................................3

Spinner v. City of New York,
    No. 01-CV 2715, 2004 U.S. Dist. LEXIS 2541 (S.D.N.Y. Feb. 19, 2004) ..............15

Tigue v. United States DOJ,
    312 F.3d 70 (2d Cir. 2002) cert. denied 538 U.S. 1056 (2003) ................................15

<u>Trugman-Nash, Inc. v. New Zealand Dairy Bd.</u>,
    Nos. 93 Civ 8321 and 8329, 1995 U.S. Dist. LEXIS 1745 (S.D.N.Y. Feb. 14, 1995)............11

<u>Tummino v. Von Eschenbach</u>,
    No. CV 05-366, 2006 U.S. Dist. LEXIS 81286 (E.D.N.Y. Nov. 6, 2006) ..............................13

<u>United States v. Constr. Prod. Research Inc.</u>,
    73 F.3d 464 (2d Cir.) <u>cert. denied,</u> 519 U.S. 927 (1996) .............................................11, 12, 13

**STATUTES**

5 U.S.C. § 552(b)(5) .................................................................................................................13

**OTHER AUTHORITIES**

40 C.F.R. § 1506.6(f) ............................................................................................................5, 8

43 C.F.R. §§ 2.12, 2.13 .............................................................................................................5

Fed. R. Civ. P. 1 .......................................................................................................................9

Fed. R. Civ. P. Rule 25(b)(5) ..................................................................................................11

Fed. R. Civ. P. 34 ........................................................................................................9, 10, 11

Fed. R. Civ. P. Rule 34(E)(i) ...................................................................................................10

Fed. R. Civ. P. Rule 34(E)(i)(ii)..........................................................................................9, 10

Fed. R. Civ. P. Rule 37 .......................................................................................................9, 11

Fed. R. Civ. P. Rule 37(b)(2)(A) ..............................................................................................3

Fed. R. Civ. P. Rule 37(b)(2) ..................................................................................................16

Fed. R. Civ. P. Rule Rule 81....................................................................................................9

Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4, 683
    (January 21, 2009) .............................................................................................................5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK; DAVID A. PATERSON, in his capacity
as Governor of the State of New York; ANDREW M. CUOMO, in
his capacity as Attorney General of the State of New York;
MADISON COUNTY, NEW YORK; and ONEIDA COUNTY,
NEW YORK,

                                                    Plaintiffs,

    – against –

KENNETH L. SALAZAR, Secretary, United States Department of
the Interior; JAMES E. CASON, Associate Deputy Secretary of
the Interior; P. LYNN SCARLETT, Deputy Secretary of the
Interior; FRANKLIN KEEL, Eastern Regional Director, Bureau of
Indian Affairs; UNITED STATES DEPARTMENT OF THE
INTERIOR, BUREAU OF INDIAN AFFAIRS; UNITED
STATES DEPARTMENT OF THE INTERIOR; UNITED
STATES OF AMERICA; JAMES A. WILLIAMS, Acting
Administrator, United States General Services Administration;
UNITED STATES GENERAL SERVICES ADMINISTRATION,

                                                    Defendants,

        and

ONEIDA NATION OF NEW YORK,

                                Defendant-Intervenor.

**Civ. Action No.
6:08-cv-00644 (LEK)
(GJD)**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH COURT ORDER
TO PRODUCE FOIA DOCUMENTS

# <u>Introduction</u>

On November 6, 2008, this Court ordered the Government Defendants to produce by

December 31, 2008 all non-privileged documents responsive to the Freedom of Information Act

requests ("FOIA Requests") served by New York State, Madison County and Oneida County.

These requests relate to the Department of the Interior ("DOI")'s decision to take into trust more

than 13,000 acres of land located in Central New York—land that was settled, developed and until recently owned by non-Indians, and that has been governed, regulated and taxed by New York and its political subdivisions for more than 200 years.  The Department's decision, made for the benefit of the Oneida Indian Nation of New York ("OIN"), is recorded in a Record of Decision ("ROD") dated May 20, 2008.

As set out below, the Government Defendants failed to comply with this Court's November 6, 2008 Order ("Order") by producing a materially incomplete response to the FOIA Requests on January 2, 2009.  Hundreds of documents were improperly withheld or redacted with the government relying on inapplicable or overbroad assertions of privilege and exemption; a substantial number of documents were produced in large electronic files (PDFs) that group discrete documents into a single disorganized, unlabeled, non-indexed format; and other PDF files were produced in corrupt and unreadable form.

The Government Defendants' noncompliance with the Court's Order comes after years of stalling, delays, and broken promises by the DOI.  Indeed, Plaintiffs' FOIA Requests have been delayed and obstructed for more than three years in the case of the Counties' demands, and for more than two years in the case of the States' requests.  Plaintiffs have been denied access to documents needed to properly evaluate and comment on the land-into-trust application, including documents submitted by the OIN to DOI/Bureau of Indian Affairs that purported to inform and support the government's issuance of Draft and Final Environmental Impact Statements, which then framed the ROD.  These documents were material and necessary for the Counties to advance their position.  Indeed, the National Environmental Protection Act ("NEPA") specifically mandates disclosure through FOIA of all documents underlying the issuance of such environmental impact statements.  Even the ROD decision-maker, DOI Associate Deputy

Secretary James Cason, recognized that Plaintiffs were entitled to receive these underlying documents pursuant to FOIA in order to comment on the land-into-trust application and related administrative process. DOI nonetheless failed to produce these documents until long after the ROD was decided.

The Court has inherent power to enforce its orders. See Armstrong v. Guccione, 470 F.3d 89, 103-04 (2d Cir. 2006) (recognizing that when Congress established the lower federal courts, it vested them with the "judicial Power of the United States" which "consisted of all the inherent powers of the courts of justice necessary to their functioning and naturally included the power to enforce their orders"); Roberson v. Giuliani, 346 F.3d 75, 80 (2d Cir. 2003) (observing in the context of a consent decree that "courts have inherent power to enforce the terms of such a decree *because they constitute court orders*") (emphasis added). The Government Defendants should be compelled to obey this Court's November 6, 2008 Order. Plaintiffs request under Fed. R. Civ. P. Rule 37(b)(2)(A) that the Court enter an order requiring the government to comply with the Order. In addition, the Court should stay further proceedings until such time as the Government Defendants have fully complied with the Court's Order to produce documents responsive to Plaintiffs' FOIA requests.

## **Statement of Facts**

The pertinent facts are set forth in the Declaration of David M. Schraver in support of Plaintiffs' Motion to Compel Compliance with Court Order to Produce FOIA Documents, dated October 30, 2009 ("Schraver Decl."), and are summarized below.

A.   Associate Deputy Secretary James Cason's Early Promises that Essential Documents Would be Available Through FOIA

Shortly after the OIN applied to have lands taken into trust, Associate Deputy Secretary James Cason, who assumed the role of ultimate DOI decision-maker and signed the ROD,

assured New York Congressmen Boehlert and McHugh (who represented Oneida County and Madison County, respectively) that "[t]he State and local governments may obtain materials submitted by the OIN in support of its application in accordance with the Freedom of Information Act."  Schraver Decl. ¶ 12.

B.    Plaintiffs' FOIA Requests and Government's Obstruction of those Requests

Plaintiffs served FOIA requests on October 30, 2006, November 20, 2006, January 10, 2007, July 13, 2007, and September 20, 2007 (collectively, "FOIA Requests").  Id. at ¶¶ 19, 35, 42, 49, 57.  These FOIA Requests sought information about the land-into-trust process and assurances that the process complied with the DOI's policies, practices and procedures.  Id. Plaintiffs requested information in three general areas: (1) documents pertaining to the Oneida Indian Nation ("OIN")'s land-into-trust application, including all documents submitted by OIN on behalf of their application; (2) communications between the firm of Holland & Hart and the DOI regarding OIN's application; and (3) reconsideration of the Secretary's approval of a Nation-State Compact governing gaming in New York State.  Id. at ¶ 11.

C.    FOIA's Broad Mandate of Disclosure

FOIA imposes a broad obligation on the part of the government to disclose documents in its possession.  See Nat'l Council of La Raza v. DOJ, 411 F.3d 350, 356 (2d Cir. 2005); Coastal States Gas Corp. v. DOE, 617 F.2d 854, 868 (D.C. Cir. 1980).  In Nat'l Council of La Raza the Second Circuit embraced the broad policy in favor of disclosure:

> FOIA was enacted in order to promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed.  FOIA strongly favors a policy of disclosure and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act.  Consistent with FOIA's purposes, these statutory exemptions are narrowly construed.

411 F.3d at 355-356 (internal citations and quotations omitted).  The President of the United States has directed that "[t]he Freedom of Information Action should be administered with a clear presumption:  In the face of doubt, openness prevails . . . . The presumption of disclosure should be applied to all decisions involving FOIA."  Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4,683 (January 21, 2009).

Pursuant to FOIA regulations, responses are due within 20 working days with a further ten-day extension available to the responding government agency.  See 43 C.F.R. §§ 2.12, 2.13. See also Information Network for Responsible Mining v. Bureau of Land Management, 611 F.Supp. 2d 1178, 1183 (D. Colo. 2009) (noncompliance with statutory response deadlines constitute  FOIA violation and improper withholding of documents under FOIA).

In addition to FOIA's broad mandate of disclosure, NEPA's implementing regulations specifically make "environmental impact statements, the comments received, and any underlying documents available to the public pursuant to [FOIA] . . . ."  40 C.F.R. § 1506.6(f).

Despite FOIA's strong directives in favor of making disclosures to assist the public, NEPA's specific command to disclose documents underlying environmental impact statements, and Associate Deputy Secretary Cason's early assurance that documents would be made available to Plaintiffs under FOIA, the DOI and Department of Justice ("DOJ") proceeded to engage in a pattern of stonewalling that effectively deprived Plaintiffs of their due process rights and their rights under FOIA.

D.      Plaintiffs' FOIA-based Causes of Action

The Fifteenth and Sixteenth Causes of Action in Plaintiffs' Second Amended and

Supplemental Complaint (Dkt #94)[1] set out Plaintiffs' FOIA-based claims.  The Fifteenth

alleges that the Government Defendants violated Plaintiffs' due process rights in connection with

the land-into-trust process, and further alleges a violation of FOIA itself.  See Second Amended

and Supplemental Complaint ¶¶ 274-289.  The Sixteenth alleges that the Government

Defendants violated FOIA by failing to produce documents expressly mandated for disclosure by

the NEPA and NEPA's implementing regulations.  See Second Amended and Supplemental

Complaint ¶¶ 290-294.

E.      The November 6, 2008 Order requiring FOIA Production by December 31, 2008

After Plaintiffs filed their initial complaint challenging the ROD, the parties entered into

a stipulation and order requiring the government to respond to the outstanding FOIA Requests by

no later than December 31, 2008.  That requirement is set forth in the Order dated November 6,

2008.  Schraver Decl. ¶¶ 1, 2; Exh. A (November 6, 2008 Order (Dkt #49)).  As of November 6,

2008, the FOIA Requests had been pending 736 days, 724 days, 666 days, 482 days, and 413

days, respectively.  Id. at ¶ 4.

F.      The Government's Materially Incomplete and Improper Production on
        January 2, 2009

On January 2, 2009, and January 5, 2009, counsel for the Counties and counsel for the

State, respectively, received a package from the DOJ postmarked December 31, 2008 that

included compact discs and correspondence dated December 19, 2008, purporting to comply

---

[1]      See also Complaint dated June 19, 2008 (Dkt #1) at ¶¶ 235-250;  Amended Complaint dated July 15, 2008
(Dkt #19) at ¶¶ 240-255.

with the Order.  Id. at ¶ 5.  The DOJ's letter specifically states that the enclosed document production is in response to the FOIA Requests dated November 20, 2006,  January 10, 2007, July 13, 2007, and September 20, 2007 (the "Production").  Id.

The Production did not address at all the October 30, 2006 FOIA request, even though it has now been pending for three years.  Id. at ¶¶ 9, 10.  Additionally, the DOI improperly, and without explanation, withheld entire records or parts of records responsive to the requests, and withheld or redacted documents that were not exempt or otherwise privileged, and produced the documents (many of which were corrupted or illegible) in a haphazard, unorganized and non-indexed manner.  Id. at ¶¶ 14, 84-107.

The Government Defendants' privilege log shows hundreds of documents were withheld or redacted purportedly based on the deliberative process privilege.  Id. at ¶ 97.  The log entries are facially deficient and do not establish the applicability of the privilege.  Id. at ¶¶ 93-96.  Moreover, as explained in Plaintiffs' Memorandum of Law in support of Plaintiffs' Motion to (A) Compel Production of Administrative Record Documents and (B) Authorize Discovery to Supplement the Record ("Motion to Compel"), the deliberative process privilege is not available to the Government Defendants because Plaintiffs are challenging the decision-making process itself, claiming bias and bad faith pervades the DOI's decision to take into trust 13,000 acres of checker-boarded land stretching across Oneida County and Madison County.  Id. at ¶ 98.

## Argument

**I.      The Government's Latest Disregard of its FOIA Obligations, in Violation of this Court's November 6, 2008 Order.**

The Court ordered that all non-privileged documents responsive to the FOIA Requests be produced by December 31, 2008.  Despite this Order, the Government Defendants' January 2, 2009 Production fell far short of complying with the Court's Order.

Here, the Government Defendants' failure to comply with the November 6, 2008 Order followed a period of years where the DOI reneged on its many promises to produce the documents in response to Plaintiffs' FOIA Requests.  Schraver Decl. ¶ 4.  The multi-year delay in producing the documents prevented Plaintiffs from fully responding to the DEIS and FEIS, and commenting on the ROD, and now impairs Plaintiffs' ability to prosecute the present action, in which Plaintiffs challenge a biased decision and the decision-making process by which it was reached.  Id. at ¶ 14.  Plaintiffs are entitled to all responsive documents.  Plaintiffs' properly sought to obtain relevant documents through FOIA, which the DOI blocked in almost all respects and the Government Defendants continue to block in material respects, despite the Order to produce the FOIA documents.  Id. at ¶ 13.

The Government Defendants violated FOIA and the Order by failing to produce, among other things, documents underlying the DEIS and FEIS.  See 40 C.F.R. § 1506.6(f); Information Network, 611 F.Supp. 2d at 1183 (failure to produce records pursuant to NEPA implementing regulations constitutes continuing FOIA violation).  The documents requested by Plaintiffs were central to the administrative decision-making process.  Plaintiffs were entitled to receive all of the requested documents—and specifically documents underlying the DEIS and FEIS — contemporaneous with the public comment period, not years later.  See Elec. Privacy Info. Ctr. v. DOJ, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006) (a delay in FOIA production that deprives party of timely information and renders the information "stale" and of "little value" constitutes a "cognizable harm . . .[that] will likely be irreparable.").  Indeed, Congress recognizes that delay in complying with FOIA requests is "tantamount to denial."  Id. (citing H.R. Rep. No. 93-876, at 6 (1974)); Payne Enters. v. U.S., 837 F.2d 486, 494 (D.C.C. 1988) ("stale information is of little value").

Plaintiffs have been materially prejudiced by the failure of the Government Defendants to timely respond to their FOIA requests.  The Government Defendants' persistent noncompliance with their FOIA obligation and complete failure to address the October 30, 2006 FOIA Request as required by the Order, warrants action by this Court.

A.   The Government Defendants' Violation of the November 6, 2008 Order Warrants an Order to Produce All Documents Responsive to the FOIA Requests and to Stay Further Proceedings until the Government Defendants Comply.

To date, despite the Court's Order, the October 30, 2006 FOIA request has not been addressed.  Schraver Decl. ¶¶ 9, 34, 83.  The Government Defendants' failure to produce responsive documents pursuant to the Order, after three years, is flagrant if not willful and warrants meaningful action under Rule 37.

B.   The Production Was Technically and Procedurally Deficient

Rule 34 of the Federal Rules of Civil Procedure guides the manner in which document production should occur.[2]  A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.  If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.  Fed. R. Civ. P. Rule 34(E)(i)(ii).

"These rules are intended to prevent parties from 'deliberately [mixing] critical documents with others in the hope of obscuring significance.'  Accordingly, if documents are not produced as they are kept in the usual course of business, federal courts routinely require responding parties to provide documents in some kind of organized, indexed fashion rather than as a mass of undifferentiated, unlabeled documents."  Rahman v. Smith & Wollensky Rest.

---

[2]   The Rules of Civil Procedure govern "the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."  Fed. R. Civ. P. 1.

Group, Inc., No. 06 Civ. 6198, 2009 U.S. Dist. LEXIS 30275, *11-12 (S.D.N.Y. Mar. 18, 2009)

(quoting Fed. R. Civ. P. 34, Advisory Committee's note to 1980 Amendment).

As to the FOIA requests the Government Defendants did address (i.e., those dated

November 20, 2006, January 10, 2007, July 13, 2007 and September 20, 2007), the Production

was procedurally and technically deficient. Schraver Decl. ¶¶ 84-87. These deficiencies

materially impeded the review and analysis of the documents, making the process more time

consuming and more expensive. Id. at ¶ 84.

The Government Defendants' Production improperly consists of "a mass of

undifferentiated, unlabeled documents." Id. at ¶ 85. The Production is rife with "documents"

hundreds of pages in length that upon close review consist of multiple, independent documents—

in some cases requiring Plaintiffs to guess as to where some documents begin and others end. Id.

at ¶ 86. This lack of discrete document identification (referred to by some courts as

"unitization") not only adds significantly to the time and cost required to review and digest the

documents, but also represents a departure from how the documents are used in the ordinary

course of business, in violation of Rule 34(E)(i) and (ii). The production in this fashion is

equivalent to dumping a box of unorganized documents, which is unacceptable under Rule 34.

Coopervision, Inc. v. CIBA Vision Corp., No. 2:06CV149, 2007 U.S. Dist. LEXIS 57111, *13

(E.D. Tex. Aug. 6, 2007) (condemning plaintiff's document production lacking organization and

an index as produced in much the same manner as making "boxes of documents" available).

In addition, a significant number of document images contained in the Production are

corrupt or otherwise unreadable. Schraver Decl. ¶ 87. Producing documents in unreadable form

does not comport with Rule 34(E)(i) and (ii).

By failing to supply the documents in conformity with Rule 34, the Government

Defendants have violated the Court's Order and compliance should be ordered under Rule 37.

      C.     <u>Documents Were Improperly Withheld Without Explanation</u>

Government Defendants withheld, without explanation, documents or parts of documents

responsive to the FOIA Requests.  For example, correspondence Bates-stamped FOIA006720-24

references an enclosed letter from James E. Cason.  Schraver Decl. ¶ 89.  The correspondence

from Mr. Cason was not listed on the privilege log provided by the DOI; however, it was not

enclosed with the Bates-stamped document.  Failure to produce an attachment to a document is

grounds for a Rule 37 order.  <u>Trugman-Nash, Inc. v. New Zealand Dairy Bd.</u>, Nos. 93 Civ 8321

and 8329, 1995 U.S. Dist. LEXIS 1745 (S.D.N.Y. Feb. 14, 1995).

**II.    The Government's Privilege Log is Inadequate to Determine whether Privileges and Exemptions were Properly Asserted.**

Accompanying the Production was a 37-page privilege log purporting to identify

documents that were redacted or withheld.  The privilege log does not  fulfill the Government

Defendants' obligation to provide information sufficient to substantiate the government's

assertions of privilege, including clearly identifying what documents are withheld or redacted,

and clearly stating the reasons for withholding or redacting each document.  <u>See</u> <u>Rein v. United</u>

<u>States PTO</u>, 553 F.3d 353, 366-67 (4th Cir. 2009) (under FOIA government must produce a

privilege log that details the document type (e.g., e-mail, report), date, employees (authors and

recipients), document description/subject, number of pages, whether the document was withheld

in part, the exemption claimed, and other descriptive remarks); <u>United States v. Constr. Prod.</u>

<u>Research Inc.</u>, 73 F.3d 464, 473-74 (2d Cir.) <u>cert. denied</u>, 519 U.S. 927 (1996).  Where a party

fails to comply with the requirements of Rule 25(b)(5), the claim of privilege may be denied.  <u>Id</u>.

The deficiencies in the Government Defendants' privilege log can be broken down generally as follows:

- Failure to provide essential context for the assertion of privilege, including identifying the author and recipient of the documents withheld or redacted;

- Failure to provide basic information about the documents themselves such as the length (if withheld) and what pages are redacted (if produced);

- Failure to provide sufficient information about the content of the document that might support the assertion of exemption or privilege.

A.    Failure to Identify Author and Recipient

By way of example only, certain descriptions within the Government Defendants' privilege log illustrate the unsubstantiated assertions of privilege and exemptions.  Schraver Decl. ¶ 93; Exh. E.  As an initial matter, the Government Defendants failed to provide a directory or other identifying information regarding the individuals listed as "authors" or "addressees" of the documents.  Schraver Decl. ¶ 94.  This is important contextual information necessary to properly evaluate whether the exemption or privilege applies.  Rein, 553 F.3d at 367 (finding that the challenged entries, which fail to provide any information about the document's author or recipient, were inadequate), see Constr. Prod. Research, 73 F.3d at 473-74.  Moreover, in some cases, the Government Defendants entirely omitted the "author" and "addressee" information, simply noting "n/a."  Schraver Decl. ¶ 94.  Such entries do not comply with FOIA disclosure requirements.  Rein, 553 F.3d. at 360.

B.    Failure to Provide Basic Information about the Documents

The privilege log fails to identify the length of any documents withheld or what pages are redacted or withheld.  The Government Defendants also failed to mark what portions of the documents were redacted as opposed to pages that may have been merely blank.  Given that there are approximately 44 documents identified as redacted and 335 documents identified as

withheld, the Government Defendants have placed an unnecessary burden on Plaintiffs in reviewing and challenging (here and in an administrative appeal) the decision to redact and withhold these documents.  The privilege log is deficient for this reason, too.  See Tummino v. Von Eschenbach, No. CV 05-366, 2006 U.S. Dist. LEXIS 81286, *39 (E.D.N.Y. Nov. 6, 2006) (observing privilege logs typically indicate Bates number and length of document).

       C.      Failure to Articulate Factual Basis for Assertion of Privilege or Exemption

The Government Defendants withheld approximately 312 documents pursuant to 5 U.S.C. § 552(b)(5) of FOIA, referred to as "Exemption 5" or the "deliberative process privilege." Exemption 5 provides that documents do not have to be released if they are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with an agency."  5 U.S.C. § 552(b)(5).

In asserting this privilege, Government Defendants use cursory assertions that leave out information needed to gauge whether the assertion is even facially plausible.  Schraver Decl. at ¶¶ 95, 96.  Such cursory assertions are inadequate to preserve the claim of privilege.  See Rein, 553 F.3d at 366-68 (party asserting privilege or exemption must provide salient information to assess the asserted privilege; failure to provide that information may waive privilege or exemption).  Constr. Prod. Research, 73 F.3d at 473-74 (finding that privilege log failed to preserve privilege where it set forth cursory descriptions of document, date, author, recipient and comments that "did not provide enough information to establish privilege.").

**III.    Government Defendants Improperly Rely on Deliberative Process Privilege.**

      A.      The Deliberative Process Privilege Does Not Apply

As explained in Plaintiffs' Memorandum of Law in support of their Motion to Compel Administrative Record Documents, the Production of Administrative Record Documents, the Government Defendants are not entitled to rely on the deliberative process privilege at all

because Plaintiffs are specifically challenging the decision-making process itself by asserting bias and bad faith on the part of the decision-maker.  In that case the deliberative process privilege "evaporates."  See Plaintiffs' Mem. Law – Motion to Compel Administrative Record Documents at 7.  Plaintiffs have provided detailed allegations and particularized proof of bias and bad faith on the part of the Government Defendants.  See Schraver Declaration in support of Motion to Compel, dated October 30, 2009, at ¶¶ 15, 16.  DOI's stonewalling of Plaintiffs' FOIA Requests for two or three years—and finally producing (incompletely) some 60,0000 pages but only after the ROD was issued—is part of that record of bias and bad faith.  Id. at ¶ 5.  Should the Court grant Plaintiffs' Motion to Compel Administrative Record Documents, finding that the deliberative process privilege is unavailable to the Government Defendants either because it "evaporates" or is overcome on this record, then the Government Defendants should be ordered to produce any and all FOIA documents withheld or redacted based on the deliberate process privilege (FOIA Exemption 5).

   B.   The Government's Assertion of the Deliberative Process Privilege is in any Event Overbroad and Legally and Factually Unsupported

   The Government Defendants widely assert Exemption 5 (the deliberative process privilege) in contradiction of FOIA's broad disclosure requirements and the narrow construction of its exemptions.  Like all FOIA exemptions, Exemption 5 is "to be construed narrowly." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999) (FOIA is to be "construed broadly to provide information to the public in accordance with its purposes; for the same reason, the exemptions from production are to be construed narrowly").  The Government Defendants seek to apply the exemption broadly, apparently claiming it applies to any and all "draft" documents.  Schraver Decl. ¶ 100 (noting that 180 of the documents listed under the deliberative process privilege are marked "draft").  Such assertions are insufficient because they do not

-14-

explain how the documents are deliberative and within the privilege.  See Rein, 553 F.3d at 369 (finding agency's description of "draft" did not satisfy government's obligation to disclose the basis for assertion of deliberative process privilege).

The deliberative process privilege does not protect documents that are "merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment."  Tigue v. United States DOJ, 312 F.3d 70, 80 (2d Cir. 2002) cert. denied 538 U.S. 1056 (2003).  DOI has asserted the deliberative process privilege in some cases for reasons that appear far removed from the formulation of policy-oriented judgment.  For example, the DOI claims the privilege applies to a  "trip report" relating to an environmental site assessment, reasoning "[the] document Contains deliberation: requirements for Level 1 Assessments." Schraver Decl. ¶ 104; Exh. L.  The requirements for a level 1 environmental assessment are, *at best*, peripheral to actual policy formation, and this reason does not justify the redaction under the deliberative process privilege.

Moreover, the environmental condition of the properties is a purely factual matter and not subject to policy deliberations.  All such factual material falls outside the deliberative process privilege.  See, e.g., Allocco Recycling, LTD. v. John Doherty, 220 F.R.D. 407, 412 (S.D.N.Y. 2004) (finding "the privilege does not extend to 'purely factual, investigative matters'").  Thus, an agency must produce memoranda or other documents that summarizes facts, as well as all "factual information that may be segregated from the rest of the document."  Spinner v. City of New York, No. 01-CV 2715, 2004 U.S. Dist. LEXIS 2541, at *6 (S.D.N.Y. Feb. 19, 2004) ("Factual portions of a document that qualify for the deliberative process privilege may have to be produced if the factual information can be segregated through redaction of the document.").  Accordingly, to the extent DOI may have deliberated as to the interpretation of the data

describing the condition of the property, which is not clear from the log entry, the law still would require production of the factual material.

The Government Defendants improperly assert the deliberative process privilege with respect to factual data underlying the DEIS and FEIS, including spreadsheets prepared by a contractor retained to do economic analysis of the OIN's business operations.  Schraver Decl. at ¶¶ 102, 103.  Those spreadsheets and/or other non-produced documents provide the necessary factual foundation for the DEIS, FEIS and ROD conclusions concerning the revenue and expenses of OIN's business enterprises.  Such factual data is altogether outside the deliberative process privilege, and the Government Defendant's assertion of that privilege, to conceal documents required to be disclosed under NEPA, is altogether improper.

## Conclusion

The Court has inherent power to enforce its orders and Rule 37(b)(2) provides remedies for the failure to comply with a court order.  The Government Defendants should be ordered to comply with the Court's November 6, 2008 Order.  In addition, the Court should stay further proceedings until such time as the Government Defendants have fully obeyed the Court's Order.

Dated: October 30, 2009

Of Counsel:

WHITE & CASE LLP

Dwight A. Healy, Esq.
Bar Roll No: 302232
1155 Avenue of the Americas
New York, New York  10036-2787
Tel:     212-819-8200
Fax:     212-354-8113

ANDREW M. CUOMO
Attorney General of the State of New York,
Pro Se and as Attorney for the State of New
York and Governor David A. Paterson

By: _____ */s/ Robert A. Siegfried*
    ROBERT A. SIEGFRIED, AAG
    Bar Roll No:  102608
    Tel:  518-473-5097
    E-Mail:  Robert.Siegfried@oag.state.ny.us

    DAVID B. ROBERTS, AAG
    Bar Roll No:  102455
    Tel:  518-408-2516
    E-Mail:  David.Roberts@oag.state.ny.us

Office of the Attorney General
The Capitol
Albany, New York  12224
NIXON PEABODY LLP
Attorney for Madison County, New York and
Oneida County, New York

By: _____ */s/ David M. Schraver*
    DAVID M. SCHRAVER
    Bar Roll No:  105037
    1100 Clinton Square
    Rochester, NY  14604-1792
    Tel:  585-263-1000
    E-Mail:  DSchraver@nixonpeabody.com

    DAVID H. TENNANT, ESQ.
    Bar Roll No:  510527
    1100 Clinton Square
    Rochester, NY  14604-1792
    Tel:  585-263-1000
    E-Mail:  DTennant@nixonpeabody.com

LEXSEE



Caution
As of: Oct 30, 2009

**MOHAMMED MUHIBUR RAHMAN, individually and on behalf of all others simi-
larly situated, Plaintiff, - against - THE SMITH & WOLLENSKY RESTAURANT
GROUP, INC., SMITH & WOLLENSKY OPERATING CORP., and PARK AVE-
NUE CAFE, Defendants.**

**06 Civ. 6198 (LAK) (JCF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2009 U.S. Dist. LEXIS 30275**

**March 18, 2009, Decided
March 18, 2009, Filed**

**SUBSEQUENT HISTORY:** Motion granted by, in part,
Motion denied by, in part, Stay granted by Rahman v.
Smith & Wollensky Rest. Group, 2009 U.S. Dist. LEXIS
62063 (S.D.N.Y., July 20, 2009)

**PRIOR HISTORY:** Rahman v. Smith & Wollensky
Rest. Group, Inc., 2009 U.S. Dist. LEXIS 3510
(S.D.N.Y., Jan. 7, 2009)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an employment dis-
crimination suit, the court directed defendants to desig-
nate additional corporate representatives and make them
available for deposition pursuant to Fed. R. Civ. P.
30(b)(6), and ordered that all discovery conclude by
January 30, 2009. Plaintiff moved to reopen discovery
and for sanctions on the grounds that defendants had still
failed to make available an adequate corporate represen-
tative and had failed to produce documents.

**OVERVIEW:** Plaintiff contended that the depositions of
defendants' Fed. R. Civ. P. 30(b)(6) designees were in-
adequate, as the designees were unable to address three
items from plaintiff's notice of deposition, and that de-
fendants' counsel improperly barred inquiry into topics
related to one item. The court agreed that although de-
fendants could have done a more thorough job selecting
and preparing their corporate designees, there was no

evidence of egregious deficiencies in the designees' ac-
tual testimony. Overall, both designees were adequately
prepared and able to address completely the vast major-
ity of questions posed by plaintiff's counsel, and plaintiff
failed to indicate what specific information he still
lacked. There was simply no basis for finding that, in
total, the testimony provided was anything but sufficient.
Sanctions were therefore not appropriate, and further
discovery was not warranted. Also, defendants' guest
check production was adequate, as there was no allega-
tion that plaintiff requested any specific manner of pro-
duction or format of electronic documents, and without
specific instructions otherwise, pdf format was presump-
tively a reasonably usable form.

**OUTCOME:** The plaintiff's motion was denied; discov-
ery was closed.

**CORE TERMS:** deposition, guest, tip, notice, discov-
ery, designee, format, designated, designate, deponent's,
reconsideration, spoliation, pdf, server, time period, new
evidence, record-keeping, preparation, electronic, de-
stroyed, prepare, waiter's, usable, stuff, reasons dis-
cussed, good faith effort, impose sanctions, reasonably
available, course of business, undifferentiated

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > Oral Depositions*

[HN1]See Fed. R. Civ. P. 30(b)(6).

*Civil Procedure > Discovery > Methods > Oral Depositions*

[HN2]While Fed. R. Civ. P. 30(b)(6) is not designed to be a memory contest, the deponents must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization. A corporation has an affirmative duty to prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources. Producing an unprepared witness is tantamount to a failure to appear.

*Civil Procedure > Discovery > Disclosures > Sanctions*
*Civil Procedure > Discovery > Methods > Oral Depositions*

[HN3]Sanctions are appropriate if a corporate defendant fails to make a good faith effort to comply with Fed. R. Civ. P. 30(b)(6). Indeed, Fed. R. Civ. P. 37(b)(2)(A) expressly authorizes the court to issue "just orders" to rectify a Fed. R. Civ. P. 30(b)(6) violation. However, in order for the court to impose sanctions, the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas.

*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*

[HN4]See Fed. R. Civ. P. 34(b)(2)(E).

*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*

[HN5]Fed. R. Civ. P. 34 is intended to prevent parties from deliberately mixing critical documents with others in the hope of obscuring significance. Accordingly, if documents are not produced as they are kept in the usual course of business, federal courts routinely require responding parties to provide documents in some kind of organized, indexed fashion rather than as a mass of undifferentiated, unlabeled documents.

*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*

[HN6]Without specific instructions otherwise, pdf format -- a familiar format for electronic files that is easily accessible on most computers -- is presumptively a "reasonably usable form."

*Civil Procedure > Discovery > Disclosures > Sanctions*

[HN7]A party seeking sanctions for the spoliation of evidence must show (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

**COUNSEL:** [*1] For Mohammed Muhibur Rahman, individually and on behalf of all others similarly situated, Plaintiff: Krishnan Shanker Chittur, LEAD ATTORNEY, Audrey Strutinskiy, Chittur & Associates, P.C., New York, NY; Himanshu Rajan Sharma, Law Offices of H. Rajan Sharma Esq., Edison, NJ.

For The Smith & Wollensky Restaurant Group, Inc., Smith & Wollensky Operating Corp., Park Avenue Cafe, Defendants: Christina L. Feege, LEAD ATTORNEY, Elena Paraskevas-Thadani, Littler Mendelson, P.C. (NYC), New York, NY; Gregory Bertram Reilly, III, LEAD ATTORNEY, Littler Mendelson, P.C. (Newark), Newark, NJ.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** JAMES C. FRANCIS IV

**OPINION**

*MEMORANDUM AND ORDER*

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Discovery disputes continue to plague this employment discrimination suit. On January 7, 2009, I issued an order resolving several disagreements between the parties. In that decision, I directed the defendants to designate additional corporate representatives and make them available for deposition pursuant to Rule 30 (b) (6) of the Federal Rules of Civil Procedure. *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, No. 06 Civ. 6198, 2009 U.S. Dist. LEXIS 3510, 2009 WL 72441, at *4-5 (S.D.N.Y. Jan. 7, 2009). [*2] I also unequivocally ordered that all discovery conclude by January 30, 2009. 2009 U.S. Dist. LEXIS 3510, [WL] at *9. The plaintiff now moves to reopen discovery and for sanctions on the grounds that the defendants have still failed to make available an adequate corporate representative and that they have failed to produce requested documents.

*Background*

On January 30, 2009, the plaintiff deposed the defendants' Rule 30 (b) (6) designees, Maurizio Chiovaro and Sumeet Lakhaney. [1] The plaintiff now contends that these depositions were inadequate for a variety of reasons discussed in greater detail below. (Letter of Krishnan S. Chittur dated Feb. 12, 2009 ("Chittur 2/12/09 Letter") at 7.) In addition to these allegations, the plaintiff contends that the defendants' production of guest checks -- documents which were produced in large quantities by the defendants in September and October of 2008 [2] -- was insufficient. (Chittur 2/12/09 Letter at 1, 5; Affidavit of Stan V. Smith dated Feb. 1, 2009 ("Smith Aff."), P 3). Similarly, in apparent support of his contention that the defendants' document production was insufficient, the plaintiff asserts that the defendants "failed to place a litigation hold at least until Summer [*3] 2008." (Chittur 2/12/09 Letter at 1, 4, 7). To remedy these alleged discovery violations, the plaintiff seeks an order either (1) reopening discovery, (2) precluding the defendants from contesting liability with respect to the claims of both Mr. Rahman and the putative class, or (3) finding that the defendants in fact systematically discriminated against Mr. Rahman and other non-white employees of the Park Avenue Café when assigning tables.

1   The defendants have designated and produced three corporate representatives in total. The first was Kevin Dillon who was deposed on October 22, 2008. After Mr. Dillon's deposition, the defendants acknowledged that his testimony was inadequate. Rahman, 2009 U.S. Dist. LEXIS 3510, 2009 WL 72441, at *4. Finding that the defendants had made "a good faith effort to remedy the deficiencies in Mr. Dillon's testimony," I refused to impose sanctions as requested by the plaintiff. Id. Instead, I directed the defendants to designate additional corporate representatives. 2009 U.S. Dist. LEXIS 3510, [WL] at *4-5. In response, the defendants produced Mr. Chiovaro and Mr. Lakhaney for deposition.

2   The defendants produced over one hundred thousand guest checks in response to an order issued in August 2008. See Rahman, 2009 U.S. Dist. LEXIS 3510, 2009 WL 72441, at *2. [*4] The checks, which span the time period from January 2002 to September 2008, show the waiter's name, table assignment, and tip amount. 2009 U.S. Dist. LEXIS 3510, [WL] at *2 & n.3.

## Discussion

### A. The Rule 30 (b) (6) Depositions

Pursuant to Rule 30 (b) (6) of the Federal Rules of Civil Procedure,

[HN1][A] party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . . The persons designated must testify about information known or reasonably available to the organization.

[HN2]While Rule 30 (b) (6) "is not designed to be a memory contest," Equal Employment Opportunity Commission v. American International Group, Inc., No. 93 Civ. 6390, 1994 WL 376052, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994), the deponents must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization. Reilly v. Natwest Markets Group Inc., 181 F. 3d 253, 268 (2d Cir. 1999); Kyoei Fire & Marine Insurance Co. v. M/V Maritime Antalya, 248 F.R.D. 126, 152 (S.D.N.Y. 2007). [*5] A corporation has an affirmative duty to prepare the designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources." Tailored Lighting, Inc. v. Osram Sylvania Products, Inc., 255 F.R.D. 340, 2009 WL 367584, at *7 (W.D.N.Y. 2009) (quoting Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997)). As is oft-repeated, "[p]roducing an unprepared witness is tantamount to a failure to appear." United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996).

In the instant case, the plaintiff argues that the defendants' designees were unable to address items one, two, and four from the plaintiffs Notice of Deposition [3]: one, the defendants' system of record-keeping, including information about what types of records are generated and how records are organized and preserved; two, the defendants' record destruction policies; and four, the identities of persons responsible for maintaining, preserving or destroying the defendants' records. (Chittur 2/12/09 Letter at 3; Notice of Dep., PP 1, 2 & 4). The plaintiff also contends that defendants' counsel improperly barred inquiry into topics related to item number three, [*6] the defendants' "filings with the [Internal Revenue Service (the "IRS")], including without limitation, the preparation, filing and maintenance of periodic reports such as IRS Forms 8027." (Chittur 2/12/09 Letter at 3-4; Notice of Dep., P 3). Finally, the plaintiff generally alleges that Mr. Lakhaney failed to prepare for his deposition adequately. (Chittur 2/12/09 Letter at 6). The plaintiff maintains that he is therefore entitled to the re-

lief requested to rectify these "wil[l]ful" violations of Rule(30) (b) (6). (Chittur 2/12/09 Letter at 7).

   3   The plaintiffs Notice of Deposition identified nineteen numbered items as the topics for examination. (Notice of Deposition dated Jan. 27, 2009 ("Notice of Dep."), attached as Exh. 1 to Chittur 2/12/09 Letter).

To be sure, [HN3]sanctions are appropriate if a corporate defendant fails to make a good faith effort to comply with Rule 30 (b) (6). *See, e.g., Black Horse Lane Associates v. Dow Chemical Corp., 228 F.3d 275, 304 (3d Cir. 2000)* (affirming sanction when deponent "failed to offer meaningful testimony about most, if not all, of the items specified in the notice of deposition"); *Resolution Trust Corp. v. Southern Union Co., 985 F.2d 196, 197-98 (5th Cir. 1993)* [*7] (affirming sanctions when corporation failed to make "meaningful effort" to designate witness with any relevant knowledge); *Kyoei Fire & Marine Insurance Co., 248 F.R.D. at 152* (imposing sanctions when designee's performance "amount[ed] to a non-appearance"). Indeed, Rule 37 (b) (2) (A) expressly authorizes the court to issue "just orders" to rectify a Rule 30 (b) (6) violation. However, "[i]n order for the Court to impose sanctions, the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas." *Kyoei Fire & Marine Insurance Co., 248 F.R.D. at 152* (quoting *Bank of New York, 171 F.R.D. at 151*).

Here, the plaintiff correctly notes that neither designee claimed to be able to address items one through four of the Notice of Deposition. (Deposition of Maurizio Chiovaro dated Jan. 30, 2009 ("Chiovaro Dep."), attached as Exh. 4 to Chittur 2/12/09 Letter, at 9-10; Deposition of Sumeet Lakhaney dated Jan. 30, 2009 ("Lakhaney Dep."), attached as Exh. 5 to Chittur 2/12/09 Letter, at 9-11). In this respect, the defendants surely could have done a more thorough job selecting and preparing their corporate designees. There is no evidence, [*8] however, of egregious deficiencies in either Mr. Chiovaro's or Mr. Lakhaney's actual testimony. Although, from the plaintiff's perspective, their testimony may have lacked specificity about record-keeping, each designee exhibited specific knowledge of key issues identified by the plaintiff's notice, including adequate knowledge of the issues related to items one through four.

Mr. Chiovaro was the general manager of the Park Avenue Cafe during part of Mr. Rahman's employment. (Chiovaro Dep. at 24-25, 27). In preparation for the deposition, Mr. Chiovaro attended two other depositions, reviewed documents, including the Complaint, met with another Park Avenue Cafe manager, and discussed the case with defendants' counsel. (Chiovaro Dep. at 11, 27-28). At the beginning of his deposition, Mr. Chiovaro

identified items thirteen through nineteen from the Notice of Deposition as topics he was designated to discuss; he did not mention items one, two, or three and specifically denied being designated to talk about number four. (Chiovaro Dep. at 9-10). During his testimony, however, Mr. Chiovaro did in fact provide relevant information about records generated by the Park Avenue Cafe. For example, [*9] he explained the restaurant's system of generating and maintaining nightly sales reports and weekly tip records, and discussed record-keeping related to personnel files. (Chiovaro Dep. at 65-91, 259-64). In addition, although defendants' counsel objected to questions about the defendants' IRS filings, Mr. Chiovaro described the process of reporting tips to the IRS. (Chiovaro Dep. at 123-32).

Mr. Lakhaney, an information technology director for the defendants, was designated to address items five through twelve. (Lakhaney Tr. at 9). Although Mr. Lakhaney admitted that he "didn't necessarily prepare" for the deposition, he explained that formal preparation was unnecessary because he was intimately familiar with the topics of his deposition. [4] (Lakhaney Dep. at 34-35, 38). Indeed, Mr. Lakhaney provided detailed testimony about the defendants' computer systems, including the system for storing e-mails and the guest database. (Lakhaney Dep. at 9, 11-14, 25-34). He also answered questions about the defendants' data retention and destruction policies and practices. (Lakhaney Dep. at 19-24).

   4   Specifically, Mr. Lakhaney explained, "I feel like I live this stuff, day to day stuff, you know. If [*10] I didn't know some of this stuff, I wouldn't be in the position that I am." (Lakhaney Dep. at 35).

Overall, both Mr. Chiovaro and Mr. Lakhaney were adequately prepared and able to address completely the vast majority of questions posed by the plaintiffs counsel. In fact, although he complains generally of the deponents' performance, the plaintiff fails to indicate what specific information he still lacks. There is simply no basis for finding that, in total, the testimony provided was anything but sufficient. Sanctions are therefore not appropriate, and further discovery is not warranted.

**B. *Document Production***

**1. *Guest Checks***

Although the plaintiff received the defendants' production of guest checks in September and October of 2008, he only now complains of the form and the substance of that discovery response. The plaintiff alleges, without further detail, that production was done in an "unsequential, jumbled up manner." (Chittur 2/12/09 Letter at 1, 5, 7). He also submits an affidavit from

economist Stan V. Smith complaining that "analysis of the data in totality [will be] extraordinarily time consuming and expensive" because the data was produced in "pdf" format. (Smith Aff., P 5). [*11] Substantively, the plaintiff asserts that the checks produced are "prima facie incomplete and unreliable." (Chittur 2/12/09 Letter at 5). Specifically, he alleges that several guest checks lack the names of the issuing servers or show multiple servers, that others reflect incorrect totals, and that the guest checks issued by Mr. Rahman in the months of April and July 2002 are missing. (Chittur 2/12/09 Letter at 5; Smith Aff., P 3; Affirmation of Mohammed Muhibur Rahman dated Feb. 12, 2009, P 2).

Rule 34 of the Federal Rules of Civil Procedure guides the manner in which document production should occur:

[HN4](i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34 (b) (2) (E). [HN5]These rules are intended to prevent parties from "deliberately [mixing] critical documents [*12] with others in the hope of obscuring significance." Fed. R. Civ. P. 34, advisory committee's note to 1980 Amendment. Accordingly, if documents are not produced as they are kept in the usual course of business, federal courts routinely "require responding parties to provide documents in some kind of organized, indexed fashion rather than as a mass of undifferentiated, unlabeled documents." Sparton Corp. v. United States, 77 Fed. Cl. 10, 16 (Fed. Cl. 2007) (citing cases).

The defendants here used a vendor to catalog guest checks archived in the Park Avenue Cafe's electronic database. (Letter of Elena Paraskevas-Thadani dated Sept. 4, 2008 ("Paraskevas-Thadani Letter"), attached as Exh. 2 to Affirmation of Andrey Strutinskiy dated Oct. 17, 2008 ("Strutinskiy Aff."); Defendants' Responses to Plaintiffs Third Set of Requests for Documents ("Def. Response to 3rd Doc. Req."), attached as Exh. 1 to Stru-

tinskiy Aff., at 4; Chiovaro Dep. at 136; Letter of Gregory B. Reilly dated Feb. 19, 2009 at 6-7). The checks were produced on several CD-ROMs in three-year batches, with each guest check identified by a unique index number. (Paraskevas-Thadani Letter; Def. Response to 3rd Doc. Req. at 4). This [*13] manner of production is a far cry from dumping a "mass of undifferentiated, unlabeled documents" on the plaintiff's desk, see Sparton Corp., 77 Fed. Cl. at 16, or "simply placing documents in boxes and making them available" to the plaintiff. CooperVision, Inc. v. Ciba Vision Corp., No. 06 Civ. 149, 2007 U.S. Dist. LEXIS 57111, 2007 WL 2264848, at *5 (E.D. Tex. Aug. 6, 2007) (finding Rule 34 violated by "simply placing documents in boxes and making them available" to opponent). Moreover, there is no allegation that the plaintiff requested any specific manner of production or format of electronic documents. [HN6]Without specific instructions otherwise, pdf format -- a familiar format for electronic files that is easily accessible on most computers -- is presumptively a "reasonably usable form." See, e.g., Autotech Technologies Ltd. v. Automationdirect.com, Inc., 248 F.R.D. 556, 559-60 (N.D. Ill. 2008) (finding that, where requesting party failed to specify desired format, production of documents in pdf and tiff format "complie[d] with the ordinary meaning of Rule 34"); United States v. O'Keefe, 537 F. Supp. 2d 14, 23 (D.D.C. 2008) (assuming .pdf format is "reasonably usable form" under Rules). Thus, the defendants' [*14] guest check production was adequate in form.

The plaintiff's substantive complaints similarly lack merit. The defendants have produced a huge number of guest checks that were originally issued by restaurant wait and managerial staff. Of course some portion of the checks will lack server names or show incorrect totals; these are simply human errors that can provide no serious grounds for complaint. Furthermore, although the plaintiff's expert claims that it is either "not possible" to conduct data analysis or that "such analyses may not be meaningful or reliable" due to the "errors and omissions" present within the guest check production (Smith Aff., PP 4-5), this assertion belies common sense. In addition to producing over one hundred thousand guest checks that show the waiter's name, table assignment, and tip amount, the defendants have produced numerous documents reflecting tip distribution and table assignment, such as "aggregate tip information for [Mr.] Rahman and other waiters, labor reports showing hours worked, [and] tip reports indicating the total gross dollar amount in food and beverages ordered by the tables assigned to a particular server." (Declaration of Christina Feege [*15] dated Oct. 9, 2008, P 11 & Exhs. B, C). There is surely enough information for Dr. Smith to conduct statistical analysis for at least some time periods which, in turn, can

be extrapolated to other time periods for which sufficient data may be lacking.

For these reasons, all objections to the defendants' guest check production are without merit.

### 2. *Table Assignment Sheets*

Relying on one ambiguous statement Mr. Chiovaro made during his deposition (Chiovaro Dep. at 316), [5] the plaintiff claims that the defendants failed to put in place a litigation hold to ensure the retention of relevant documents until summer 2008. [6] (Chittur 2/12/09 Letter at 1, 4, 7). The plaintiff makes this assertion in support of his allegation that the defendants' production of so-called "Table Assignment Sheets" [7] has been incomplete and insufficient. (Chittur 2/12/09 Letter at 3-4). This argument evokes the plaintiff's recent motion for reconsideration, where he argued at great length that the defendants had a legal obligation to preserve Table Assignment Sheets and therefore could not justify their failure to retain these documents. (Plaintiff's Objections to the Memorandum and Order of Magistrate Judge Francis [*16] IV of August 14, 2008 at 11-17; Plaintiff's Reply Memorandum of Law in Further Support of Motion for Reconsideration and in Furtherance of Judge Kaplan's Order of September 12, 2008 at 7-9). Indeed, in his objections to my January order deciding the reconsideration motion, [8] the plaintiff argues that I erroneously "ignored" gaps in the defendants' production of Table Assignment Sheets and "refused" to address allegations of evidentiary spoliation. (Pl. Obj. Memo. at 10, 12-15). To date, it seems that Table Assignment Sheets have been produced in full for the year 2002 but only for "certain portions of other years." (Affirmation of Krishnan Chittur dated Jan. 22, 2009, P 4).

> 5   When asked "Did Smith & Wollensky put a litigation hold, as [sic] you not to destroy documents at anytime?," Mr. Chiovaro responded "Yes . . . I want to say when I was aware of it. Summer of 2008, maybe. I don't know. I don't remember." (Chiovaro Dep. at 316).
> 6   This action commenced in August 2006.
> 7   Table Assignment Sheets purportedly contain "detailed tip information for every shift (Lunch and Dinner), including breakdown between charge and cash tips, and tip distribution between various employees, and table assignments." [*17] (Plaintiff's Objections to the Order of Magistrate Judge Dated January 7, 2009 ("Pl. Obj. Memo.") at 3 n.4). According to the plaintiff, Table Assignment Sheets are "critical to proving discrimination in table assignments as well as in tip income, the crux of the case." (Pl. Obj. Memo. at 14).

8   On January 22, 2009, the plaintiff filed objections to my January 7, 2009 Order pursuant to Rule 72 of the Federal Rules of Civil Procedure. These objections are currently pending before the Honorable Lewis A. Kaplan, U.S.D.J.

I previously found that the plaintiff failed to demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" so as to warrant reconsideration of the defendants' document production related to table assignments. *Rahman*, 2009 U.S. Dist. LEXIS 3510, 2009 WL 72441, at *1 (quoting *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Now, construing the plaintiff's arguments as favorably as possible, there is an allegation of new evidence that arguably deserves further attention.

The plaintiff presents, as proof of the defendants' alleged spoliation, Mr. Chiovaro's single [*18] ambiguous statement that the defendants instigated a litigation hold in "Summer of 2008, maybe" rather than when the lawsuit commenced in August 2006. (Chiovaro Dep. at 316). Mr. Chiovaro's isolated statement, however, is insufficient evidence to support a finding of spoliation. [9] Even assuming there was, in fact, no litigation hold until the summer of 2008, the plaintiff has failed to establish that any gap in the Table Assignment Sheet production is attributable to the failure to institute a litigation hold at an earlier date. Moreover, the guest checks undeniably contain table assignment information that the plaintiff can use to analyze his claims, thus seriously diminishing the importance of the Table Assignment Sheets to the plaintiff's case. In sum, the new evidence from Mr. Chiovaro's deposition does not alter my previous conclusion: the plaintiff is not entitled to further discovery related to table assignments.

> 9   [HN7]A party seeking sanctions for the spoliation of evidence must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the [*19] destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)).

### Conclusion

For the reasons discussed above, the plaintiff's motion is denied. Discovery is closed. The pretrial order

shall be submitted by April 24, 2009, unless either party submits a dispositive motion by that date.

    SO ORDERED.

    /s/ James C. Francis IV

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York

March 18, 2009

LEXSEE



Caution
As of: Oct 30, 2009

**COOPERVISION, INC.. Plaintiff, v. CIBA VISION CORP., Defendant.**

**Civil Action No. 2:06CV149**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION**

**2007 U.S. Dist. LEXIS 57111**

**August 6, 2007, Decided**
**August 6, 2007, Filed**

**SUBSEQUENT HISTORY:** Objection denied by Coopervision, Inc. v. CIBA Vision Corp., 2007 U.S. Dist. LEXIS 61461 (E.D. Tex., Aug. 21, 2007)

**PRIOR HISTORY:** CooperVision, Inc. v. CIBA Vision Corp., 2007 U.S. Dist. LEXIS 51432 (E.D. Tex., July 16, 2007)

**CORE TERMS:** lenses, edge, patent, prior art, discovery, clinical, lotrafilcon, hydrogel, invention, silicone, rounded, infringement, comfort, clinical trial, course of business, toric, lens, documentation, correlating, invalidity, moot, producing, patents-in-suit, irritation, scuffing, contact lens, aspherical, molded, technology, ballasted

**COUNSEL:** [*1] For Coopervision, Inc., Plaintiff: Adam S Hoffman, David I Gindler, Irell & Manella LLP, Los Angeles, CA; Amir A Naini, Douglas NeJaime, Jason G Sheasby, Jonathan Steinsapir, Morgan Chu, Raj Sardesai, Irell & Manella - Los Angeles, Los Angeles, CA; Ben Yorks, Michelle Armond, Irell & Manella - Newport Beach, Newport Beach, CA; Clayton Edward Dark, Jr, Attorney at Law, Lufkin, TX; J Thad Heartfield, The Heartfield Law Firm, Beaumont, TX.

For CIBA Vision Corporation, Defendant: Virgil Bryan Medlock, Jr, LEAD ATTORNEY, Catherine Isabelle Casey Rajwani, Debera Denise Wells, Feras Alkasab, Michael David Hatcher, Sidley Austin - Dallas, Dallas, TX; Charles W Goehringer, Jr, Germer Gertz, L.L.P., Beaumont, TX; Lawrence Louis Germer, Germer Gertz, Beaumont, TX; Stephanie P Koh, Thomas D Rein, Sidley Austin - Chicago, Chicago, IL.

**JUDGES:** Earl S. Hines, United States Magistrate Judge. JUDGE RON CLARK.

**OPINION BY:** Earl S. Hines

**OPINION**

**MEMORANDUM AND ORDER**

Referred to the undersigned for determination are: (1) CooperVision, Inc.'s Motion to Compel [Doc. # 127], (2) CooperVisions Inc.'s Second Motion to Compel [Doc. # 133] and Defendant CIBA Vision Corp.'s Motion to Compel [Doc. # 126].

**I. Nature of Action**

CooperVision filed suit [*2] against CIBA Vision Corporation ("CIBA") claiming infringement of United States Patent Nos. 6,431,706 and 6,923,538 (collectively, "the Edge Design patents") and of United States Patent Nos. 6,467,903; 6,857,740; 6,971,746; 7,133,174; and 7,134,753 (collectively, "the Tonic patents"). The first family of patents, the Edge Design patents, relate to methods and tools for producing contact lenses with a substantially smooth, rounded edge profile without the need for post-processing steps. The second family of patents, the Tonic patents, relate to contact lens with an improved thickness and rotational stabilization structure designed to maximize eyelid interaction and reduce the variability of lens orientation between individuals in lenses that are non-axi-symmetric, such as toric or multifocal lenses.

## II. Motions to Compel

Bullying, venomous and tit-for-tat pretrial antics go against the letter and spirit of the Federal Rules of Civil Procedure, and they especially assail customary and expected practice in the Eastern District of Texas. The parties and their counsel in this case unfortunately appear more inclined to engage in such conduct rather than co-operate and participate in good faith [*3] in licit, extra-judicial discovery of relevant evidence. As early as the case management conference, the court noted ". . it does not appear to me that both sides are getting along very well," and further detected that there was lacking "a fair, adult, good-faith exchange of what are the real problems." January 3, 2007, CMC Trans. at pp. 38, 40. The court warned, "I'm not sure we want to get into that kind of discovery hearing where basically it doesn't matter what discovery issue comes up; someone pays sanctions." Id. at p. 39.

Notwithstanding that early admonishment, the parties bickered over scheduling deadlines less than a month after the case management conference, arguing in at least one instance about agreed deadlines that had already passed. [1] The parties' disdain for one another (and of their obligations to the court) erupted again shortly thereafter when, within a two week period, they inundated the court with no less than three discovery disputes that should have been largely resolved without a hearing. Once court intervention was imminent, the parties agreed upon a disposition. [2]

1   On February 1, 2007, CIBA moved to amend the scheduling order, seeking a wholesale modification [*4] of issues that were already agreed to and/or discussed at the case management conference.
2   On April 17, 2007, CIBA moved to compel production of documents describing the molds and tools used to make commercial contact lenses that are prior art and also requested that it be allowed to amend its invalidity contentions with respect to any prior art derived from said documents. In response, CooperVision agreed to search for and produce the documents. CooperVision further agreed that CIBA might amend its invalidity contentions after receipt of the relevant documents within 30 days after their production. On April 20, 2007, the court issued an order reflecting the parties' agreement.

Rancor continued. Prior to the Claims Construction Hearing, the parties sent letter briefs quibbling over matters such as whether the opposing side's technology tutorial was overly argumentative. There was also a dispute over whether one party's expert could appear at the

Markman hearing despite the court's order requiring an expert witness to be present for each party. See [Doc. # 98] at p. 2.

The parties replicate such chaffy behavior in their present dispute. CIBA filed its motion to compel [Doc. # 126] on July [*5] 13, 2007. Less than two hours later, CooperVision responded with its own motion [Doc. # 127], and within a week filed yet a second motion to compel on July 19, 2007. Just as before, both sides' "shoot first" strategies are now unmasked as mostly unnecessary, artless and petulant. The majority of issues raised and argued ad nauseum in warring motions, responses, replies, and, yes, even a sur-reply, are moot, and the few remaining issues have reasonable solutions so obvious that the court must wonder whether the clients' interests were advanced by the expenditure of so much highly-compensated attorney time on such a parenthetic skirmish.

### A. CooperVision's Requests

CooperVision requests CIBA to produce documents related to the following categories:

. Category 1: Comparison of lenses made from the same material with different edge designs.

. Category 2: Clinical studies that involve lotrafilcon A, lotrafilcon B, or any other silicone hydrogel material and that report data on safety, scuffing, irritation or comfort.

. Category 3: Clinical studies involving contact lenses with a rounded edge as that term is defined by the court.

. Category 4: Clinical data on the influence of edge design on safety, [*6] scuffing, irritation, or comfort, or that compare the performance of edge design.

. Category 5: A list of documents correlating CooperVision's produced documents to CooperVision's lenses that CIBA asserts invalidate the patents-in-suit.

. Category 6: Documents from the Institute for Eye Research ("IER"), the Cornia and Contact Lens Research Unit at the University of New South Wales ("CCRLU"), and Vision CRC, related to the development of the O2Optix lenses, as well as any communications regarding the use of the technology in the patents at issue.

In response, CIBA maintains that it has produced all its clinical trial "that specifically look at, relate to or report on" edge design (regardless of whether that edge design was a "rounded edge" design) and/or that "compare lenses made from the same material with distinct edge designs." CooperVision's reply concedes that the dispute now concerns only discovery requests relating to Categories 2, 3, 5 and 6.

## B. CIBA's Requests

CIBA requests CooperVision to produce the following categories of documents:

> . Category 1: An index correlating the documentation CooperVision produced showing the tools and molds for its prior art molded lenses.

> . Category [*7] 2: Documents sufficient to show the structure, ballast and otherwise, for all of CooperVision's aspherical lenses that are prior art to any of the claims of the toric patents.

> . Category 3: Documents from IER that are relevant to any claim or defense of a party.

## III. Discussion and Analysis

### A. CooperVision's Requests

*i. Category 2: Clinical studies that involve lotrafilcon A, lotrafilcon B, or any other silicone hydrogel material and that report data on safety, scuffing, irritation or comfort.*

CooperVision seeks discovery of data on all silicone hydrogel trials that report data on safety, scuffing, irritation or comfort, including discovery on all of the clinical studies that do not relate to the edge of the contact lens. CooperVision argues that data on safety and comfort of silcone hydrogels is relevant to CIBA's assertion that the edge design disclosed in the asserted patents does not increase safety and comfort.

CIBA responds that the request is overbroad because it includes clinical trials that are not for the accused product, O2Optix, and that do not directly relate to edge design.

The lens material in the accused O2Optix product is lotrafilcon B. Its predecessor material is lotrafilcon [*8] A. Both are silicone hydrogel substances. CooperVision's

complaint specifically alleges that the O2Optix contact lenses infringe the patents. In fact, at the case management conference, CooperVision confirmed that the accused device is "CIBA Vision's flagship line, which is their O2Optix line." October 10, 2006, CMC Trans. at p. 7-9. Additionally, in its infringement contentions dated November 6, 2006, CooperVision provided CIBA with a chart purporting to list its element-by-element allegations of infringement of this service. CooperVision did not allege infringement by any other product in its infringement contentions. Since CooperVision has not asserted infringement of all silicone hydrogel products, documents regarding other clinical trials are irrelevant to CooperVision's infringement allegations, and are outside the scope of discovery on that issue at this time.

CooperVision's request may, however, seek information relevant to CIBA's invalidity argument. Although not requested until very late in the game, information pertaining to lotrafilcon A and lotrafilcon B appears reasonably calculated to lead to discovery of admissible evidence. However, CooperVision has failed to meet its [*9] burden to show how documents regarding clinical trials of *all* silicone hydrogel products may be relevant.

In any event, Coopervision's request regarding clinical trials of *all* silicone hydrogel products is overbroad under Fed. R. Civ. P. 26(b). Placing every item of clinical data at issue would result in significant expense for the parties. Given that CIBA has already produced all clinical studies involving contact lenses with a rounded edge, any marginal relevance of the information is outweighed by the burden and expense of the proposed discovery.

Therefore, CooperVision's motion to compel documents on clinical studies reporting data on safety, scuffing, irritation or comfort for lotrafilcon A and lotrafilcon B is **GRANTED;** but CooperVision's request for that information on any other silicone hydrogel material is **DENIED.**

*ii. Category 3: Clinical studies involving contact lenses with a rounded edge as that term is defined by the court.*

CooperVision requests clinical studies involving contact lenses with a rounded edge. CIBA certified that it has already produced all clinical trials that involve edge design, regardless of whether that edge design was a rounded edge design. Accordingly, [*10] CooperVision's motion to compel documents on clinical studies involving contact lenses with a rounded edge is **DENIED as moot.**

*iii. Category 5: A list of documents correlating CooperVision's produced documents to CooperVision's lenses that CIBA asserts invalidate the patents-in-suit.*

CIBA's invalidity contentions list 30 commercial contact lenses (including 20 CooperVision lenses) which it believes are prior art to the patents in suit. CooperVision seeks a list of documents correlating CooperVision's produced documents to CooperVision's lenses that CIBA asserts invalidate the patents-in-suit. CIBA provided a list of documents upon which it relies as showing the characteristics of CooperVision's lenses that CIBA included in its invalidity contentions.

Given that CIBA sent CooperVision the list on July 25, 2007, CooperVision's motion to compel this document is also **DENIED as moot.**

*iv. Category 6: Documents from the Institute for Eye Research ("IER'), the Cornia and Contact Lens Research Unit at the University of New South Wales ("CCRLU"),* [*11] *and Vision CRC, related to the development of the O2Optix lenses, as well as any communications regarding the use of the technology in the patents at issue.*

CooperVision moves the court to order CIBA to request from the IER (and any other related Australian entities involved in the development of the O2Optix lenses), documents relating to the development of the O2Optix lenses, including documents related to the use of the technology claimed in the patents-in-suit in the development of the O2Optix lenses. CIBA responded that it will pursue the requests in good faith. As such, CooperVision's motion to compel CIBA to request documents from the IER, the Cornia and CCRLU, and Vision CRC is **DENIED as moot.**

B. CIBA's Requests

*i. Category 1: An index correlating the documentation CooperVision produced showing the tools and molds for its prior art molded lenses.*

CooperVision produced over 32,000 documents in response to CIBA's requests seeking tool and mold designs for all of CooperVision's prior art molded contact lenses. CIBA seeks to compel CooperVision to provide an index correlating the documents with the lenses they represented. As grounds, CIBA avers that while some of the documents can [*12] be correlated with lenses, many documents contain markings or numbers without a sufficient explanation to show which lenses they represent. As such, CIBA contends that the files were not presented in a way that would allow it to make a reasonable use of them.

CooperVision replies that it has satisfied its discovery obligation by producing the documents as they are kept in the usual course of business. Moreover, CooperVision offers to provide whatever information it can on any specific documents in CooperVision's production about which CIBA has questions.

Fed. R. Civ. Pro. 34(b)(i) states that a party producing documents "shall produce them as they are kept in the usual course of business or shall organize them to correspond with the categories in the request." The committee note accompanying the rule indicates that the reason this sentence was added was to prevent production of critical documents in a manner that might obscure their significance. Clearly, the underlying assumption was that production of records as kept in the usual course of business ordinarily will make their significance pellucid. That is the overarching purpose of the rule.

When a producing party chooses not to organize [*13] documents to correspond with categories in the request, it is the producing party's burden to demonstrate that documents are produced as kept in the usual course of business. See Johnson v. Kraft Foods North America, 236 F.R.D. 535 (D. Kan. 2006) ("a party who chooses the Rule 34(b) option to produce documents as they are kept in the ordinary course of business bears the burden of showing that the documents were in fact produced in that manner and [ ] a mere assertion that they were so produced is not sufficient to carry that burden"). Moreover, simply placing documents in boxes and making them available does not conform to the rule. See Innovative Therapy Products, Inc. v. Roe, 1999 U.S. Dist. LEXIS 398, 1999 WL 13934 (E.D. La. 1999) ("[b]y simply making 'boxes of documents' available for inspection, defendant may also have failed to make the documents available in the manner contemplated by Rule 34(b)"); Bowman v. Orleans Parish School Board, 2004 U.S. Dist. LEXIS 3783, 2004 WL 459313 (E.D. La. 2004).

Here, CooperVision's assertion that it produced documents as kept in the ordinary course of business is unsupported *ipse dixit.* Moreover, the documents appear to have been produced in much the same manner as making "boxes of documents" available. [*14] Therefore, the court concludes that CooperVision should provide more individualized responses to the requests, as numbered and identified therein. It will suffice, however, for CooperVision to (a) identify which documents are responsive to which lenses by a range of bates numbers, e.g. "1000-1012, 1075-98 are responsive to # 1, 8273-9837, 7653-8001 are responsive to # 2, etc. . . ." on or before **August 13, 2007,** and (b) provide within 96 hours whatever information it has on any specific documents in CooperVision's production about which CIBA has remaining correlation questions.

CIBA's motion on this issue is **GRANTED** to the extent stated above, but is otherwise **DENIED.**

*ii. Category 2: Documents sufficient to show the structure, ballast and otherwise, for all of CooperVi-*

*sion's aspherical lenses that are prior art to any of the claims of the toric patents.*

CIBA originally moved the court to order Cooper-Vision to search for and produce information on all historical "aspherical" lenses CooperVision has ever produced. In reply to CooperVision's assertion that the request was too broad, CIBA narrowed its request to documents related to all of CooperVision's "prior art ballasted lens, regardless [*15] of whether they are CooperVision's lenses, or lenses from a predecessor company of CooperVision." (emphasis added).

CooperVision responded that it has produced documentation for two prior art ballasted lens: Ultra T and Xcel (Encore), and further certified that such production encompasses all of its documentation on its prior art ballasted lens. CIBA remains skeptical because the produced documents comprise only 56 pages on Ultra T.

The court has no way to know whether more documentation exists than has been produced. Given, however, CooperVision's certification that it has already produced all of its documentation on its relevant prior art ballasted lens, CIBA's motion to compel is **DENIED as moot**. Should depositions or other discovery later reveal that CooperVision possesses any other design documents relevant to the invalidity claim or defense, CooperVision may face imposition of sanctions for its failure to produce them.

*iii. Category 3: Documents from IER that are relevant to any claim or defense of a party.*

CIBA moves to compel all documents from the Institute for Eye Research that are relevant to any claim or defense of either party. CIBA alleges that the development work for the [*16] alleged inventions in CooperVision's patents occurred either at or in partnership with the Institute for Eye Research, an Australian company that tests and develops contact lenses. CIBA states that Arthur Back, the sole inventor listed on the Toric Patents, worked for IER at the time of the alleged inventions and now works for CooperVision.

CooperVision responds that it already has requested all documents from IER that relate to the design, development or clinical studies involved with any of the patents-in-suit, and any communication between IER and CooperVision regarding CIBA's O2Optix lenses. Accordingly, CIBA's motion to compel this information is **DENIED as moot**.

CIBA further seeks:

a) IER documents sufficient to show the tool and mold designs for all of IER's (or related/affiliated company's) prior art molded contact lenses, and;

b) documents sufficient to show the structure, ballast and otherwise, for all IER (or related/affiliated company's) aspherical (e.g., toric, bifocal, etc.) lenses that are prior art to any of the claims of the toric patents.

Section 271 of Title 35 of the United States Code provides, "whoever without authority makes, uses, offers to sell, or sells any patented [*17] invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Documents relating to the concept, design and manufacturing of allegedly infringing products are relevant for purposes of discovery since making a patented product without authorization is, itself, an infringing activity. Furthermore, process documents may lead to the discovery of admissible evidence since product features are defined during the concept, design and manufacturing process.

However, CIBA has not justified its request for documents showing the tool and mold design for *all* of IER's prior art lenses as relevant to the validity of the patents in suit. *See* 35 U.S.C. § 102(a) and (g)(2)("the invention was known or used by others in this country;" "before such person's invention thereof, the invention was made in this country by another . . . ."); 1 DONALD S. CHISUM, CHISUM ON PATENTS § 3.05[5](on-line edition). Given that prior inventions 12 or use must be in this country to affect validity, the research lenses designed by the IER in Australia are not relevant to the validity of the patents. Therefore, CIBA's motion to compel [*18] the documents for any of IER's prior art lenses is **DENIED**.

SIGNED this 6 day of August, 2007.

Earl S. Hines

United States Magistrate Judge

LEXSEE



Caution
As of: Oct 30, 2009

**TRUGMAN-NASH, INC. and TRIO CHEESE IMPORTS, INC., Plaintiffs, - against - NEW ZEALAND DAIRY BOARD, MILK PRODUCTS HOLDINGS (NORTH AMERICA) INC. and WESTERN DAIRY PRODUCTS, INC., Defendants. WESTERN DAIRY PRODUCTS, INC., Plaintiff, - against - TRUGMAN-NASH, INC. and TRIO CHEESE IMPORTS, INC., Defendants.**

**93 Civ. 8321 (CSH), 93 Civ. 8329 (CSH)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1995 U.S. Dist. LEXIS 1745**

**February 14, 1995, Decided**
**February 16, 1995, FILED [*1]**

**COUNSEL:** For TRUGMAN-NASH, INC., TRIO CHEESE IMPORTS, INC., plaintiffs (No. 93-CV-8321): Edward J.M. Little, Zuckerman, Spaeder, Goldstein Taylor & Kolker, New York, NY. For WESTERN DAIRY PRODUCTS, INC., plaintiff (No. 93-CV-8329): Karen S. Krieman, Shea & Gould, New York, NY.

For WESTERN DAIRY PRODUCTS, INC., NEW ZEALAND DAIRY BOARD, MILK PRODUCTS HOLDINGS (NORTH AMERICA) INC., defendants (No. 93-CV-8321): Vikki A. Adams, Graham & James, New York, NY. Lawrence W. Newman, Baker & McKenzie, New York, NY. Karen S. Frieman, Cowan, Gold, Debaets, Abrahams & Gross, New York, NY. For TRUGMAN-NASH, INC., TRIO CHEESE, INC., defendants (No. 93-CV-8329): Edward J.M. Little, Zuckerman, Spaeder Goldstein Taylor & Kolker, New York, NY.

For WESTERN DAIRY PRODUCTS, INC., NEW ZEALAND DAIRY BOARD, MILK PRODUCTS HOLDINGS (NORTH AMERICA) INC., counter-claimants (No. 93-CV-8321): Vikki A. Adams, Graham & James, New York, NY. Lawrence W. Newman, Baker & McKenzie, New York, NY. Karen S. Frieman, Cowan, Gold, Debaets, Abrahams & Gross, New York, NY. For TRUGMAN-NASH, INC., TRIO CHEESE, INC., counter-claimants (No. 93-CV-8329): Edward J.M. Lit-

tle, Zuckerman, Spaeder, Goldstein Taylor & Kolker, New [*2] York, NY.

For TRUGMAN-NASH, INC., TRIO CHEESE IMPORTS, INC., counter-defendants (No. 93-CV-8321): Edward J.M. Little, Zuckerman, Spaeder, Goldstein Taylor & Kolker, New York, NY. For WESTERN DAIRY PRODUCTS, INC., counter-defendant (No. 93-CV-8329): Karen S. Frieman, Shea & Gould, New York, NY.

**JUDGES:** NAOMI REICE BUCHWALD, CHIEF MAGISTRATE JUDGE

**OPINION BY:** NAOMI REICE BUCHWALD

**OPINION**

*MEMORANDUM AND ORDER*

**NAOMI REICE BUCHWALD**

**CHIEF MAGISTRATE JUDGE**

By letter, dated February 6, 1995, plaintiffs requested monetary sanctions for defendants' failure to produce the attachments to document A00350 in response to a document request calling for defendants' document retention policy. Having reviewed the docu-

1995 U.S. Dist. LEXIS 1745, *

ments, which were not produced until the matter was twice presented to the Court, I concur with plaintiffs' position that the documents are part of the "policy" and should have been produced without the necessity of any motion. Accordingly, plaintiffs are awarded $ 500 representing reasonable expenses, including attorney's fees, Fed. R.Civ. P. 37(b)(2).

**IT IS SO ORDERED.**

DATED: New York, New York

February 14, 1995

NAOMI REICE BUCHWALD

CHIEF MAGISTRATE JUDGE

LEXSEE



Caution
As of: Oct 30, 2009

**ANNIE TUMMINO, et al., Plaintiffs, v. ANDREW C. VON ESCHENBACH, in his official capacity as Commissioner of the Food and Drug Administration, Defendant.**

**CV 05-366 (ERK)(VVP)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**2006 U.S. Dist. LEXIS 81286**

**November 6, 2006, Decided**
**November 6, 2006, Filed**

**SUBSEQUENT HISTORY:** Later proceeding at Tummino v. Von Eschenbach, 2007 U.S. Dist. LEXIS 35465 (E.D.N.Y., May 15, 2007)

**PRIOR HISTORY:** Tummino v. Von Eschenbach, 427 F. Supp. 2d 212, 2006 U.S. Dist. LEXIS 19101 (E.D.N.Y., 2006)

**CORE TERMS:** discovery, deliberative process, log, citations omitted, bad faith, withheld, disclosure, in camera, internal quotation marks omitted, privileged, protective order, agency action, predecisional, deliberative, administrative record, deliberations, docket entry, unreasonable delay, separation of powers, withhold, shield, staff, deposition, agency decisions, claim of privilege, decisionmaking processes, exemption, quoting quoting, public interest, withholding

**COUNSEL:** [*1] For Annie Tummino in her individual capacity, as Vice-Chair of the Women's Liberation Birth Control Project, as Coordinator of the Morning-After Pill Conspiracy, and on behalf of women who need Emergency Contraception., Erin T. Mahoney in her individual capacity, as Chair of the Women's Liberation Birth Control Project, as Coordinator of the Morning-After Pill Conspiracy, and on behalf of women who need Emergency Contraception., Carol Giardina in her individual capacity, as Coordinator of the Morning-After Pill Conspiracy, and on behalf of women who need Emergency Contaception, Kelly Mangan in her individual capacity, as President of the University of Florida Campus Chapter of the National Organization for Women, as Corrdinator

of the Morning-After Pill Conspiracy, and on behalf of women who need Emergency Contaception, Stephanie Seguin in her individual capacity, as Chair of the Florida National Organization for Women Young Feminist Task Force, as Coordinator of the Morning-After Pill Conspiracy, and on behalf of women who need Emergency Contaception, Lori Tinney in her individual capacity, as President of the Gainesville Chapter [*2] of the National Organization for Women, as Coordinator of the Morning-After Pill Conspiracy, and on behalf of women who need Emergency Contraception, Jennifer Brown in her individual capacity, as Coordinator of the Morning-After Pill Conspiracy, and on behalf of Women who need Emergency Contraception, Candace Churchill in her individual capacity, as Coordinator of the Morning-After Pill Conspiracy, and on behalf of women who need Emergency Contaception, Francie Hunt in her individual capacity, as Coordinator of the Morning-After Pill Conspiracy, and on behalf of women who need Emergency Contaception, Plaintiffs: Andrea H Costello, Shelbi D Day, Southern Legal Counsel, Inc, Gainsville, FL; Simon Heller, Nan E Strauss, Sanford Cohen, Center for Reproductive Rights, New York, NY; Vivien Maxine Labaton, Bonnie Scott Jones, Center for Reproductive Rights, New York, NY US.

For Association of Reproductive Health Professionals on its own behalf and on behalf of its members and women who need Emergency Contraception, National Latina Insitute for Reproductive Health on its own behalf and on behalf of women who need Emergency Contraception, Plaintiffs: Simon Heller, Nan E Strauss, Sanford

Cohen, Center for Reproductive Rights, New York, NY; Vivien [*3] Maxine Labaton, Bonnie Scott Jones, Center for Reproductive Rights, New York, NY US.

For Aurora DeMarco, Angelica Jaffe, Robert Jaffe, Aliza Lederer-Plaskett, Catherine Lederer-Plaskett, Gabrielle Marks, Jonathan Marks, Plaintiffs: Nan E Strauss, Sanford Cohen, Simon Heller, Center for Reproductive Rights, New York, NY; Vivien Maxine Labaton, Center for Reproductive Rights, New York, NY US.

For Lester M. Crawford in his official capacity as acting commissioner of the Food and Drug Administration, Defendant: F. Franklin Amanat, United States Attorneys Office, Brooklyn, NY; Michael L. Sturm, Wiley, Rein & Fielding LLP, Washington, DC US.

For Dr. Andrew C. von Eschenbach substituted in place and stead of Dr. Lester M. Crawford, Defendant: F. Franklin Amanat, United States Attorneys Office, Brooklyn, NY.

For Andrew C. von Eschenbach in his official capacity as Acting Commissioer of the Food and Drug Administration, Defendant: F. Franklin Amanat, Steven Michael Warshawsky, United States Attorneys Office, Brooklyn, NY.

For State of Wisconsin, Intervenor: Richard Briles Moriarty, Wisconsin Department of Justice, Madison, WI UNITE; Nelle A. Rohlich, Wisconsin Department [*4] of Justice, Madison, WI US.

**JUDGES:** VIKTOR V. POHORELSKY, United States Magistrate Judge.

**OPINION BY:** VIKTOR V. POHORELSKY

**OPINION**

**DECISION AND ORDER**

POHORELSKY, Magistrate Judge:

Before the court are various issues concerning discovery in this action, which challenges several determinations made by the Food and Drug Administration ("FDA") [1] concerning Plan B, the so-called "morning after" pill. The plaintiffs seek an order requiring the production of various documents withheld on the basis of the deliberative process privilege, and have identified various items of discovery they wish to complete. The defendant seeks a protective order quashing all present and future discovery in this matter, and in the alternative an order prohibiting discovery from the White House. Much of the factual and procedural background for these

issues has been addressed in other opinions of the court, familiarity with which is presumed. For the reasons below, the motion for a protective order is denied, and discovery shall proceed as set forth in the following rulings.

1  Because the individual defendant is sued in name only, the real party in interest is the defendant here is the FDA, and this opinion accordingly refers to the FDA as if it were the defendant.

[*5] **I. THE DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

As the protective order sought by the defendant would preclude the need to address the other discovery issues, the court addresses that motion first. The FDA had sought a similar protective order precluding all discovery and limiting this court's review to the administrative record earlier in the proceedings. That motion relied primarily on the so-called "record rule," which generally limits judicial review of agency decisions to the administrative record identified by the agency. The court denied the motion in a February 2006 decision on the basis of various exceptions which, if established, would allow "extra-record investigation by the reviewing court . . . ." *Tummino v. von Eschenbach*, 427 F. Supp. 2d 212, 230 (E.D.N.Y. 2006) (quoting *Nat1 Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997)) (additional citations omitted). Those exceptions included, "[1] a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or [2] the absence of formal administrative findings [which] makes such investigation necessary in order to determine [*6] the reasons for the agency's choice." *Id.* (quoting *Hoffman*, 132 F.3d at 14 (citations omitted)). This court also recognized, as an additional basis for piercing the administrative record, that the plaintiffs' claims included one which sought to "compel agency action unlawfully withheld or unreasonably delayed." *Id. at 231* (citing *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000)) (additional citations omitted). In denying the FDA's motion for a protective order, the court concluded that the plaintiffs had made a sufficiently strong showing of bad faith on the part of FDA officials to warrant discovery beyond the administrative record. *See id. at 231-34*.

The instant motion rests on recent decisions by the FDA which constitute final agency actions on the two applications that underlie the plaintiffs' claims. Specifically, the FDA has denied the Citizen's Petition seeking approval of over-the-counter ("OTC") sales of Plan B without age restrictions and has granted an amended supplemental new drug application ("SNDA") which

permits Barr Laboratories to make OTC sales of Plan B to persons 18 and older.

The defendant argues [*7] that these agency actions render the plaintiffs' unreasonable delay claim moot, an argument that the plaintiffs cannot, and do not, contest. Indeed, the plaintiffs have withdrawn the unreasonable delay claim in a recently filed amended complaint, but continue to assert two other claims under the Administrative Procedure Act ("APA"). Specifically, the fifth amended complaint attacks the decisions imposing age restrictions on OTC access to Plan B as "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law," in violation of 5 U.S.C. § 706(2)(A), and as beyond its statutory authority, in violation of 5 U.S.C. § 706(2)(C). Thus, the withdrawal of the unreasonable delay does not end the court's inquiry into the FDA's decisionmaking processes. And extra-record review of agency decision-making is just as appropriate when the claims involve final agency action as when the claims involve claims of unreasonable delay. See, e.g., Sokaogon Chippewa Cmty. v. Babbitt, 961 F. Supp. 1276 (W.D. Wis. 1997). Thus, the mere change of claims does not render moot the court's previous finding that a preliminary showing [*8] of bad faith justifies discovery beyond the administrative record.

The defendant takes the argument one step further, however, by arguing that because the unreasonable delay claim is moot, the agency's delays in making its decisions are immaterial and cannot amount to bad faith justifying judicial review beyond the administrative record. The argument is flawed for at least two reasons. First, it rests on the faulty premise that the FDA's delays were the principal basis for the court's conclusion that a strong preliminary showing of bad faith had been made. A review of the court's decision discloses that delay was but one of the factors considered by the court in reaching that determination. The other factors included questionable conduct surrounding various interim determinations made by the FDA in addressing Plan B issues. The FDA seeks to deflect the significance of that conduct by arguing that the FDA's interlocutory decisions are not reviewable by this court, a premise that, itself, is of dubious merit. See 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of [*9] the final agency action."). It can only follow then that the court be able to consider the agency's conduct surrounding those interlocutory decisions in reaching a determination that a strong preliminary showing of bad faith remains. And this is true regardless of whether the plaintiffs here have standing to challenge the final decision concerning Barr's SNDA for, as the defendant's counsel acknowledges, the agency's actions on the Citizen's Petition and Barr's SNDA were intertwined. See July 26, 2006 Tr. at 40:16-19 ("if Barr wins, they win, and if Barr loses, they lose"). [2]

> 2   The term "Tr." preceded by a date refers to the transcript of a conference or hearing held on the date indicated.

Second, and perhaps more importantly, the FDA's delays in making its determinations continue to be relevant to a showing of bad faith even though final decisions have been made. Unreasonable delay itself can, of course, constitute arbitrary and capricious conduct. See Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp., 489 U.S. 561, 590, 109 S. Ct. 1361, 103 L. Ed. 2d 602 (1989) [*10] (Scalia, J., concurring in part). Although unreasonable delay by itself furnishes no basis for relief once final agency action is taken, it does not lose its relevance as a factor to be considered in determining whether it is appropriate to extend review of that final agency action beyond the administrative record. In other words, if questionable delay, coupled with other factors, is found to establish a strong preliminary showing of bad faith justifying review beyond the administrative record, that strong preliminary showing does not evaporate simply because the agency finally took action that had been unreasonably delayed.

The court thus finds no basis for upsetting its prior determination that the plaintiffs have made a sufficiently strong preliminary showing of bad faith that justifies discovery beyond the administrative record. Accordingly, the motion for a protective order staying the completion of discovery is denied.

## II. DISCOVERY TO BE COMPLETED

The plaintiffs have identified essentially three areas of discovery that remain to be pursued. First, they wish to depose Dr. Sandra Kweder, an FDA employee, concerning her knowledge of matters relating to decisions made [*11] by the FDA. Second, they wish to serve subpoenas for documents from the White House and testimony from a former member of the White House staff, Jay Lefkowitz, concerning contacts between the White House and high-ranking officials of the FDA about Plan B. Finally, they wish to complete outstanding documentary discovery which includes the court's review of documents withheld by the defendant on the basis of the deliberative process privilege.

### A. Deposition of Dr. Kweder

As the defendant does not oppose the deposition of Dr. Kweder on any grounds other than that all discovery should be stayed (although he contends her testimony would be cumulative), the plaintiffs should schedule and

complete her deposition as soon as reasonably convenient.

## B. Subpoenas for White House Information

The defendant's opposition to discovery from the White House rests largely on separation of powers concerns, as enunciated in *Cheney v. United States District Court,* 542 U.S. 367, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004), which arise when the vice-president and other senior officials in the executive branch are directed to provide discovery. The defendant's standing to raise those concerns is suspect, since the [*12] defendant is not asserting his own interests but the interests of absent third parties. Thus, parties typically are deemed to lack standing to quash subpoenas issued to non-parties under Rule 45 absent a claim of privilege or some proprietary or personal interest in the subpoenaed matter. *See, e.g., Estate of Ungar v. Palestinian Authority,* 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005); *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshall Academy,* 230 F.R.D. 18, 21 (D.D.C. 2005); *Green v. Sauder Mouldings, Inc.,* 223 F.R.D. 304, 306 (E.D. Va. 2004). A party may of course seek a protective order under Rule 26(c), even as to discovery sought from third parties, but in those circumstances the party generally must be seeking to protect its own interests in precluding the discovery, not the interests of the third party. *American Rock Salt Co., LLC v. Norfolk Southern Corp.,* 228 F.R.D. 426, 466 (W.D.N.Y. 2004); *see also* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice And Procedure* § 2035, at 475 (2d [*13] ed. 1994) ("A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself, but a party may seek an order if it believes its own interest is jeopardized by discovery sought from a third person.").

The court is particularly reluctant to consider the separation of powers concerns raised by the defendant now that his counsel has reversed their initial position that the government would abide by whatever rulings this court made concerning the discovery sought by the plaintiffs from the White House. (*Compare* Oct. 11, 2006 Tr. 44:17-45:17, *with* Aug. 3, 2006 Tr. 23:16-24:4.) As the White House and the members of its staff from whom the information is sought are not before this court, in the absence of their agreement to abide by this court's decision any ruling made here on those issues would be simply advisory. Rather, because any subpoena for the information sought by the plaintiffs from the White House must emanate from the United States District Court for the District of Columbia, the White House and its staff have the right to have any separation of powers

issues, which they will undoubtedly [*14] raise, determined by that court. *See* Fed. R. Civ. P. 45(c).

Although this court therefore declines to rule on the separation of powers arguments, as relevancy is part of the *Cheney* calculus in resolving separation of powers concerns, this court offers the following brief observation about the relevancy of the information sought from the White House. The central theory of the plaintiffs' claims here is that the FDA's decisions concerning Plan B were arbitrary and capricious and contrary to law because they were guided by improper political considerations. There is no dispute that high officials of the FDA, including two commissioners, had direct discussions with members of the White House staff concerning the FDA's decisions about Plan B. (*See* Oct. 11, 2006 Tr. 25:2-8.) [3] Information concerning the content of those communications is thus directly relevant to the question whether improper political considerations infected the commissioners', and therefore the FDA's, decisionmaking processes. In deposition testimony, the commissioners themselves have characterized the discussions as purely informational. But that should not prevent [*15] to the plaintiffs from testing those characterizations by obtaining discovery from the other participants in those discussions by means of sufficiently specific document requests and depositions. The court has not closely examined the proposed scope of discovery sought from the White House by the plaintiffs. The question of how broad the discovery ought to be is best left to the court that hears from the persons subpoenaed concerning the burdens the requests impose on them, and the separation of powers concerns that the requested discovery raises. It is enough for this court to say that some measure of inquiry into White House involvement in Plan B decisionmaking ought to be allowed.

> 3   Jay Lefkowitz, the individual whom the plaintiffs wish to depose, is described by the defendant as "a former high-ranking advisor to the President." (Def.'s Mem. Supp. Prot. Order Mot. 1.)

## C. Documents Withheld Under Deliberative Process Privilege

Some background is necessary before proceeding to the merits of the parties' [*16] arguments concerning the documents withheld by the defendant on the basis of the deliberative process privilege. At a discovery hearing on May 31, 2006, this court overruled the defendant's assertion of the deliberative process privilege as a basis for withholding documents sought by the plaintiffs in their second set of document requests. [4] The defendant appealed that ruling [5] to Judge Korman, who deferred decision on the objection, opting instead to deal with the issue "on a practical basis." (July 26, 2006 Tr. 4:3-4.) To

that end, Judge Korman provided the defendant an opportunity (without prejudice to any arguments advanced by the plaintiffs) to withhold, and subsequently submit to this court for *in camera* review, a subset of the assertedly privileged documents. In conducting the *in camera* review, this court was instructed to "consider whether the documents evidence bad faith such that they would be directly relevant to the plaintiffs' claims and assure that the privilege [sic] documents are not merely duplicative of previously-disclosed documents." (Minute Entry and Order for July 26, 2006 Status Conference, *available at* docket entry 179.) Judge Korman instructed [*17] further that those documents which this court finds evidence bad faith should be disclosed by the defendant. (*See* July 26, 2006 Tr. 13 ("[T]he instruction to the magistrate should be is that if in his judgment it is deliberative, these documents evidence bad faith, that they should be disclosed.").) In accordance with Judge Korman's directions, the defendant submitted 1,179 pages of documents along with a privilege log and supporting affidavit by an FDA official to this court for *in camera* review. (*See* Def.'s Letter to Mag. J. Pohorelsky, Aug. 11, 2006, *available at* docket entry 183.) In the defendant's estimate, this submission constitutes approximately fifteen to twenty percent of the assertedly privileged documents responsive to the document request at issue. (July 26, 2006 Tr. 4:19-24.) More significantly, as counsel for the defendant pointed out at the latest hearing, this 1,179-page submission represents only "one-sixth" of the documents the defendant intends to withhold on the basis of the deliberative process privilege. (Oct. 11, 2006 Tr. 42:11-22.)

4   That request seeks the production of "all correspondence, including email correspondence, concerning Plan B that was received by, sent by, or copied to any of the following individuals: Jane Axelrad, Jin Chen, Lester Crawford, Steven Galson, John Jenkins, Mark McClellan, and Janet Woodcock." (Pls.' Letter to Mag. J. Pohorelsky, May 5, 2006, *available at* docket. entry 133.)

[*18]

5   The following colloquy took place at the hearing, which forms the basis of the defendant's objection:

MR. AMANAT: [Y]our Honor, just to clarify for the record your Honor's ruling with regard to deliberative process privilege. Am I correct in understanding that your Honor has precluded the government from asserting the deliberative process privilege in regards to

any document that may be responsive to these discovery requests?

THE COURT: No, you can assert any privilege you want but the deliberative process privilege is not a basis to withhold production. I am overruling that as a basis on which to withhold production. It's a qualified privilege and the privilege in my view with respect to deliberations concerning Plan B has been effectively taken out of this case by the Court's prior [February 2006] ruling.

(May 31, 2006 Tr. 62:12-63:5.)

The plaintiffs have challenged the defendant's *in camera* submission, arguing that the log itself is insufficient in some respects and questioning the assertions of the privilege as to some of the documents identified in the log. [*19] (*See* Pls.' Letter to Mag. J. Pohorelsky 1-4, Aug. 29, 2006, *available at* docket entry 191.) The plaintiffs also point to various documents identified in the log which, in their view, are likely to evidence bad faith. (*See* Pls.' Response to Def.'s Aug. 11, 2006 Privilege Log, *available at* docket entry 191.)

Given the parties' positions and Judge Korman's instruction, the court's task here is threefold. First, the court must make a threshold determination as to whether the privilege applies at all to the documents withheld by the defendant. Certainly, those documents found to be non-privileged must be disclosed. Indeed, the defendant construes the plaintiffs' opposition to its *in camera* submission as a "motion to compel production of documents withheld on the basis of the deliberative process privilege." (*See, e.g.,* Def.'s Mem. of Law Opp'n Pls.' Mot. to Compel, *available at* docket entry 202.) These non-privileged document are listed in Appendix A. Second, the court must undertake the task assigned by Judge Korman, namely, reviewing the remaining documents, i.e., those not listed in Appendix A, for evidence of bad faith, and ordering the disclosure of those [*20] that contain such evidence. Those documents that evidence bad faith are identified in Appendix B. As to the remainder of the submission, i.e., documents not listed in Appendices A and B, including the accompanying privilege log, the court addresses various defects it finds with the defendant's assertion of the privilege. Those documents which exhibit such defects are listed in Appendix C.

One aspect of Judge Korman's assignment is beyond this court's capability at present, however. In addition to reviewing the withheld documents for evidence of bad

faith, Judge Korman requested that this court "assure that the privilege[d] documents are not merely duplicative of previously-disclosed non-privileged documents." (Minute Entry and Order for July 26, 2006 Status Conference, *available at* docket entry 179). Because the court has not been provided with all previously disclosed documents, no such comparison could be undertaken. To the extent the defendant objects to the disclosure of the privileged documents identified in Appendix B to this opinion on the basis of redundancy, it may submit copies of already produced documents which support its objection for this court's review. Such [*21] submissions must be made within five days.

**1. Review of Documents for Proper Application of the Deliberative Process Privilege**

   **a. Scope of the Privilege**

   The common-law deliberative process privilege is a "sub-species" of the work-product privilege, available to the government for purposes of civil discovery. *See Nat'l Council of La Raza v. U.S. Dep't of Justice,* 411 F.3d 350, 356 (2d Cir. 2005) (citation omitted); *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 125 F.R.D. 51, 53 (S.D.N.Y. 1989) (citation omitted). When asserted, the privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001) (citation and internal quotation marks omitted); *accord Nat'l Council of La Raza,* 411 F.3d at 356 (citation omitted). [6] The policy underlying the deliberative process privilege,

> [R]ests on the obvious realization that officials will not communicate candidly among themselves [*22] if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by open and frank discussion among those who make them within the Government.

*Klamath,* 532 U.S. at 8-9 (citations omitted). As one court put it, "when [determining] whether an agency properly withheld documents under the deliberative process privilege, the critical question that must be answered is whether 'disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Wilderness Soc'y v. U.S. Dep't of*

*Interior,* 344 F. Supp. 2d 1, 10 (D.D.C. 2004) (quoting *Formaldehyde Inst. v. U.S. Dep't of Health and Human Servs.,* 281 U.S. App. D.C. 285, 889 F.2d 1118, 1122 (D.C. Cir. 1989)).

   6   *See also* 5 U.S.C. § 552(b)(5) (otherwise known as "Exemption 5" of the Freedom of Information Act, which incorporates various civil discovery privileges, including the deliberative process privilege, thus allowing the government to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.").

   [*23] To properly assert the privilege as to inter- or intra-agency documents, the government must satisfy a two-part test, showing that the documents it seeks to shield from disclosure are both "predecisional" and "deliberative." *Nat'l Council of La Raza,* 411 F.3d at 356 (citations omitted). In doing so, however, the government must avoid "conclusory assertion[s]" of the privilege, "where no factual support is provided for an *essential* element of the claimed privilege or shield." *Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice,* 823 F.2d 574, 585 (D.C. Cir. 1987) (citations and internal quotation marks omitted).

   "A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Tigue v. U.S. Dep't of Justice,* 312 F.3d 70, 80 (2d Cir. 2002) (citation and internal quotation marks omitted). This must be distinguished from a document that is "postdecisional" or one which "set[s] forth the reasons for an agency decision already made." *Dipace v. Goord,* 218 F.R.D. 399, 403 (S.D.N.Y. 2003) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Dev.,* 421 U.S. 168, 184, 95 S. Ct. 1491, 44 L. Ed. 2d 57 (1975)) [*24] (additional citation and internal quotation marks omitted). Nor is a document predecisional, if it is "'merely peripheral to actual policy formation.'" *Tigue,* 312 F.3d at 80 (citations omitted). Courts have found a document "predecisional" if the agency can "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." *Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York,* 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (quoting *Providence Journal Co. v. U.S. Dep't of Army,* 981 F.2d 552, 557 (1st Cir. 1992)) (internal quotation marks omitted); *accord Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 482 (2d Cir. 1999) (citations omitted); *Mitchell v. Fishbein,* 227 F.R.D. 239,

250 (S.D.N.Y. 2005) (citations omitted). Examples of documents considered predecisional for purposes of the privilege are "recommendations, draft documents, proposals, suggestions, [*25] other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Tigue,* 312 F.3d at 80 (citation and internal quotation marks omitted).

Even these documents, however, may lose their predecisional character "'if . . . adopted, formally or informally, as the agency position on an issue or . . . used by the agency in its dealings with the public.'" *Nat'l Council of La Raza,* 411 F.3d at 356-57 (quoting *Coastal States Gas Corp v. U.S. Dep't of Energy,* 199 U.S. App. D.C. 272, 617 F.2d 854, 866 (D.C. Cir. 1980)). Disclosure is warranted in such circumstances because, as the Supreme Court explained,

> The probability that an agency employee will be inhibited from freely advising a decisionmaker for fear that his advice if adopted, will become public is slight. First, when adopted, the reasoning becomes that of the agency and becomes its responsibility to defend. Second, agency employees will generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency. Moreover, the public interest in knowing the reasons for a policy actually adopted [*26] by an agency supports [disclosure].

*Id.* (quoting *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 161, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975)).

A document is "deliberative" if it "actually . . . relate[s] to the process by which policies are formulated." *Grand Cent. P'ship,* 166 F.3d at 482 (quoting *Hopkins v. HUD,* 929 F.2d 81, 84 (2d Cir. 1991) (quoting *Jordan v. U.S. Dep't of Justice,* 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc))) (internal quotation marks omitted). To make this determination, courts have found it helpful to look at whether the document "(i) formed an essential link in a specified consultative process, (ii) reflected the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Id.* (quoting *Providence Journal Co., 981 F.2d at 559* (quoting *Nat'l Wildlife Fed'n v. Forest Serv.,* 861 F.2d 1114, 1118-19 (9th Cir. 1988))) (internal quotation marks omitted). To that end, documents "reflecting advisory opinions, recommendations, and deliberations comprising part of a process [*27] by which governmental decisions and policies are formulated," fall within the class of deliberative documents contemplated by the privilege. *Id.* (quoting *Hopkins,* 929 F.2d at 84-85 (quoting *Sears,* 421 U.S. at 150)) (internal quotation marks omitted).

To be sure, the concern here is whether the documents at issue "reflect the 'give-and-take of the consultative process.'" *Allocco Recycling, Ltd. v. Doherty,* 220 F.R.D. 407, 414 (S.D.N.Y. 2004) (quoting *Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F. Supp. 2d 252, 263 (D.D.C. 2004)) (additional citations omitted). To qualify for the privilege, however, such "give-and-take must *regard opinions on legal or policy matters." Id.* at 414 (quoting *Judicial Watch,* 297 F. Supp. 2d at 263) (additional citations and internal quotation marks omitted) (emphasis added). Therefore, even where "give-and-take" involves "comments from an agency employee . . . with respect to the content of documents," "[i]f the [documents] themselves merely restate facts, and do not involve 'legal or policy matters,' any comments or opinions about these same [documents] [*28] are not privileged.'" *Id.* (quoting *Judicial Watch,* 297 F. Supp. 2d at 263 (quoting *Vaughn v. Rosen,* 173 U.S. App. D.C. 187, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975))). By extension then, "purely factual" materials which do not reflect an agency's deliberations are also not covered by the privilege. *Id.* (citations omitted). Therefore, "[i]f factual portions of a document are 'severable without compromising the private remainder of the document[],' then the factual portions must be disclosed, even though the deliberative material remains protected." *Allocco Recycling, Ltd. v. Doherty,* 220 F.R.D. 407, 412 (S.D.N.Y. 2004) (quoting *EPA v. Mink,* 410 U.S. 73, 91, 93 S. Ct. 827, 35 L. Ed. 2d 119 (1973), *superseded on other grounds by* Pub. L. No. 93-502, 88 Stat. 1561 (1974)).

Lastly, the court emphasizes that the deliberative process privilege, even if properly asserted, does not guarantee nondisclosure. That is to say the privilege is qualified, and must yield to certain competing interests. *See In re Franklin Nat'l Bank Sec. Litig.,* 478 F. Supp. 577, 582 (E.D.N.Y. 1979) (Weinstein, J.). "Foremost is the interest of the litigants, and ultimately [*29] of society, in accurate judicial fact finding." *Id.* (citations omitted). Other competing interests which the court may take into account are: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* at 583 (citations omitted). Accord *In re Subpoena Served Upon Comptroller of Currency, and Secretary of Bd. of Governors of Fed. Reserve Sys.,* 296 U.S. App. D.C. 263, 967 F.2d 630, 634 (D.C. Cir. 1992); *Martin v. Valley Nat. Bank of Arizona,* 140 F.R.D. 291, 303-04 (S.D.N.Y. 1991).

Especially applicable to the present matter, and as the *Franklin National Bank* case makes clear, the deliberative process privilege must, at times, yield to the "public interest in opening for scrutiny the government's decision making process." *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 582. As Judge Weinstein, quoting the late-Justice Brennan, cogently [*30] observed, this limitation is a reflection of a certain "paradox" inherent in the exercise of the deliberative process privilege -- that is, "to enable the government more effectively to implement the will of the people, the people are kept in ignorance of the workings of their government.'" *Id.* (quoting *Herbert v. Lando*, 441 U.S. 153, 195, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979)) (Brennan, J., dissenting)). "[J]ustification for the privilege [is therefore] attenuated" "when the public's interest in effective government would be *furthered* by disclosure," and disclosure is proper. *Id.* (emphasis added). Of particular relevance, "where the documents sought may shed light on alleged government malfeasance, the privilege is denied." *Id.* (additional citations omitted).

### b. Documents Not Falling Within the Scope of the Privilege

Applying the principles set forth above, the court finds that the documents listed in Appendix A to this opinion are not covered by the privilege. Foremost among these unprivileged documents are "agendas" or "executive summaries" (draft and final versions) of meetings. These documents typically contain a brief background on the Plan B OTC-switch application [*31] process, and a listing of topics for discussion. (*See, e.g.*, Tummino-895-96, 1063-65, 2737-39, 3879-81, 3884-86, 3888-90, 4049-51, 4079-80, 4081-83, 4693-94, 4702-03.) [7] These documents may of course form the basis for internal deliberations on agency policy. However, as the documents do not disclose what was eventually discussed or indeed whether they were even relied upon by agency officials, these types of documents are neither "predecisional," *Grand Cent. P'ship*, 166 F.3d at 482 (documents which are "merely peripheral to actual policy formation" are not predecisional) (citation omitted), nor "deliberative," *id.* (documents which do not reflect personal opinions of the writer are not deliberative) (citations omitted). [8]

7   Citations to the Bates numbers assigned to documents involved in this litigation are in the form of "Tummino-XXXXX."

8   The defendant had, at certain junctures of the discovery process, apparently operated under a similar rationale where some of the documents it turned over to the plaintiffs without any claim of privilege also contain agenda-like language. (*See, e.g.*, Tummino-1818-1822, attached to Ex.C of

Pls.' Letter to Mag. J. Pohorelsky, Aug. 29, 2006.)

[*32] As to the other documents listed in Appendix A, the court overrules the assertion of privilege because they are either "purely factual" in nature, in which case their disclosure would raise none of the concerns the privilege was meant to address, i.e., exposure of internal agency deliberations chilling future inter-governmental debate, or have, in one form or other, been "adopted, formally or informally, as the agency position on an issue or . . . used by the agency in its dealings with the public." *Nat'l Council of La Raza*, 411 F.3d at 356-57 (citation and internal quotation marks omitted).

### 2. Review of Documents for Evidence of Bad Faith

Having set aside those documents which do not qualify for the privilege, the court turns to a review of the defendant's submission for evidence of bad faith. [9] That task is of course preceded by defining what "bad faith" means in relation to the present matter. Because of the case's complexity, "bad faith" should not, and indeed, cannot be distilled into a one-line definition. Rather, consistent with the claims pressed by the plaintiffs, and in reliance on past submissions and its February 24, 2006 decision, the court has [*33] considered the following five categories of information to be reflective of improper FDA behavior -- or in other words, agency bad faith -- in considering OTC access to Plan B:

1) Involvement in the Plan B OTC-approval process by high-level FDA officials who, historically and statutorily, do not generally participate in OTC-switch proceedings;

2) Inappropriate (non-scientific) considerations by FDA officials imported into the Plan B OTC-switch process, including those brought to the FDA's attention by third parties;

3) Indications of efforts to chart an unusual course in dealing with the OTC-switch applications, including veiled attempts to delay reaching a final decision;

4) Indications that a decision had already been made or that efforts were made to steer the application towards a specific result under the direction of higher level officials before completion of the scientific process;

5) Indications of potential retaliation by upper management against FDA employees who disagree with management's

views that Plan B OTC-access be restricted.

As stated earlier, the bates numbers of the documents which contain information that falls within one or [*34] more of the above categories are listed in Appendix B to this opinion.

9  Some of the nonprivileged documents listed in Appendix A exhibit evidence of bad faith and are therefore also noted in Appendix B.

To the list in Appendix B the court has also added documents which reflect viewpoints within the FDA opposed to an age-restricted Plan B OTC-distribution plan. While these documents undoubtedly demonstrate a healthy intra-agency debate, thus militating against disclosure, many of the authors have already had their dissenting views aired in public. *See Tummino,* 427. F. Supp. 2d at 220-25, 228-29 (reciting communications from FDA senior review staff which "uniformly and emphatically recommended that the application be approved without restrictions, arguing that the mandate of the FDA did not allow it to consider adolescent sexual behavior in making its decision, and that, in any event, the data submitted by the applicant was sufficient to allay the concerns of the Commissioner."). As the material at issue [*35] has already been disclosed presumably with the consent of the author, or at the very least the agency, there is less risk that agency deliberations would suffer any chilling effect. More importantly, these documents offer clues as to why the FDA reached the result it did despite vocal opposition among many agency employees, and thus shed light on the agency decisionmaking process, the proof of which lies at the heart of the plaintiffs' case.

### 3. The Sufficiency of the Defendant's Privilege Log

Finally, the court turns to a remaining body of documents for which a determination cannot be made concerning the proper application of the privilege. For these documents, listed in Appendix C below (and indeed for the submission as a whole), the court is troubled that the defendant has made no effort to tailor its assertion of the privilege to ensure that only those portions of documents which qualify as *both* deliberative and predecisional are withheld, or to offer any explanation as to why the privilege applies in such a way that entire documents should be shielded from disclosure. In essence, the defendant has taken an all-or-nothing approach in asserting the privilege, which has [*36] complicated the court's task.

For example, many of the documents in the 1,179-page *in camera* submission seem to contain factual portions which may be segregated from the deliberative portions of the document. In particular, the submission is densely populated with lengthy FDA studies, ranging from 20 to 50 pages, which the defendant contends are entirely privileged. Surely that cannot be the case when large portions of these studies simply recite results from other publicly available scientific studies. [10] Of course, it may turn out that such information, even if disclosed, would be of limited value to the plaintiffs. That, however, does not relieve the defendant of the obligation to avoid blanket assertions of the privilege, which unnecessarily compromise the public's interest in "accurate judicial fact finding." *In re Franklin Nat'l Bank Sec. Litig.,* 478 F. Supp. at 582. Moreover, as the District of Columbia Circuit emphasized in its landmark decision in *Vaughn v. Rosen,* in withholding production of a large document "it is vital that the agency specify in detail which portions of the document are disclosable and which are allegedly exempt." 157 U.S. App. D.C. 340, 484 F.2d 820, 827 (D.C. Cir. 1973). [*37]

10  Many such documents are also described as "drafts" in the privilege log, but bear scant indications that one anticipates seeing in a draft document. In any event, the law is clear that "simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege." *Wilderness Soc'y,* 344 F. Supp. 2d at 14 (citation omitted); *see also Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F. Supp. 2d at 260-61 (finding ambiguities in agency descriptions of draft documents foreclosing summary judgment in FOIA case) (citations omitted).

To its credit, the defendant has included, with its extensive *in camera* submission, a privilege log to support its assertions of privilege. *See* Local Civ. R. 26.2(a)(2)(A) (setting forth types of information a litigant must provide when objecting to disclosure of documentary evidence on basis of privilege); *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 473-74 (2d Cir. 1993) [*38] (suggesting, in cases involving "large quantities of disputed documents," a court utilize "an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps.") (citations omitted). The log fails, however, to provide sufficient aid to the court in determining whether the documents listed in Appendix C are properly withheld as material, which, if released, would compromise the sanctity of the agency's deliberative process. At a bare minimum, the log must comply with Rule 26(b)(5)'s requirement that a party seeking to shield documents by a claim of privilege describe the nature of the documents withheld in sufficient detail "to enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ.

P. 26(b)(5). Determining whether this objective is accomplished requires that "[t]he focus [be] on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege." *Bowne*, 150 F.R.D. at 474 (citations omitted). This is so because "the burden of the party withholding documents cannot be 'discharged by mere conclusory or *ipse dixit* [*39] assertions.'" *Id.* (citations omitted). The defendant's log suffers that failing.

A typical entry in the log provides information as to the document's bates number, length in pages, author, and recipient. The entries also contain a one-line description of the withheld document and the type of privilege or privileges claimed to support nondisclosure. Describing a document as, for example, a "Draft Request for Clinical Inspection -- Auditing Plan B Actual Use Study," and labeling it "confidential commercial information" and "deliberative process" privileged material, is of little use to the plaintiffs, and especially the court, which has sparse knowledge of the complex details associated with this matter, in determining whether the defendant is correct in its application of the privilege. (*See* Entry for Tummino-2752-54, Def.'s Privilege Log, Aug. 10, 2006, attached to Def.'s Letter to Mag. J. Pohorelsky, Aug. 11, 2006.) No information is provided as to whether this document was relied upon by FDA staff in formulating Plan B policy or what distinguishing features warrant the "draft" label.

Of course, the privilege log is only part of the submission, since the documents identified [*40] in the log were also produced to the court for *in camera* review. Indeed, it may have been recognition of this fact that caused the defendant to submit a privilege log with truncated information. The law is clear, however, that, even when submitting the documents for *in camera* review, the burden remains on the defendant to sustain its invocation of the deliberative process privilege by, among other things, "showing 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Arthur Andersen & Co. v. I.R.S.*, 679 F.2d 254, 258 (D.C. Cir. 1982) (quoting 5 U.S.C. § 552(a)(4)(B) (provision setting forth framework for obtaining governmental records under FOIA), *and Coastal States*, 617 F.2d at 868).

In this respect, the court receives considerable guidance from the well-developed body of law, primarily in the District of Columbia Circuit, concerning agency assertions of privilege in the Freedom of Information Act or FOIA context. [11] In these situations, an agency seeking to shield documents from disclosure on the basis of privilege, including the off-employed deliberative [*41] process privilege, must provide "'the reviewing court a reasonable basis to evaluate the claim of privilege.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting *Gallant v. N.L.R.B.*, 307 U.S. App.

D.C. 27, 26 F.3d 168, 172-73 (D.C. Cir. 1994)). This often involves submission of a so-called *Vaughn* index, similar in form and function to a privilege log, [12] in addition to other measures such as submitting the documents themselves for *in camera* review. *See, e.g., Grand Cent. P'ship*, 166 F.3d at 477 (pursuant to FOIA claim, *Vaughn* index and documents withheld on basis of deliberative process privilege submitted for *in camera* review). Although the defendant's privilege log complies in form with these requirements, it does not give the court sufficient guidance about what to look for in testing the defendant's assertions of privilege. Not even a single page out of the 1,179 pages of documents submitted for review contained any limitation concerning assertion of the privilege by, for example, redactions or indications of portions not subject to the privilege. Nor has the defendant offered any document-specific explanation, [*42] individually or by type of document, which would aid the court in assessing the applicability of the privilege. The significance of the problem is exacerbated when the *in camera* review is voluminous, as it is here, which creates the "'unreasonable . . . expect[ation] [that] a trial judge . . . do as thorough a job of illumination and characterization as would a party interested in the case.'" *Arthur Andersen*, 679 F.2d at 258 (quoting *Vaughn*, 484 F.2d at 825). [13] At the end, it is the defendant's, not the court's, burden to offer a justification as to why a document should be withheld as privileged, and to delineate the proper reach of the privilege within the document. *Judicial Watch, Inc. v. FDA*, 449 F.3d at 147 ("Broad, sweeping claims of privilege without reference to the withheld documents would impede judicial review and undermine the functions served by the *Vaughn* index requirement. The agency must therefore explain *why* the exemption applies and *may not ignore the contents of the withheld documents*.") (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30-31 (D.C. Cir. 1998)) (emphasis [*43] added). The defendant has, thus far, failed to provide the court with information that even remotely satisfies these requirements.

11   The court notes that both parties have relied on FOIA cases in their submissions to the court. (*See, e.g.,* Def.'s Mem. of Law in Opp'n Pls.' Mot. to Compel 9 (citing *Mobil Oil Corp. v. EPA*, 879 F.2d 698 (9th Cir. 1989)); Pls.' Letter to Mag. J. Pohorelsky 2, Aug. 29, 2006 (citing *Hopkins*, 929 F.2d at 81).)

12   To pass muster, a *Vaughn* index must, at a minimum,

    (1) [B]e contained in one document, complete in itself;

(2) [A]dequately describe each withheld document or deletion from a released document; [and]

(3) [S]tate the exemption claimed for each deletion or withheld document, and explain why the exemption is applicable to that deletion.

*Founding Church of Scientology of Washington, D. C., Inc. v. Bell*, 195 U.S. App. D.C. 363, 603 F.2d 945, 949 (D.C. Cir. 1979); *accord Lawyers Comm. for Human Rights v. I.N.S.*, 721 F. Supp. 552, 560 (S.D.N.Y. 1989) (citations omitted).

As the District of Columbia Circuit recently explained,

The *Vaughn* index . . . serves three important functions: [I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Judicial Watch, Inc. v. FDA*, 449 F.3d at 146 (quoting *Keys v. U.S. Dep't of Justice*, 265 U.S. App. D.C. 189, 830 F.2d 337, 349 (D.C. Cir. 1987)). These principles are equally applicable to the present matter, especially since it is also the government here which seeks to shield information from public view.

[*44]

13    As the *Arthur Anderson* court explained in further detail,

Because the party seeking disclosure is ignorant of the contents of withheld documents and a court may be unable to undertake an exhaustive in camera review, *Vaughn* required that an agency justify withholding of documents through itemized and indexed explanations. Otherwise, the burden of justification would be imposed on the court.

*Id.*

These failings do not warrant complete disclosure of these documents at this point in the proceedings, however. Instead, as the FOIA-line of authority suggests, the defendant, having failed to carry its burden, can amend the privilege log to address the court's concerns as expressed above. *See, e.g., Judicial Watch, Inc. v. FDA*, 449 F.3d at 153-54 (remanding matter to allow defendant an opportunity to remedy various defects in *Vaughn* index); *Wilderness Soc'y*, 344 F. Supp. 2d at 14 (same). To that end, the defendant shall identify those portions of the documents listed in Appendix C which it still wishes to withhold as privileged. In doing [*45] so, the defendant shall supplement the log with information that would aid the court in determining why the privilege applies, including details of the document's "'function and significance . . . in the agency's decisionmaking process.'" *Arthur Andersen*, 679 F.2d at 258 (quoting *Taxation With Representation Fund v. IRS*, 207 U.S. App. D.C. 331, 646 F.2d 666, 678 (D.C. Cir. 1981)). The defendant shall also make a concerted, good faith effort to segregate from and disclose those portions of the Attachment C documents which are "purely factual," or otherwise do not qualify for the privilege according to the principles set forth above.

**CONCLUSION**

For the foregoing reasons, the defendant's motion for a protective order to stay all discovery or in the alternative to preclude discovery relating to the White House is denied. The deposition of Dr. Kweder may proceed. The defendant shall produce for inspection and copying the documents listed in Appendices A and B within ten days. As to the documents listed in Appendix C the defendant shall produce such portions as are purely factual or otherwise not covered by the privilege in accordance with this opinion within ten days, [*46] and as to those portions to which the defendant continues to assert the privilege the defendant shall supplement the privilege log to provide the necessary information to enable review of the assertions within twenty days. Finally, as to the remaining documents withheld by the defendant but which have not yet been submitted for *in camera* review, the defendant shall review all such documents in light of this opinion and produce such documents and portions of documents that are not privileged within 30 days. The remaining documents and an appropriate privilege log are to be submitted for *in camera* review within 45 days.

**SO ORDERED:**

VIKTOR V. POHORELSKY

United States Magistrate Judge                    November 6, 2006

Dated: Brooklyn, New York

LEXSEE



Analysis
As of: Oct 30, 2009

**SPINNER, et al., Plaintiffs, -against- CITY OF NEW YORK, et al., Defendants.**

**01 CV 2715(CPS)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**2004 U.S. Dist. LEXIS 2541**

**February 19, 2004, Decided**

**PRIOR HISTORY:** Spinner v. City of New York, 2003 U.S. Dist. LEXIS 19298 (E.D.N.Y., Oct. 6, 2003)

**DISPOSITION:**   Court ruled on reviewed documents.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, city officials and correction officers, submitted redacted and unredacted documents for in camera review claiming that the redacted portions contained privileged information and were beyond the scope of the court's order requiring them to produce documents related to the confinement conditions at Brooklyn Central Booking. Inter alia, plaintiff individuals opposed the assertion of the deliberative process privilege.

**OVERVIEW:** The majority of redactions at issue related not to recommendations on policy issues, but rather contain certain factual information that could arguably be relevant to the issues in the case--namely, the conditions of the facilities in which people were housed at Brooklyn Central Booking. Two documents contained redactions that appeared to be protected by the privilege, but were irrelevant to the present litigation. The remaining redactions contained relevant information, in that they related to the conditions of confinement at Brooklyn Central Booking. The documents for which defendants claimed application of the privilege largely related to proposals to repair or upgrade equipment and facilities at Brooklyn Central Booking. Maintenance proposals of that sort were not the communications relating to policy formulation at the higher levels of government that were pro-

tected by the privilege. Their disclosure would not prevent officials within the New York City Police Department from freely expressing their views on policy matters in the future. Thus, those redactions did not properly fall within the deliberative process privilege.

**OUTCOME:** A magistrate judge ordered that 19 documents be disclosed in redacted form. One document appeared to be protected by the attorney-client privilege. For the remaining documents that had been redacted only to the extent that individuals' telephone numbers were listed therein, to the extent that the individuals indicated that that such numbers were somehow relevant and necessary, the court would reconsider those redactions.

**CORE TERMS:** deliberative process, privileged, disclosure, redaction, recommendation, redacted, factual information, deliberative, deliberations, unredacted, log, training, in camera, conditions of confinement, confidentiality, pre-decisional, predecisional, decisionmaker, outweighs, freely, telephone numbers, attorney-client

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege*
[HN1]The deliberative process privilege is premised on the assumption that effective and efficient governmental decision making requires a free flow of ideas among

governmental officials and that inhibitions will result if officials know that their communications may be revealed to outsiders. It also serves to protect the public from the potential confusion caused by premature exposure to policies before they are adopted.

***Civil Procedure > Discovery > Privileged Matters > General Overview***
***Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege***
[HN2]The agency claiming the deliberative process privilege must demonstrate both that the document is predecisional and that the document is a part of the deliberative process. In order to establish that the communication is predecisional, it must be shown that the communication was generated before a final decision had been reached with respect to the subject matter of the communication and that it was prepared in order to assist the decisionmaker in arriving at his or her decision.

***Civil Procedure > Discovery > Privileged Matters > General Overview***
***Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege***
[HN3]Any materials related to post-decisional communications, including the explanation, interpretation, or application of an existing policy, are not covered by the deliberative process privilege since the decision has already been made and disclosure would not tend to stifle or inhibit deliberations.

***Civil Procedure > Discovery > Privileged Matters > General Overview***
***Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege***
[HN4]The second requirement of the deliberative process privilege is that the communication must be deliberative in nature. The statement itself must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way, pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take of the deliberative process by which the decision itself is made.

***Civil Procedure > Discovery > Privileged Matters > General Overview***

***Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege***
[HN5]Included within the deliberative process privilege are: (1) documents memorializing communications among and within government agencies concerning policy issues and alternatives; (2) communications that explain and discuss positions an agency might take on a particular issue, or that make a recommendation as to whether to proceed with a proposed action; (3) drafts of a document; (4) comments on a draft document; or (5) agency's budget recommendation.

***Civil Procedure > Discovery > Privileged Matters > General Overview***
***Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege***
[HN6]Purely factual information is usually not protected by the deliberative process privilege even though it may have been used by the decisionmakers in their deliberations.

***Civil Procedure > Discovery > Privileged Matters > General Overview***
***Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege***
[HN7]Factual portions of a document that qualify for the deliberative process privilege may have to be produced if the factual information can be segregated through redaction of the document. However, if the factual observations are inextricably intertwined with the privileged opinions and recommendations such that disclosure would compromise the confidentiality of deliberative information that is entitled to protection, then the factual materials themselves may fall within the deliberative process protection.

***Civil Procedure > Discovery > Privileged Matters > General Overview***
***Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege***
[HN8]When facts are part of the analysis and disclosure of the facts would reveal the agency's underlying privileged thought processes, the entire document is privileged under the deliberative process privilege.

***Civil Procedure > Discovery > Privileged Matters > General Overview***

*Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege*

[HN9]Since the deliberative process privilege is a qualified privilege, a court must determine whether the privilege should be overridden when the need for information outweighs the regulatory interest in preventing disclosure.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege*

[HN10]In determining whether the deliberative process privilege should be overridden, a court must weigh the government's interest in confidentiality against the needs of the adversary litigant for the information, the societal interest in accurate judicial fact finding, and, in some cases, the public interest in opening for scrutiny the government's decision making process.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege*

[HN11]There is a non-exhaustive checklist of some of the factors that should be considered as part of a court's review process as to whether the deliberative process privilege should be overridden: (1) the relevance of the evidence sought to be protected, (2) the availability of other evidence, (3) the seriousness of the litigation and the issues involved, (4) the role of the government in the litigation, and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > Government Privileges > Official Information Privilege > Deliberative Process Privilege*

[HN12]In order to assert the deliberative process privilege, an agency must first submit an index, which specifically describes each of the documents asserted to be privileged. It should also explain why each document is privileged, including a statement that agency deliberations are involved, and a description of the role played by the documents in the deliberative process. In addition, many courts require the head of the department or agency asserting the privilege to submit an affidavit to

the court, stating that he/she has personally considered the assertion of privilege and reviewed the documents.

**COUNSEL:** [*1] For Michael Spinner, Francis Becht, Aleksandra Jargilo, Gayner Harley, Corneilius Philips, Guytho Vernet, Federico Tenorio, Plaintiffs: Matthew Flamm, LEAD ATTORNEY, Brooklyn, NY.

For Michael Spinner, Francis Becht, Aleksandra Jargilo, Gayner Harley, Corneilius Philips, Guytho Vernet, Angie Melicio, Alexander Timofeev, Troy Stephen, Eric Thompson, Yvonne James, Plaintiffs: Richard J. Cardinale, LEAD ATTORNEY, Cardinale Hueston & Marinelli, Brooklyn, NY.

For Michael Spinner, Francis Becht, Aleksandra Jargilo, Gayner Harley, Corneilius Philips, Guytho Vernet, Federico Tenorio, Plaintiffs: Robert N. Isseks, LEAD ATTORNEY, Middletown, NY.

For City of New York, Rudolph Giuliani, William J. Fraser, Gary M. Lanigan, Bernard B. Kerik, Howard Safir, Police and Correction Officers John Does # # 1-500, Defilippo, Paul Denver, Edwin Caban, Gary Katz, Thomas Russo, John O'Connell, Defendants: Ingrid Ursula Box, LEAD ATTORNEY, Corporation Counsel of the City of NY, New York, NY.

**JUDGES:** CHERYL L. POLLAK, UNITED STATES MAGISTRATE JUDGE, EASTERN DISTRICT OF NEW YORK.

**OPINION BY:** CHERYL L. POLLAK

**OPINION**

*ORDER*

By letter dated November 7, 2003, counsel for defendants have submitted copies of redacted [*2] and unredacted documents, bearing Bates Nos. NYC000906-954, for *in camera* review by the Court, claiming that the redacted portions contain privileged information and are beyond the scope of the Court's Order of September 18, 2003. In that Order, this Court directed defendants to produce records relating to the conditions of confinement at Brooklyn Central Booking from 1999 to 2001, as well as training logs for the same period. [1] Although defendant's letter of November 7, 2003 does not discuss in detail the nature of the privileges claimed, the actual documents are redacted with notations indicating the nature of the privilege asserted. In addition to one document for which attorney-client privilege is claimed, defendants seek to protect certain telephone numbers and other identifying information for certain individuals. However, the majority of the documents are redacted

under the guise of the deliberative process privilege, or as irrelevant and beyond the scope of the Court's Order of September 18, 2003.

    1  On December 19, 2003, this Court issued an Order requiring defendants to produce the training logs in unredacted form, but did not address the remaining documents for which defendants now seek a protective order.

[*3] In response, plaintiffs contend that: (1) defendants' assertion of the deliberative process privilege is conclusory and defendants have given no explanation as to why a particular document falls within the protection of the privilege; (2) the documents are not covered by the deliberative process privilege to the extent that they contain factual material and do not reflect decision making by individuals in the "highest ranks" of City government; (3) the defendants have failed to provide either a privilege log as required by Local Rule 26.2 or an affidavit from an agency head demonstrating the specific harms that would flow from disclosure; (4) the privilege is inapplicable since the defendants' decision making process itself is the subject of this litigation; and (5) in any event, the plaintiffs' substantial need for the documents outweighs the privilege.

*DISCUSSION*

[HN1]The deliberative process privilege is premised on the assumption that "'effective and efficient governmental decision making requires a free flow of ideas among governmental officials and that inhibitions will result if officials know that their communications may be revealed to outsiders.'" *New York City Managerial Employee Ass'n v. Dinkins*, 807 F. Supp. 955, 957 (S.D.N.Y. 1992) [*4] (quoting *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 580-81 (E.D.N.Y. 1979)). It also serves to protect the public from the potential confusion caused by premature exposure to policies before they are adopted.

[HN2]The agency claiming the privilege must demonstrate both that the document is predecisional and that the document is a part of the deliberative process. *See Hopkins v. United States Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). In order to establish that the communication is predecisional, it must be shown that the communication was "generated before a final decision had been reached with respect to the subject matter of the communication," *New York City Managerial Employee Ass'n v. Dinkins*, 807 F. Supp. at 957, and that it was prepared in order to assist the decisionmaker in arriving at his or her decision. *See Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 640 (S.D.N.Y. 1991). By contrast, [HN3]any materials related to postdecisional communications, including the explanation,

interpretation, or application of an existing policy, are not privileged since the decision has already been [*5] made and disclosure would not tend to stifle or inhibit deliberations. *See id. at 641.*

[HN4]The second requirement is that the communication must be deliberative in nature. *See Hopkins v. United States Dep't of Hous. & Urban Dev.*, 929 F.2d at 84. The statement itself must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way, pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take of the deliberative process by which the decision itself is made." *Vaughn v. Rosen*, 173 U.S. App. D.C. 187, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

[HN5]Included within the privilege are documents "memorializing communications among and within City agencies concerning policy issues and alternatives," *New York City Managerial Employee Ass'n v. Dinkins*, 807 F. Supp. at 957, communications that explain and discuss positions an agency might take on a particular issue, *see, e.g., King v. IRS*, 684 F.2d 517, 519-21 (7th Cir. 1982), or that make a recommendation [*6] as to whether to proceed with a proposed action, *see, e.g., Cliff v. IRS*, 496 F. Supp. 568, 575 (S.D.N.Y. 1980), drafts of a document, *see, e.g., Dudman Communications Corp. v. Department of the Air Force*, 259 U.S. App. D.C. 364, 815 F.2d 1565, 1569 (D.C. Cir. 1987), comments on a draft document, *see, e.g., Cliff v. IRS*, 529 F. Supp. 11, 15 (S.D.N.Y. 1981), or an agency's budget recommendation. *See, e.g., Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice*, 239 U.S. App. D.C. 331, 742 F.2d 1484, 1496-98 (D.C. Cir. 1984).

[HN6]Purely factual information, however, is usually not protected even though it may have been used by the decisionmakers in their deliberations. *See Resolution Trust Corp. v. Diamond*, 137 F.R.D. at 640-41; *see also EPA v. Mink*, 410 U.S. 73, 89, 35 L. Ed. 2d 119, 93 S. Ct. 827 (1979). [HN7]Factual portions of a document that qualify for the deliberative process privilege may have to be produced if the factual information can be segregated through redaction of the document. *See Resolution Trust Corp. v. Diamond*, 137 F.R.D. at 641; *see also* [*7] *EPA v. Mink*, 410 U.S. at 87-88. However, if "[the] factual observations are 'inextricably intertwined' with the privileged opinions and recommendations such that disclosure would 'compromise the confidentiality of deliberative information that is entitled to protection," then the factual materials themselves may fall within the deliberative process protection. *Hopkins v. United States Dep't of Hous. & Urban Dev.*, 929 F.2d at 85 (quoting *EPA v. Mink*, 410 U.S. at 92); *see also Lead Industries Ass'n. Inc. v. Occupational Safety & Health*

*Admin.*, 610 F.2d 70, 85 (2d Cir. 1979). Moreover, [HN8]when facts are part of the analysis and disclosure of the facts would reveal the agency's underlying privileged thought processes, the entire document is privileged. *See Lead Industries Ass'n. Inc. v. Occupational Safety & Health Admin.*, 610 F.2d at 83.

[HN9]Since the deliberative process privilege is a "qualified privilege," *United States Post Office v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 165 (E.D.N.Y. 1994), the court must determine whether the privilege should be overridden when the need for information [*8] outweighs the regulatory interest in preventing disclosure. *See In Re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 582-83; *see also United States v. Nixon*, 418 U.S. 683, 712, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974) (suggesting that occasional disclosure of recommendations and advice will not by itself have a devastating effect on advisors' willingness to speak freely in the future). That is, [HN10]the court must weigh "the government['s] interest in confidentiality" against "the needs of the adversary litigant for the information, the societal interest in 'accurate judicial fact finding,' and, in some cases, the public interest 'in opening for scrutiny the government's decision making process.'" *Burke v. New York City Police Department*, 115 F.R.D. 220, 232 (S.D.N.Y. 1987) (quoting *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 582). The court in *United States Post Office v. Phelps Dodge Refining Corp.*, [HN11]set forth a non-exhaustive checklist of some of the factors that should be considered as part of its review process:

> (i) the relevance of the evidence sought to be protected, (ii) the availability of other evidence, [*9] (iii) the 'seriousness' of the litigation and the issues involved, (iv) the role of the government in the litigation, and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

852 F. Supp. at 165 (citing *In Re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 583).

[HN12]In order to assert the privilege, the agency must first submit an index, which specifically describes each of the documents asserted to be privileged. *Mobil Oil Corp. v. Department of Energy*, 102 F.R.D. 1,5-7 (N.D.N.Y. 1983). It should also explain why each document is privileged, including a statement that agency deliberations are involved, and a description of the "role played by the documents" in the deliberative process. *Arthur Andersen & Co. v. IRS*, 220 U.S. App. D.C. 77, 679 F.2d 254, 258 (D.C. Cir. 1982); *see also Mobil Oil*

*Corp. v. Department of Energy*, 102 F.R.D. at 5-7; *Vaughn v. Rosen*, 523 F.2d at 1144-45. In addition, many courts require the head of the department or agency asserting the privilege to submit an affidavit to the court, [*10] stating that he/she has personally considered the assertion of privilege and reviewed the documents. *Mobil Oil Corp. v. Department of Energy*, 102 F.R.D. at 6; *Resolution Trust Corp. v. Diamond*, 137 F.R.D. at 641.

### APPLICATION

In this case, this Court finds that the majority of redactions at issue relate not to recommendations on policy issues but rather contain certain factual information that may arguably be relevant to the issues in this case - - namely, the conditions of the facilities in which people are housed at Brooklyn Central Booking. However, two documents contain redactions that relate solely to proposals for dealing with monitoring and training as part of the implementation of the settlement in the *Grubbs* case, particularly regarding the medication policy, which is not part of this action (*see* Bates Nos. NYC000912-913). These redactions may be protected by the privilege, but in any case are irrelevant to this litigation.

The remaining redactions, however, do contain relevant information, in that they relate to the conditions of confinement at Brooklyn Central Booking. The documents for which defendants claim application of [*11] the privilege largely relate to proposals to repair or upgrade equipment and facilities at Brooklyn Central Booking. Maintenance proposals of this sort are not the "communications relating to policy formulation at the higher levels of government," *Jean D. V. Cuomo*, 1993 U.S. Dist. LEXIS 9887, No. 90 CV 0861, 1993 WL 276067, *2 (S.D.N.Y. July 20, 1993), that are protected by the deliberative process privilege. Their disclosure will not prevent officials within the New York City Police Department from freely expressing their views on policy matters in the future. Thus, these redactions do not properly fall within the deliberative process privilege. Therefore, based upon this Court's *in camera* review of the documents, the Court orders the following documents to be disclosed in unredacted form: NYC000908, 911, 914-919, 924-927, 934-936, 938, 940-943.

One document appears to be protected by the attorney-client privilege (*see* NYC000920) and will not be ordered disclosed. The remaining documents have been redacted only to the extent that individuals' telephone numbers are listed therein. To the extent that plaintiffs indicate that such numbers are somehow relevant and necessary, the Court will [*12] reconsider those redactions. At this time, however, this Court finds that those numbers have been properly redacted.

### SO ORDERED.

2004 U.S. Dist. LEXIS 2541, *

Dated: February 19, 2004                              UNITED STATES MAGISTRATE JUDGE

CHERYL L. FOLLAK                                      EASTERN DISTRICT OF NEW YORK