IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

STATE OF NEW YORK, DAVID A.
PATERSON, in his capacity of Governor
of the State of New York; ANDREW M.          Civ. Action No.
CUOMO, in his capacity as Attorney           6:08-CV-0644(LEK/DEP)
General of the Sate of New York;
MADISON COUNTY, NEW YORK; and
ONEIDA COUNTY, NEW YORK,

                              Plaintiffs,

              v.


KENNETH SALAZAR,[1] Secretary, United
States Department of Interior, JAMES E.
CASON, Associate Deputy Secretary of
Interior; P. LYNN SCARLET, Deputy
Secretary of the Interior; FRANKLIN KEEL,
Eastern Regional Director, Bureau of Indian
Affairs; UNITED STATES DEPARTMENT OF
THE INTERIOR, BUREAU OF INDIAN
AFFAIRS; UNITED STATES DEPARTMENT
OF INTERIOR; UNITED STATES OF
AMERICA; JAMES A. WILLIAMS, Acting
Administrator, United States General
Services Administration; UNITED
STATES GENERAL SERVICES
ADMINISTRATION,

                              Defendants,


_____

        [1]      On January 20, 2009, Kenneth Salazar was confirmed as the Secretary
of the United States Department of Interior ("Secretary") and therefore replaces Dirk
Kempthorne as a defendant in this action.  *See* Fed. R. Civ. P. 25(d).

-and-

ONEIDA NATION OF NEW YORK,

Intervenor Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFFS:

HON. ANDREW M. CUOMO                  ROBERT A. SIEGFRIED, ESQ.
For the State of New York             DAVID B. ROBERTS, ESQ.
The Capitol                           Assistant Attorneys General
Albany , NY 12224

WHITE & CASE LLP                      DWIGHT A HEALY, ESQ.
1155 AVENUE OF THE AMERICAS
New York , NY 10036

NIXON PEABODY LLP                     DAVID M. SCHRAVER, ESQ.
1100 Clinton Square                   DAVID H. TENNANT, ESQ.
Rochester, New York 14604

FOR DEFENDANTS:

U.S. DEPT. OF JUSTICE                 STEVEN MISKINIS, ESQ.
Environmental and Natural
Resources Division
PO Box 44378
Washington, DC 20026-4378

FOR DEFENDANT-INTERVENOR:

ZUCKERMAN SPAEDER LLP                 MICHAEL R. SMITH, ESQ.
1800 M. Street, NW                    DAVID A. REISER, ESQ.
Suite 1000

Washington, DC 20036-5802

ONEIDA NATION LEGAL DEP'T          PETER D. CARMEN, ESQ.
5218 Patrick Road                  MEGHAN M. BEAKMAN, ESQ.
Verona, NY 13478

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

The plaintiffs in this action, comprised of the State of New York as well as its Governor and Attorney General (collectively, the "State"), and the Counties of Madison and Oneida ("Counties"), have commenced this action challenging a determination by the United States Secretary of the Interior to take in excess of thirteen thousand acres of land into trust for the benefit of the Oneida Indian Nation of New York (the "OIN" or "Nation"), thereby removing the disputed land from the taxing and regulatory jurisdiction of both the State and the Counties as well as other municipalities within whose boundaries the land is situated.  Plaintiffs challenge both the Secretary's decision, as unauthorized and unsupported, as well as the process by which that administrative determination was reached.

The plaintiffs have elicited the court's assistance on a number of fronts in connection with their challenge to the Secretary's determination.

3

The issues now presented include disputes over the documents withheld from the administrative record upon which the court will base its administrative review, a request for limited discovery in order to probe the fairness of the process leading up to the determination and the issue of OIN tribal recognition, and a determination of whether the Department of the Interior ("DOI") has fulfilled its obligation to comply with several requests by the plaintiffs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents associated with the process.

Asserting that the DOI has complied with its obligations to produce the full administrative record required for purposes of the court's review and all of the documents requested under FOIA, and that the documents withheld from both productions are protected on the basis of various recognized grounds including the deliberative process privilege, attorney-client privilege, work product doctrine, and confidential business information ("CBI") privilege, and that the plaintiffs have failed to make the required showing necessary to overcome those privileges or to subject the agency to discovery, defendants oppose plaintiffs' motions.

For the reasons set forth below, I find that the court lacks jurisdiction to resolve plaintiffs' FOIA claims since such a determination would

4

constitute a decision on the merits.  With respect to plaintiffs' motion to compel production of documents for inclusion in the administrative record, I find that the deliberative process privilege no longer protects relevant documents from disclosure and that the Secretary is now obliged to provide plaintiffs with all documents withheld on the basis of that privilege and not subject to any other recognized privilege.  Finally, I conclude that plaintiffs have sufficiently made the preliminary strong showing necessary to warrant leave to conduct limited discovery, although not to the extent sought by the plaintiffs.

I.      BACKGROUND

On January 11, 2005 the United States Supreme Court issued a decision in *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197, 125 S. Ct. 1478 (2005).  At issue in that case, which involved a relatively small parcel of property located within the City of Sherrill, was the fundamental question of whether, through open market transactions, the OIN can recover parcels originally located within the boundaries of the reservation occupied by the Nation but long ago conveyed away and subject principally to non-Indian ownership for some two centuries, and thereby revive its sovereignty over the lands and deprive the City of

5

Sherrill and other municipalities of the sovereignty which they have long exercised over the properties.  Acknowledging the practical concerns associated with reversion of autonomy over such properties to the OIN and its members, the Court concluded that the appropriate mechanism for accomplishing that end would be acquisition by the DOI of the land in question in trust for the Oneida tribal community, pursuant to 25 U.S.C. § 465, in which case it would become exempt from state and local taxation. *Sherrill*, 544 U.S. at 219-21, 125 S. Ct. 1478.

On the heels of the Supreme Court's decision in *Sherrill*, on April 4, 2005 OIN representative Ray Halbritter requested that the DOI accept into trust for the benefit of the Nation three parcels of land, totaling approximately 17,300 acres located within Madison and Oneida.  Situated within those three parcels, *inter alia*, is the Turning Stone Casino, a Class III gaming facility located in Verona, New York, and operated by the OIN under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701, *et seq.,* as well as several SavOn convenience stores and other business enterprises.  The DOI notified the State and Counties on September 20, 2005 that the request would be considered, and elicited comments as to each of the three parcels specified.

6

As part of the process of evaluating the land into trust application, the DOI arranged for preparation of an Environmental Impact Statement ("EIS"), and retained Malcolm Pirnie, Inc. ("Malcolm Pirnie") as an engineering consultant to assist in drafting the EIS.  A final EIS was issued on February 22, 2008 in which, after reviewing various alternatives, the agency identified one which provided for the taking of 13,086 acres of land into trust as the "preferred alternative".

In addition to Malcolm Pirnie, the DOI retained the Louis Berger Group, Inc. ("Berger Group") as a subcontractor to assist in its analysis of the OIN request. The Berger Group's assigned task apparently was to review and analyze economic information received from the OIN regarding their various enterprises.

In order to gain information regarding the pending land into trust administrative consideration, plaintiffs served a series of FOIA requests on the DOI, beginning on October 30, 2006.  Those requests sought information regarding 1) documents pertaining to the land into trust application, including documents submitted by the OIN in support of that application; 2) evidence of communications between the law firm of Holland and Hart LLP, retained by the OIN to lobby on its behalf, and the

DOI concerning the application; and 3) reconsideration of the Secretary's approval of a Nation-State Compact governing gaming in New York State. Despite payment by the State in April of 2007 of $9,540, estimated by the agency to be the cost associated with producing the documents requested under FOIA, and various assurances of an earlier compliance date, it was not until January 2, 2009 that the DOI produced documents in response to those FOIA requests.

Defendants' FOIA production was made in electronic format on ten DVDs. Of those disks, nine contained documents retrieved by the DOI from its contractor or subcontractor in connection with the land into trust decision. The tenth contains documents obtained directly from the DOI and scanned into a database that included a search engine provided to plaintiffs, thus allowing for searches of specific names or terms within the database. The DOI's production was accompanied by a privilege log generally describing the documents withheld under a recognized FOIA exemptions.[2] Defendants supplemented the FOIA response by producing

---

[2] Pursuant to *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S. Ct. 1564 (1974), with its opposition to the instant motion the DOI produced a more comprehensive catalogue of the documents withheld under claim of FOIA exemptions, describing those documents and identifying the specific privileges being asserted.

additional documents on December 31, 2009.

On May 20, 2008 the DOI issued a Record of Decision ("ROD") regarding the OIN land into trust request.  In that ROD, which is cosigned by P. Lynn Scarlett, Deputy Secretary of the DOI, and James E. Cason, Associate Deputy Secretary of the agency, the agency decided that 13,003.89 acres owned by the OIN and situated in Oneida and Madison Counties would be taken in trust for the Nation.  The ROD, which is seventy-three pages in length, outlines the process leading up to its issuance and addresses various potential impacts of the contemplated land into trust action upon the State and local municipalities, including upon tax revenues.  The ROD also outlines several alternative scenarios considered, the most ambitious of which would have provided for a phased acquisition of 35,000 acres to be placed in trust for the Nation.

II.   PROCEDURAL HISTORY

Plaintiffs commenced this action on June 19, 2008.  Dkt. No. 1.  In their second amended complaint, the operative pleading currently before the court, plaintiffs assert a variety of claims including several under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, arguing both that the ROD is arbitrary, capricious, and contrary to law and that the

process through which it was issued was infected by bias, bad faith, and improper motives.[3]  Dkt. No. 94.  Since commencement of the action the OIN has been granted permission to intervene.  Dkt. No. 48.

On March 2, 2009 the DOI produced the administrative record in this action.  That record, comprised of over 85,000 pages, overlaps in many respects with the documents provided in response to plaintiffs' FOIA requests, although the two productions are by no means duplicative.  Accompanying the administrative record production was a separate privilege log identifying documents withheld from the record.  The defendants have since made separate additional productions under FOIA and in supplement of the administrative record in this matter.

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, on November 6, 2008 a pretrial conference was held in this and several related actions by the Hon. Gustave J. DiBianco, the then-assigned magistrate judge in the case.  On the day of that conference the parties jointly submitted a civil case management plan addressing various matters

---

[3]       Also raised in supplemental claims added by plaintiffs' second amended complaint was a challenge to the transfer, in or about December of 2008, to the DOI of an eighteen-acre parcel previously held by the United States and used as a military installation.  *See* Second Amended Complaint (Dkt. No. 94) ¶¶ 105-31 and 304-41.  Those claims have since been dismissed by decision and order issued by District Judge Lawrence E. Kahn on September 29, 2009.  Dkt. No. 132.

including production of the administrative record and compliance with plaintiffs' pending FOIA requests.  On that date Chief Magistrate Judge DiBianco endorsed the proposed civil case management plan with the following language: "[t]he deadlines and proposals in this Civil Case Management Plan are SO ORDERED."  Dkt. No. 50.  The resulting case management order required that the DOI produce all non-privileged and non-exempt documents responsive to the plaintiff's several FOIA requests as well as a privilege log no later than December 31, 2008 and the administrative record, together with privilege and privacy logs, on or before March 1, 2009.

Currently before the court are two separate motions filed by the plaintiffs on October 30, 2009.  In the first, plaintiffs seek an order directing defendants to produce documents requested by them under FOIA.  Dkt. No. 140.  The second requests the complete production by the DOI of all administrative record documents, challenging the withholding of many of those documents under various privileges, and additionally seeks leave for the plaintiffs to engage in limited discovery.  Dkt. No. 141.  Those motions, which are fully briefed and were argued before the court on March 17, 2010, are now ripe for determination.

III.    DISCUSSION

A.    Plaintiffs' Motion to Compel Production Of FOIA Documents

Plaintiffs' FOIA motion centers upon various requests for documents

made beginning on October 30, 2006 as well as the DOI's responses to

those requests provided in January of 2009 and supplemented more

recently.[4]  Plaintiffs complain that in addition to being grossly untimely, 1)

the DOI's response was not properly labeled or organized but instead was

produced in such a way as to be tantamount to a "document dump"; 2)

certain of the documents produced are unreadable or corrupt; 3) some

documents have been withheld without explanation; 4) the DOI has

improperly withheld documents under claims of various privileges,

including under exemptions four and five of FOIA, 5 U.S.C. § 552(b)(4)

and (5); 5) the privilege log accompanying the production is insufficient in

_____

[4]      Plaintiffs' motion is addressed to five FOIA requests made on October 30, 2006, November 20, 2006, January 10, 2007, July 13, 2007 and September 20, 2007.  In its response, the DOI notes that from October of 2006 up until the time of its FOIA response it received nine such requests, including on October 30, 2006, November 20, 2006, July 13, 2007, September 20, 2007, November 1, 2007, December 19, 2007, January 13, 2006 (two separate requests), and January 10, 2007.

Plaintiffs contend that the January 2009 production did not address their October 30, 2006 FOIA request.  Based upon the record before the court and the explanations offered during the recent motion hearing, I conclude that the failure of the DOI to reference that FOIA request when responding was a mere oversight and accept defendants' assurance that the documents identified in that FOIA request have been produced.  *See* Wiseman Decl. (Dkt. No. 168-3) ¶ 5.

many respects, including by not identifying authors and recipients of documents withheld and summarizing their contents; and 6) in response to specific requests for those documents, the DOI failed to provide materials associated with the preparation of the EIS and the agency's compliance with the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321, *et seq.*

Among the issues raised in plaintiffs' FOIA motion is defendants' withholding of a large number of documents received by the agency or its consultant, the Berger Group, from the OIN and designated by the agency as CBI, the agency presumably contending that those documents are protected from disclosure under FOIA Exemption 4.  This issue appears to have been resolved based upon a recent concession by the OIN that those documents may be released to the plaintiffs, subject to the entry of an appropriate protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.[5]

_____

[5]        Many, if not most, of the documents withheld from FOIA production under Exemption 4 were neither produced as part of the administrative record nor listed as withheld on the basis of a recognized privilege.  This appears to be based on a position taken by the DOI that those documents were not before the agency or directly considered as part of its land into trust determination.  The parties' resolution of this issue does not address the question of whether the documents previously withheld as CBI but now to be disclosed to the plaintiffs should properly be considered as a part of the administrative record for purposes of this APA proceeding.  This is an issue for determination by District Judge Kahn.

The plaintiffs' FOIA motion implicates the fifteenth and sixteenth causes of action of their second amended complaint.  The fifteenth cause of action alleges that defendants failed to comply with the requirements of FOIA, including the time limitations set forth under the Act and its corresponding regulations, and that as a result plaintiffs were effectively deprived of their opportunity to review documents under consideration by the agency and to provide meaningful input into the decision-making process.  Second Amended Complaint (Dkt. No. 94) ¶¶ 274-89.  Plaintiffs' sixteenth cause of action complains of defendants' failure to provide documents responsive to their various FOIA requests related to the preparation of an EIS and the agency's compliance with NEPA and its implementing regulations.  *Id.* ¶¶ 290-94.

FOIA was enacted by Congress to effectuate the salutary goal of fostering transparency in the operation of the government and its agencies.  *See Bloomberg, L.P. v. Board of Governors of the Federal Reserve System* Nos. 09-4083-Cv and 09-4097-Cv (CON), 2010 WL 986527, at * 2 (2d Cir. Mar. 19, 2010) ("the 'basic purpose [of FOIA] reflected a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language'") (quoting *Dep't*

*of the Air Force v. Rose,* 425 U.S. 352, 360-61, 96 S. Ct. 1592, 1599

(1976)).  As the Second Circuit has noted,

> FOIA was enacted in order to promote honest and
> open government and to assure the existence of
> an informed citizenry [in order] to hold the
> governors accountable to the governed.  FOIA
> strongly favors a policy of disclosure and requires
> the government to disclose its records unless its
> documents fall within one of the specific,
> enumerated exemptions set forth in the Act.

*Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355-56 (2d Cir.

2005) (internal citations and quotations omitted).  While the general policy

supporting FOIA favors disclosure, the statute also provides for certain

delineated exemptions in an effort to "'strike a workable balance between

the right of the public to know and the need of the Government to keep

information in confidence to the extent necessary without permitting

indiscriminate secrecy'".  *John Doe Agency v. John Doe Corp.,* 493 U.S.

146, 152, 110 S. Ct. 471 (1989) (quoting H.R. Rep. 89-1497, 89th Cong.,

2d Sess. 6 1966)).   As may be gathered, in defendants' view much of the

material sought in plaintiffs' FOIA requests lies at or near the intersection

of these two competing considerations.

Because FOIA is intended to afford the public with a broad right of

access to federal agency records, subject to the listed exemptions, courts

uniformly construe the Act broadly in favor of disclosure and, correspondingly, apply the delineated exceptions narrowly. *Bloomberg*, 2010 WL 986527, at * 2 (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 136, 151, 109 S. Ct. 2841, (1989) (other citations omitted)); *Nat'l Council of La Raza*, 411 F.3d at 355-56 (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S. Ct. 1060, 1065 (2001)). Similarly, courts generally assign the burden to the agency seeking to justify non-disclosure to demonstrate that there is a legitimate basis for doing so, and also require the agency to show that a reasonable search under the circumstances was conducted in an effort to comply with a FOIA request. *Bloomberg*, 2010 WL 986527, at * 2 (citations omitted); *see also Nat'l Ass'n of Gov't Employees v. Campbell*, 593 F.2d 1023, 1026, n.21 (D.C. Cir. 1978) (citing *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 679 (D.C. Cir. 1976) and *Vaughn v. Rosen*, 523 F.2d at 1144); *Kussel v. U.S. Bureau of Prisons*, 882 F. Supp. 1116, 1121 (D.D.C. 1995).

The regulations promulgated under FOIA require that responses to document requests be given within twenty working days, making an additional ten day extension available upon request of the responding governmental agency. *See* 43 C.F.R. §§ 2.12, 2.13. The failure to

comply with these deadlines constitute a violation of FOIA.  *See*

*Information Network for Responsible Mining,* 611 F. Supp.2d 1178, 1183

(D. Colo. 2009).   Despite these rigid time requirements, courts generally

acknowledge the stark reality that federal agencies, often inundated with

numerous and broadly tailored FOIA requests, are rarely able to meet the

deadlines set forth in the regulations for responding.  *See Nat'l Resources*

*Defense Council v. Dep't of Energy,* 191 F. Supp.2d 41, 42 (D.D.C. 2002);

*see also Cohen v. Fed. Bureau of Investigation*, 831 F. Supp. 850, 854

(S.D. Fla. 1993) (the court cannot "completely ignore the reality that . . .

agencies cannot possibly respond to the overwhelming number of

requests received within the time constraints opposed by FOIA", finding it

difficult to believe Congress anticipated "such a mess of influx of FOIA

requests" when drafting enacting the measure).

A party seeking review of an agency's response to a FOIA request is

entitled to commence a civil action toward that end.[6]  Such actions are

---

[6]     FOIA requires a party to exhaust all administrative remedies before
seeking judicial review. *Dresser Indus. Inc. v. United States*, 596 F.2d 1231, 1238 (5th
Cir. 1979).  "FOIA provides for two different types of exhaustion, actual and
constructive.  Actual exhaustion occurs when the agency denies all or part of a party's
document request.  Constructive exhaustion occurs when certain statutory
requirements are met by the agency." *Taylor v. Appleton*, F.3d 1365, 1368 (11th Cir.
1994).  Under the statute,  with certain prescribed exceptions extending an agency's
time to respond, a party is deemed to have constructively exhausted all administrative
remedies if the agency fails to make a determination with respect to any appeal within

generally determined on motion for summary judgment. *Information Network for Responsible Mining,* 611 F. Supp.2d at 1182.  While not characterized in this way, plaintiffs' FOIA motion essentially seeks summary judgment on their fifteen and sixteenth causes of action.  It therefore seems clear that a decision on plaintiffs' FOIA motion would be dispositive, and thus beyond my jurisdiction.  Given the posture of the case this may well seem to present an anomaly, since I am empowered and prepared to address most, if not all, of the same issues now presented in plaintiffs' FOIA motion in the context of their motion to compel the production of additional documents allegedly comprising the administrative record.  In my view, nonetheless, I lack jurisdiction to address the merits of plaintiffs' FOIA contentions, including the adequacy

_____

twenty days (excepting Saturdays, Sundays and legal public holidays) after receipt of any such request.  *Id*. (citing 5 U.S.C. § 552(a)(6)(A)(ii)).

        In opposition to the plaintiff's FOIA motion, the defendants have argued that because the plaintiffs' administrative appeals are pending, their FOIA claims are not ripe for this court's review. The record is less than fully developed with respect to the issue of exhaustion.  It appears that plaintiffs filed an administrative appeal from the FOIA production on February 17, 2009 and a second appeal on April 3, 2009 specifically challenging the withholding of documents pursuant to section 301 of the National Historic Preservation Act.  At the time that plaintiffs' motions were filed, both of those appeals were pending.  By letter dated March 25, 2010, plaintiffs advised the court that they had withdrawn these appeals.  In any event, having determined that the FOIA issues raised on this motion are dispositive and accordingly beyond my purview, I make no findings as to the issues of exhaustion and ripeness, which are also questions to be decided by District Judge Kahn.

of the agency's privilege log, the propriety of the privileges asserted, and the delay in responding to plaintiffs' FOIA requests.

Plaintiffs have attempted to avoid this finding by urging the court to utilize its powers under Rules 26 through 37 of the Federal Rules of Civil Procedure and in essence overlay the discovery requirements imposed under those rules upon a civil litigant on the obligations arising under the FOIA.  Additionally, plaintiffs argue that Judge DiBianco's November 6, 2008 order essentially places the FOIA issues in my domain as the assigned magistrate judge.  Neither of these arguments is persuasive.

To be sure, there is significant commonality between the privileges that may be invoked in the context of discovery in a federal lawsuit and the exemptions relied upon by the DOI in withholding documents from their FOIA production.  FOIA exemption five, for example, has been construed by the courts to encompass various traditional common law privileges which are also commonly raised in civil discovery, including the attorney work product doctrine, as well as executive, attorney-client, and deliberative process privileges.[7]  5 U.S.C. § 552(b)(5); *see Nat'l Council of*

---

[7]    The deliberative process privilege implicates both plaintiffs' FOIA motion as well as their motion to compel production of the administrative record.  Originating from common law and codified in Exemption 5 of FOIA, "[the] deliberative privilege is an evidentiary privilege available to the government in the context of discovery . . .

*La Raza*, 411 F.3d at 356.  Nonetheless, FOIA does not incorporate by reference or otherwise depend upon the discovery rules in such a way as to suggest that the claims raised in plaintiffs' FOIA causes of action are thereby transformed into non-dispositive matters within this court's jurisdiction.  While in many respects FOIA and the discovery rules serve to further common goals, particularly in the case of pending litigation, the two are intellectually distinct.  *See John Doe Agency,* 493 U.S. at 153, 110 S. Ct. at 475-76 ("FOIA was not intended to supplement or displace the rules of civil procedure) (citations omitted); *Honeywell, Inc. v. Consumer Product Safety Com'n*, 582 F. Supp. 1072, 1078 (D.D.C. 1984) ("FOIA was not intended to be a discovery tool for civil plaintiffs").  Thus, even though the privileges advanced by defendants and disputed by plaintiffs with respect to defendants' responses to plaintiffs' FOIA demands involve issues routinely raised and appropriately addressed by this court in discovery, when raised and considered in the context of plaintiffs' FOIA claims, they lie at the heart of the merits and must be addressed by the assigned district judge.

---

permit[ting] the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."  *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 125 F.R.D. 51, 53 (S.D.N.Y. 1989) (citations and internal quotations omitted).

The plaintiffs' reliance upon Judge DiBianco's November 6, 2008 order is equally unavailing.  After reviewing a proposed case management plan, submitted in anticipation of a Rule 16 pretrial conference, the court merely endorsed the deadlines proposed by the parties for FOIA compliance.  I am not persuaded that it was Judge DiBianco's intent, or that of the parties for that matter, that by his approval of those deadlines the power to decide issues surrounding the sufficiency of defendants' FOIA response would be vested in a magistrate judge.  To accept plaintiffs' arguments in this regard would be analogous to concluding that by setting a deadline for filing dispositive motions as part of his case management order Judge DiBianco intended that a magistrate judge would thereby be empowered to hear and decide the dispositive motions.

In their FOIA motion plaintiffs' complain of the confusion engendered by the separate productions of the administrative record on the one hand, and the agency's compliance with FOIA on the other.  The reality is, however, that the two are distinct.  The requirement of production of an administrative record insures that the court will have the benefit of all non-privileged documents that were before and considered by the agency when making the challenged determination.  *See Citizens*

*to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S. Ct. 814 (1971). FOIA, in contrast, serves a slightly different purpose and entitles a citizen to request and obtain non-privileged documents that were before an agency, including those which may not have necessarily have been relied upon for the agency determination, and production under FOIA is specific to the actual requests made. *See Oceana, Inc. v. Locke*, 634 F. Supp.2d 49, 55 (D.D.C. 2009) (Stating that "[j]ust because predecisional and deliberative documents may have been responsive to plaintiff's] broad FOIA request does not mean that the Agency's decisionmakers considered those documents when [making their decision].") (citation omitted).  In light of the foregoing, although to a some degree overlapping productions were indeed required in this case, there was no obligation on the part of the defendants to specially collate or cross-reference the two.

As can be seen, plaintiffs' FOIA motion implicates dispositive matters associated with their fifteen and sixteen causes of action. Accordingly, having concluded that the motion requests relief exceeding my non-dispositive, non-consensual jurisdiction in the matter, plaintiffs' motion to compel FOIA compliance will be denied.

### B.    Plaintiffs' Motion to Compel Production Of Documents Not Included In The Administrative Record

One component of plaintiffs' second motion seeks to compel production of administrative record documents. The order issued on November 6, 2008 by Magistrate Judge DiBianco directed the DOI to file the administrative record underlying the Secretary's ROD, accompanied by a privilege log, by March 1, 2009.  *See* Dkt. No. 50.  The administrative record was ultimately filed on March 3, 2009, consisting of approximately 86,239 Bates marked pages.  Dkt. No. 100.  On January 19, 2010, after plaintiffs filed the pending motion, the DOI submitted what it has characterized as an "Administrative Record Supplement",  Dkt. No. 171, together with a fifty-six page "corrected privilege log".  Dkt. No. 170.

Plaintiffs' chief complaint with respect to the administrative record produced, and central to what remains in dispute, is the DOI's assertion of the deliberative process privilege with regard to the vast majority of the documents withheld from the record.  Secondarily, plaintiffs contend that the agency has improperly relied upon the attorney-client privilege in declining to produce two specific documents that were before the agency when its decision was made.

1.   Judicial Review Under The APA

The APA standard for review of agency action requires the court to

23

consider whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with the law." *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2dCir. 1982) (quoting 5 U.S.C. § 706(2)(A)).  This determination must be made based upon the information that was before the agency at the time of its decision; thus, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 93, S. Ct. 1241, 1244 (1973).  Section 706 of the APA requires judicial review of the "whole record or those parts of it cited by a party."  5 U.S.C. § 706.  "Thus, the agency must produce a complete and true record for the court to review."  *Tafas v. Dudas*, 530 F. Supp.2d 786, 793 (E.D. Virginia 2008) (citing *Citizens to Preserve Overton Park*, 401 U.S. at 420, 91 S. Ct. at 825).  Absent clear evidence to the contrary, a presumption exists that the agency has properly designated the administrative record.  *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp.2d 23, 27 (D.D.C. 2009).

While it may seem anomalous that a court must examine an agency decision and apply the controlling APA test without the benefit of all of the information that was before the agency, the weight of authority holds that

"[a] complete administrative record . . . does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege." *Tafas*, 530 F. Supp.2d at 794 (citing *Town of Norfolk v. U. S. Army Corps of Engineers*, 968 F.2d 1438, 1457-58 (1st Cir. 1992)); *see also, Oceana, Inc. v. Locke*, 634 F. Supp.2d 49, 52 (D.D.C. 2009); and*, Oceana, Inc. v. Gutierrez*, No. 08-00318, 2009 WL 1491516, at * 5 (D.D.C. May 28, 2009). Because, as a matter of law, privileged documents are not part of the administrative record, properly framed the issue presented is not whether the documents at issue should have been included by the agency within the record filed by the court; rather, the question is whether plaintiffs are entitled to discovery of these materials.[8]  *See Tafas v. Dudas*, 530 F.

---

[8]     Plaintiffs' motion is styled as one to "(a) compel production of the administrative record documents and (b) to authorize discovery to supplement the administrative record". Dkt. No. 141.  While I have determined that discovery of those documents withheld under the deliberative process privilege and the deposition of James E. Cason will be permitted, I have not made any determination as to whether the administrative record that will be considered by District Judge Kahn should be "supplemented".  "The parties' ability to supplement the administrative record is limited . . ." and at least one circuit court of appeals has suggested that it should be limited to circumstances where supplementation of the record is necessary in order not "to frustrate effective judicial review."  *Axiom Resource Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379-81 (Fed. Cir. 2009) (citing *Camp v. Pitts*, 411 U.S. at 142, 93 S. Ct. at 1242).  Additionally, while "[t]he case law permits a reviewing court to *consider* evidence beyond that which is contained in the administrative record in certain circumstances[,] . . . no good authority exists to permit a reviewing court to add evidence that will actually be *included* as part of an agency compiled record."  *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 15 (2d Cir. 1997) (emphasis in original).

Supp.2d at 793-97.  As such, in contrast to the privilege issues raised with respect to FOIA, the issues presented with regard to plaintiffs' motion to compel production of the administrative record fall squarely within my authority.  *Kiobel v. Millson*, 592 F.3d 78, 89 (2d Cir. 2010) ("Conducting pretrial and discovery proceedings has been a core component of a magistrate judge's role in civil cases since Congress created the position of magistrate judge.") (Cabranes, J., concurring).

2.    <u>The Deliberative Process Privilege</u>

The primary dispute regarding defendants' production of the administrative record concerns documents omitted on the basis of the deliberative process privilege.  Plaintiffs contend that these materials should be produced because in this case the privilege evaporates as a result of their challenge to the decision-making process itself.  While defendants take issue with this contention, they have not taken the broader position that documents protected by the deliberative process

---

It would appear that the issue of supplementation is not ripe for review since the material at issue is not presently before the court.  Moreover, without the benefit of briefing on this issue it appears to me that the narrow exception to the record rule, which precludes consideration of extra record material upon judicial review of an agency determination, implicates the merits of plaintiffs' claims and the issue of whether the record should be supplemented in this case should therefore be determined by District Judge Kahn.

privilege are not part of the record.

Well recognized and of long standing, the deliberative process privilege is intended to protect the decision-making process of governmental officials. *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 147 (2d Cir. 1994);  *State of New York v. Oneida Nation of New York*, No. 95-CV-0522, 2001 WL 1708804, at *6 (N.D.N.Y. Nov. 9, 2001) (Treece, M.J.), *aff'd,* 2007 WL 2287878 (Aug. 7, 2007) (Kahn, J.); *see also, Ebbert v. Nassau County*, No. CV 05-5445, 2007 WL 674725, at *10 (E.D. N.Y. Mar. 5, 2007).  The privilege extends to documents that are pre-decisional and were part of the deliberative process but does not apply to purely factual matter, and the burden of establishing that a document falls within these parameters and should thus be excluded rests with the government. *Spinner v. City of New York*, No. 01 CV 2715, 2004 U.S. Dist. LEXIS 2541, at *9 (E.D.N.Y. Feb. 19, 2004) (citing *Hopkins v. United States Dep't of Housing and Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991)).

The underlying rational for the principle that materials that are deliberative are not part of the administrative record is twofold.  *Tafas*, 530 F. Supp.2d at 794.   First, the focus of judicial review under the APA should be "upon an agency's stated reasons not the predecisional

27

process that led up to the final articulated decision." *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp.2d 134, 143 (D.D.C. 2002) (citations omitted).  Second, excluding these materials from the record encourages the agency to engage in uninhibited and frank discussion of policy and legal matters.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-52, 95 S. Ct. 1504, 1516-18 (1975).  In general, the actual subjective motivation of agency decisionmakers is irrelevant to the judicial review based upon an APA arbitrary and capricious standard; and, since the court's review is confined to the administrative record, it follows that discovery typically is not permitted.  *Tafas*, 530 F. Supp.2d at 794.   However, when the decision-making process itself is the subject of the litigation, "the overwhelming consensus and body of law within the Second Circuit is. . . that the privilege cannot bar discovery", and it "evaporates."[9]  *Children*

---

[9]     Courts in this circuit addressing the deliberative process privilege within the context of discovery disputes, albeit in non-APA actions, have found that the privilege is qualified. *See , e.g., Children First Found., Inc. v. Martinez*, No. 1:04-CV-0927, 2007 WL 4344915, at *6 (N.D.N.Y. Dec. 10, 2007) (Treece, M.J.) (citing cases); *see also, Spinner*, 2004 U.S. Dist. LEXIS 2541, at *9; and, *Ebbert v. Nassau County*, No. CV 05-5445, 2007 WL 674725, at *10.  Because the deliberative process privilege is qualified, a court is normally required to balance an agency's interest in non-disclosure against a litigant's need for the information and, to some extent, the public's interest in open government when deciding whether to uphold the privilege. *Children First Found., Inc.*, 2007 WL 4344915, at *6; *see also, Spinner*, 2004 U.S. Dist. LEXIS 2541, at *9.  Where, as here, the challenge is to the decision-making process, there is no balancing test the court must apply before requiring disclosure.  *Alleyne v. New York State Educ. Dep't*, 248 F.R.D. 383, 388 (N.D.N.Y. 2008).

28

*First Found., Inc.,* 2007 WL 4344915, at * 7.  (citing cases); *Alleyne*, 248 F.R.D. at 388.

The first issue to be addressed, therefore, is whether under the circumstances now presented the DOI is entitled to rely on the deliberative process privilege to shield disclosure of deliberative materials.  As plaintiffs emphasize, several of their claims squarely challenge the process by which the DOI made its decision to accept the OIN lands into trust.  Their second amended complaint alleges that the process was not open, was biased in favor of the OIN, was contrary to DOI policy and that of the underlying statute, failed to adequately consider the environmental impacts of the contemplated action as required under NEPA, and violated plaintiffs' constitutional right to due process.  The central theme of many of plaintiffs' claims is that the deliberative process itself was fatally flawed and infected by arbitrary conduct and abuse of discretion, thereby depriving them of due process.  In light of these allegations, the deliberative process privilege cannot serve as an impermeable shield preventing plaintiffs from obtaining proof of their claims; instead, the privilege must be considered to have dissipated.  *Children First Found.,*

_____

*Inc.*, 2007 WL 4344915, at * 7 ("By claiming that Defendants acted in an arbitrary manner and exercised unbridled discretion in rendering their policy decision, which allegedly denied [the plaintiff] due process and equal protection of the law, [sic] has made the process the cornerstone of this litigation."); *see also, Ebbert*, 2007 WL 674725, at *11.

In sum, because the DOI's decision-making process is at the heart of this action, I find that the deliberative process privilege imposes no restriction on plaintiffs' access to pre-decisional materials, and all documents withheld from the administrative record on this basis must therefore be produced.[10]

_____

[10]     Plaintiffs also contend that the defendants' production of the administrative record is deficient because the DOI has failed to include documents prepared by the Berger Group analyzing OIN socioeconomic data as well as documents submitted to the agency by the OIN in support of its application.  According to plaintiffs, the Berger Group documents were identified in the defendants' FOIA privilege log, but not included in the administrative record produced; and, except for one document listed on the FOIA privilege log, OIN documents are unaccounted for.  As a result, plaintiffs assert, there exists serious questions about whether defendants have met their obligations to produce the full administrative record.  The DOI asserts that neither the Berger Group documents nor the OIN application documents were part of the record before the agency.  As noted above, "the agency enjoys a presumption that it properly designated the record," *Oceana, Inc. v. Locke*, 634 F. Supp.2d at 53, and if these documents are indeed privileged, they are not part of the administrative record, *Tafas*, 530 F. Supp.2d at 794.  At the same time, the agency is obligated to produce the whole record, including "pertinent but unfavorable information, and an agency may not exclude information on the ground that it did not 'rely' on that information in its final decision."  *Id.* at 793 (citations omitted).  The determination as to whether the agency deliberately or negligently excluded such records, which could justify supplementation of the record, *see Oceana, Inc. v. Gutierrez*, 2009 WL 1491516, at *2, is not presently before this court.

Parenthetically, it appears that with regard to some of the documents withheld on the basis of the deliberative process privilege the DOI has also asserted one or more other privileges as a bar to disclosure.[11]  My finding that the deliberative process privilege evaporates in this case does not necessarily render other asserted privileges inapplicable.  With an eye toward reaching a resolution as to the whether the other privileges that have also been asserted by the agency in tandem with the deliberative process privilege provide a basis for withholding documents, counsel for the plaintiffs and the DOI will be directed to meet and confer in an effort to crystalize any disagreements over any documents withheld after production of those subject only to the deliberative process privilege has occurred.  In the event that the parties are unable to come to an agreement as to whether those other privileges have been properly asserted, the DOI will be directed to provide the court with a privilege log identifying the documents withheld along with an

---

[11]    I note there is authority for the proposition that an agency is not required to prepare a privilege log with respect to documents that are withheld from the administrative record on the basis of privilege.  *Oceana*, 634 F. Supp.2d at 52.  However, I find it unnecessary to determine whether that authority is applicable in this district.  In this case, the parties stipulated in their case management plan, which was "so ordered" by the court, that the DOI would prepare such a privilege log.  Accordingly, I have concluded, again, that the issues raised as to the proper assertion of privileges amount to discovery disputes within my authority.

estimate of the total number of pages implicated.

### 3.    Attorney-Client Privilege

Plaintiffs next contend that the DOI has improperly withheld two documents identified on its privilege log, both described as "Edits to Draft EIS" and relating to communications between a government lawyer, Tom Blaser, Esq., and a representative of the agency's contractor, Malcolm Pirnie.  Plaintiffs claim that because these documents were provided to an entity outside of the government they are beyond the protection of the attorney-client privilege.

The attorney-client privilege, one which is deeply rooted in our country's jurisprudence, finds its origins in English common law.[12]  *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev 1961)). The privilege "protects confidential communications made for the purpose of obtaining legal advice."  *Vingelli v. United States*, 992 F.2d 449, 454 (2d Cir. 1993) (citations omitted).  In serving its underlying policy

---

[12]    Since plaintiffs' claims arise under federal law, privileges including the attorney-client privilege are informed by "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501; *Woodward Governor Co. v. Curtiss Wright Flight Systems, Inc.,* 164 F.3d 123, 126 (2d Cir. 1999) ("[Q]uestions about privilege in federal question cases are resolved by the federal common law").

considerations the privilege seeks "to encourage full and frank

communication between attorneys and their clients". *Upjohn Co.*, 449

U.S. at 389, 101 S. Ct. at 682. The burden of establishing the existence

of the attorney-client privilege rests on the proponent of the privilege. *See*

*von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987). As the

Second Circuit has cautioned, "privileges should be narrowly construed

and expansions cautiously extended." *U.S. v. Weissman*, 195 F.3d 96,

100 (2d Cir. 1999) (citing *University of Pennsylvania v. E.E.O.C.*, 493 U.S.

182, 189, 110 S. Ct. 577, 582 (1990)).

The issue now presented – whether the protections of the attorney-

client privilege can extend to communications between a government

attorney and a non-government employee acting as an agency consultant

– is one that has yet to be addressed by the Second Circuit. Ordinarily,

the voluntary disclosure of a privileged communication to a third party

waives the privilege. *In re Grand Jury Proceedings*, No. M-11-189, 2001

WL 1167497, at *11 (S.D.N.Y. Oct. 3, 2001) (citing and quoting *United*

*States v. Internat'l Brotherhood of Teamsters*, 961 F. Supp. 665, 673

(S.D.N.Y.), *aff'd*, 199 F.3d 2010 (2d Cir. 1997)) (other citation omitted).

Some courts, however, have extended the attorney-client privilege in a

corporate setting to communications between a corporation's attorney and outside agents or consultants to the corporation who act as the functional equivalent of a corporate employee. *In re Currency Conversion*, No. MDL 1409, M 21-95, 2003 WL 22389169, at * 2 (S.D.N.Y. Oct. 21, 2003) (citing *In re Beiter, Co.*, 16 F.3d, 929, 937 (8th Cir.1994) and *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001)).

At this juncture, I find it unnecessary to determine whether the "functional employee" exception to third-party waiver of the attorney-client privilege applies in the current circumstances for two reasons. First, although plaintiffs have provided two pages of the DOI's privilege log purportedly containing the two objectionable entries relative to communications with government attorney Blaser, upon review of this submission I have identified only one such entry showing that a document was withheld on the basis of attorney-client privilege (in addition to the deliberative process privilege). Moreover, even if this were not the case, I find that the information provided by the DOI in its privilege log is insufficient to allow the court to make an informed determination as to whether the document at issue warrants attorney-client privilege protection. Accordingly, I will deny this portion of the plaintiffs' motion,

without prejudice, and direct the parties to also include these two disputed documents in their discussions when they meet and confer.

     C.    <u>Plaintiffs' Request For Leave To Engage In Limited Discovery</u>

In their motion, plaintiffs also seek court permission to take limited discovery in order to augment the administrative record now before the court.  Although the extent of the discovery sought was not fully apparent from plaintiffs' motion papers, when pressed at oral argument their counsel informed the court of their desire to take the depositions of Associate Deputy DOI Secretary James E. Cason, lobbyist Thomas Sansonetti, OIN counsel Michael R. Smith, Esq., and a representative of Malcolm Pirnie knowledgeable with respect to the shaping of the EIS. Plaintiffs also seek leave to request copies of all e-mail communications between Sansonetti and the DOI as well as those between the OIN and Malcolm Pirnie.  As a secondary matter, plaintiffs request the opportunity to engage in discovery to probe the status of the OIN, specifically to determine whether it was recognized by the federal government as a tribe in 1934, at the time of enactment of the Indian Reorganization Act ("IRA"), 25 U.S.C. § 465.  Defendants vigorously oppose plaintiffs' efforts to engage in discovery, citing the administrative review nature of this

proceeding and the corresponding general principle that the court's determination should be based exclusively upon the record that was before the agency at the time of its determination.

The principles governing the determination of whether discovery should be permitted in the context of judicial review of an administrative determination are well settled and not seriously disputed by the parties to this lawsuit.  In general, pursuant to what is known as the "record rule", "a court reviewing an agency decision is confined to the administrate record compiled by the agency when it made its decision."  *National Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44, 105 S. Ct. 1598, 1606-07 (1985)).  As a narrow, recognized exception to this rule, courts typically allow for a more expansive scope of review where a party has made a "'strong preliminary showing' of bad faith or improper behavior. . . ." *Tummino v. Von Eschenbach*, 427 F. Supp.2d 212, 230 (E.D.N.Y. 2006) (citing *Nat'l Nutritional Foods Ass'n. v. FDA*, 491 F.2d 1141, 1145 (2d Cir. 1974))*; see also, Schaghticoke Tribal Nation v. Norton*, No. 3:06CV81, 2007 867987, at *2 (D. Conn. Mar. 19, 2007); *Friends of Shawangunks, Inc. v. Watt*, 97 F.R.D. 663, 667 (N.D.N.Y. 1983) (citing *Citizens to*

*Preserve Overton Park v. Volpe*, 401 U.S. at 420, 91 S. Ct. at 825

(1971)).  While it is well established that naked assertions of bad faith will

not suffice to open the door to discovery in an APA action, *Friends of the*

*Shawangunks*, 97 F.R.D. at 667 (citing *Citizens to Preserve Overton Park*,

401 U.S. at 420, 91 S. Ct. at 825), the standard for determining whether

there has been a sufficiently strong showing is less clear.  *See Tummino*,

427 F. Supp.2d at 230-231.  As has been observed by another court

within this circuit,

> [w]hat constitutes a strong preliminary showing of bad faith or
> improper behavior . . . is a matter that the courts have been
> reluctant to define, preferring in the main simply to declare that
> on the facts of a given case, the showing has not, or
> occasionally has, been made.

*Id.* (citing cases).[13]

### 1.   Discovery Regarding Bad Faith And Bias

In their second amended complaint, plaintiffs assert that the DOI's

determination was infected by bias.  In support of their quest for discovery,

plaintiffs cite various factors that they claim evidence the agency's bad

---

[13]     Whatever else can be said about the standard to be applied when
determining whether to permit discovery in an APA action, it seems clear that it
exceeds the relatively modest showing required in order to pierce the deliberative
process privilege, as was previously discussed at pp. 26-32, *ante*.  *See Alleyne v.
N.Y.S. Educ. Dep't*, 248 F.R.D. 383, 388 (N.D.N.Y. 2008)

faith, generally including allegations that 1) the DOI "favored" the OIN during the decision-making process; 2) the agency relied in its EIS upon what plaintiffs term the "Doomsday Tax Scenario" supplied by the Nation's attorneys; 3)  the OIN retained and paid over $1 million to former government employee Thomas Sansonetti to lobby his former colleague, James E. Cason, Associate Deputy Secretary of the DOI; 4) Cason withdrew decision-making authority from the Eastern Regional office, where an initial decision on such an application would normally be made subject to central office review, thereafter became personally involved in the administrative process, and decided that at least 10,000 acres would be taken into trust even before notice of the application was issued to the State and Counties; 5) the DOI deviated from its customary practices and procedures, including with respect to satisfaction of tax liens and requirements for preliminary title opinions for the property; 6) the agency unreasonably delayed in responding to plaintiffs' FOIA requests until after issuance of the ROD; and 7) the DOI exhibited bias in favor of the OIN in its handling of the transfer of the former Air Force property in Verona, New York.

As defendants argue, most of these allegations relate directly to the

merits of the plaintiffs' claim that the DOI's determination was not supported by the record, and instead was arbitrary and capricious, or contrary to law.  In fact, of these allegations there remain only two that are essentially unanswered and provide room for concern.  First, according to plaintiffs Sansonetti, a personal friend and former colleague of Cason, and a lobbyist, had direct access to Cason with the ability to influence his decision.  Additionally, despite at least some assurances by the government that plaintiffs could obtain documents relating to the decision-making on the land into trust process through the FOIA, and notwithstanding repeated formal FOIA requests by plaintiffs, the DOI did not provide the requested documents until long after the ROD was issued.  Considered independently, these facts may not give rise to the specter of bad faith.  When viewed together, however, and in context of the record as a whole, they represent a sufficient preliminary showing of bad faith to justify very limited discovery.

Plaintiff has produced evidence showing that shortly before he was retained as a lobbyist for the OIN, Sansonetti was employed by the government as an Assistant Attorney General for the Environment and Natural Resources Division within the Department of Justice, where he

worked closely with Associate Deputy Secretary Cason, and also

submitted an amicus on a brief on behalf of the government to the United

States Supreme Court in the *Sherill* case.  As a lobbyist for the OIN,

Sansonetti had direct access to Cason and began working with him as

early as July of 2005, well before the plaintiffs had received formal notice

of the OIN's application, requesting Cason to expedite consideration of

the application and create a special team within the DOI to review and

approve the taking in trust of the lands described in the application.

Shraver Decl. Exh. O (Dkt. No. 141-9) (letter of July 20, 2005).  According

to plaintiffs, Cason took an unusual personal interest in the OIN's

application, which he had prejudged from the outset; in a meeting on

September 1, 2005, again prior to formal notification to the plaintiffs,

before the public comment period, and with the record not yet fully

developed, Cason apparently communicated to the DOI team reviewing

the OIN application that he only felt comfortable bringing 10,000 of the

proposed 17,000 plus acres into trust at that time, suggesting that it was a

foregone conclusion that the OIN application would be granted at least

with regard to 10,000 acres.  Shraver Decl. Exh. Q (Dkt. No. 141-9) (e-

mail of Sept. 2, 2005) (also noting that "[t]ribe is losing a million dollars a

month in taxes on their properties so they want them in trust soon and the

higher taxed ones like the casino as soon as possible.").  Within a couple

of weeks of meeting with Sansonetti and OIN representatives at the

Nation's Turning Stone Resort and Casino on February 14, 2006, the DOI

Eastern Region Director was notified that Cason was withdrawing the

delegation of authority to the region in connection with the matter and that

a final determination regarding approval of the OIN application would be

made at the central office in Washington, D.C., a move that plaintiffs

contend is unusual.  Shraver Decl. (Dkt. No. 141-10) Exhs. T-1 and T-2.

Cason was then directly involved in the preparation of the EIS, suggesting

as an alternative that the government take 35,000 acres of land into trust

(as opposed to the 17,310 acres sought in the OIN application) and

ensuring that his alternative would be included in the scoping documents

the way he had envisioned.  *See* Shraver Decl. Exhs. V-1, V-2, W, and X

(Dkt. No. 141-10).

In addition to the foregoing evidence suggesting that Cason

prejudged and controlled the agency's review of the OIN application,

plaintiffs point to the governments' alleged stonewalling with respect to

their FOIA requests as further evidence that the decision-making process

was skewed.  In response to letter from a local congressman, Cason

advised that the plaintiffs would have the opportunity to participate and

submit comments with respect to the OIN application during the NEPA

process and that the state and local governments could obtain materials

submitted by the OIN in support of its application through FOIA.  Shraver

Decl. Exhs. BB-1 and BB-2 (Dkt. No. 142-1).  Plaintiffs made their first

FOIA request in October of 2006, and submitted eight additional requests

in 2006 and 2007.  In or about March of 2007, the Bureau of Indian Affairs

("BIA") informed the plaintiffs that it had located an estimated 50,000 to

60,000 pages of documents responsive to plaintiffs' October 30, 2006

FOIA request and that the BIA would require payment of a fee of $9,540

for processing and production of those documents.  In April of 2007,

plaintiffs paid the requested fee.  Notwithstanding that payment, as well as

periodic inquiries, serial requests, and the filing of administrative appeals,

the DOI did not produce documents responsive to plaintiffs' FOIA

requests until long after the DOI issued its ROD on May 20, 2008, signed

by Cason as well as Deputy Secretary P. Lynn Scarlett.  At that time,

more than a year and a half after their first FOIA request, plaintiffs still had

not received the documents requested (and paid for) through FOIA.

Indeed, while plaintiffs commenced this action on June 18, 2008, it was not until December 31, 2008, over six months later, under the force of the court's case management order, that the DOI finally produced the requested FOIA documents.

Plaintiffs claim that the government's grossly belated production prejudiced their ability to comment on the OIN's application.  The DOI's only explanation for the delay is that the request encompassed a vast quantity of documents, and the agency's employees are generally overburdened with FOIA requests.  Significantly, however, there is no indication in the record that the government obtained and agreement  for an extension of time to make its production, or judicial approval therefor, and it appears that many of plaintiffs' attempts to gain compliance were simply ignored.  In my view, without suggesting any particular ruling on the merits of the plaintiffs' claims, the FOIA requested documents should have been produced to plaintiffs much sooner, at a time when access to them would have been meaningful to the process.

Undeniably, "[s]ome political influence on the administrative process is legitimate. . .." *Schaghticoke*, 2007 WL 867987, at * 6.  Realistically, however, a court cannot require a plaintiff to present conclusive evidence

43

of political improprieties to support a request for discovery.  *Sokoagon Chippewa Community v. Babbit*, 961 F. Supp. 1296, 1281 (W.D. Wisc. 1997).  As another court has observed, "agency officials are not likely to keep a written records of improper political contacts."  *Id.*  When considered as a whole, the evidence now presented by the plaintiffs suggests, at least preliminarily, that the DOI's actions were predetermined and influenced by factors not relevant to its consideration of the land into trust application.  See *Schaghticoke*, 2007 WL 867987, at * 6.  Under the circumstances presented, I find that plaintiffs have made a sufficient showing to warrant limited discovery on the issue of bias and bad faith, and will thus permit plaintiffs to depose James E. Cason.

2.    Discovery Regarding OIN Eligibility Under The IRA

Plaintiffs also seek discovery on the question of whether the OIN was a federally recognized tribe at the time of the enactment of the IRA in 1934, arguing that the administrative record contains insufficient evidence to demonstrate that it was.

In order to determine whether the agency action was rational, the court must determine what facts were before the agency at the time it acted.  *Dopico*, 687 F.2d at 654.  "Determining what constitutes the

44

agency's informational base is vital", and at times presents a question of fact for the court to decide. *Id.*

Whether the record before DOI included sufficient information for it to make a rational determination as to the OIN's tribal status or should be supplemented thus presents issues going to the merits of plaintiffs' claims, questions that must be decided by the district judge assigned to this case.[14]   *See Dopico*, 687 F.2d at 654.  Accordingly, plaintiffs' motion for discovery on this issue will be denied, without prejudice.

III.   CONCLUSION

Plaintiffs' motions raise two related but distinct issues.  With respect to the first, addressing the adequacy of the DOI's responses to their FOIA requests, I conclude that the issue implicates the merits of plaintiffs' claims, and in particular their fifteenth and sixteenth causes of action, and thus exceeds my jurisdiction.  Accordingly, plaintiffs' motion to compel enforcement of their FOIA requests will be denied.

---

[14]     Additionally, I emphasize that this decision merely authorizes the plaintiffs to take a limited deposition of Associate Deputy Secretary Cason and does not purport to represent my finding that the results of that deposition should be included in the record for consideration by District Judge Kahn when ruling upon plaintiffs' claims.  The determination of whether, and if so to what extent, the transcript of that deposition should be considered in determining the merits of plaintiffs' claims is a matter for the trial court.

45

Turning to plaintiffs' second motion, properly construed the application is one for discovery of information that was within the possession of the DOI when its ROD was issued, but not included within the administrative record filed with the court.  Plaintiffs' second amended complaint challenges not only the ultimate agency determination to take land into trust for the OIN but DOI's motivation in doing so, as well as the process through which the decision was reached.  Accordingly, I find that the deliberative process privilege does not shield certain predecisional documents withheld by the agency from the production of the administrative record on that basis, and I will direct production of those documents.  I further find that the plaintiffs have made a strong, preliminary showing of bad faith and improper motives sufficient to justify limited discovery and therefore will authorize the plaintiffs to take the deposition of Associate Deputy Secretary Cason, but will otherwise deny their application for further discovery, without prejudice.

Accordingly, it is hereby

ORDERED as follows:

1)      Plaintiffs' motion to compel production by the DOI of additional FOIA documents currently being withheld (Dkt. No. 140) is DENIED,

without prejudice;

2)    Plaintiff's motion to compel discovery (Dkt. No. 141) is GRANTED, in part;

3)    The DOI is directed to produce to the plaintiffs all documents that were withheld from the administrative record solely on the basis of the deliberative process privilege by April 30, 2010;

4)    The parties are directed to promptly meet and confer with respect to documents that have been withheld from the administrative record on the basis of any other privilege and, if unable to come to an agreement with respect to the production of these documents, the DOI is directed to submit to the court, on or before May 14, 2010, a privilege log identifying the documents remaining in dispute together with an estimate as to the total number of pages involved;

5)    Plaintiffs are granted leave to take the deposition of James E. Cason at a mutually agreed upon date, time, and location on or before June 30, 2010, for a duration not to exceed seven hours;

6)    Plaintiffs' motion to compel production of the administrative record and for discovery (Dkt. No. 141) is otherwise DENIED;

7)    The clerk is directed to schedule a status telephone conference

in this action only on a date after June 30, 2010; and

      8)    The clerk is directed to revise court records to reflect the

substitution of Kenneth L. Salazar, the newly appointed Secretary of the

Interior, in place of Dirk Kempthorne, as a defendant in this action.


DATED:    April 1, 2010
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge