UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK; DAVID A.
PATERSON, in his capacity as Governor
of the State of New York;ANDREW M.
CUOMO, in his capacity as Attorney
General of the State of New York;
MADISON COUNTY, NEW YORK; and
ONEIDA COUNTY, NEW YORK,

       Plaintiffs,

 -against-                6:08-CV-644 (LEK/GJD)

KENNETH SALAZAR, Secretary, United
States Department of the Interior; JAMES
E. CASON, Associate Deputy Secretary of
the Interior; P. LYNNSCARLET, Deputy
Secretary of the Interior; FRANKLIN KEEL,
Eastern Regional Director, Bureau of Indian
Affairs; UNITED STATES DEPARTMENT
OF THE INTERIOR, BUREAU OF INDIAN
AFFAIRS; UNITED STATES DEPARTMENT
OF THE INTERIOR; UNITED STATES OF
AMERICA; JAMES A. WILLIAMS, Acting
Administrator, United States General Services
Administration; UNITED STATES GENERAL
SERVICES ADMINISTRATION,

       Defendants,

 -and-

ONEIDA NATION OF NEW YORK,

       Intervenor Defendant.

**MEMORANDUM-DECISION AND ORDER**

I.      **INTRODUCTION**

Plaintiffs filed this action on June 19, 2008, raising various challenges to a May 20, 2008 Record of Decision ("ROD") in which the United States Department of the Interior ("DOI") determined to accept over 13,000 acres of land in central New York into trust for the benefit of the Intervenor Defendant, the Oneida Nation of New York ("Oneida Indian Nation" or "OIN"). Subsequently, Plaintiffs filed their Second Amended and Supplemental Complaint on February 12, 2009, adding five claims related to the DOI's acceptance of administrative custody over an 18-acre parcel – which previously had been used by the United States as an annex to the Griffiss Air Force Base – to be held in trust for the benefit of the OIN. See Second Am. Compl. (Dkt. No. 94).

Presently before the Court is a Motion (Dkt. No. 134) to direct entry of a final judgment as to Plaintiffs' Eighteenth through Twenty-Second Causes of Action located in their Second Amended and Supplemental Complaint (Dkt. No. 94). These claims, the same ones added by the February 12, 2009 filing, were dismissed by this Court in a September 29, 2009 Memorandum-Decision and Order on the basis that Plaintiffs lack standing to pursue them. See Dkt. No. 132. With the instant Motion, brought pursuant to Federal Rule of Civil Procedure 54(b), Plaintiffs now seek to enable immediate appellate review of that dismissal.

II.     **BACKGROUND**

On January 7, 2009, the Defendants filed a Notice of Administrative Action ("Notice") pursuant to 40 U.S.C. § 523, alerting the Court and the other parties that:

[O]n December 30, 2008, the Bureau of Indian Affairs formally acknowledged receipt

> of administrative custody and accountability for the former United States Air Force Space Command Complex at the Verona Research Facility, Germany Road, Verona, New York. Such property is held in trust by the Secretary of the Interior for the Oneida Indian Nation of New York. The trust acquisition was mandated by 40 U.S.C. § 523, and accordingly was non-discretionary . . . . The property accepted into trust is not part of the land the Department of the Interior proposes to accept into trust pursuant to the May 20, 2008 Record of Decision that is the subject of [this case and related cases].

Dkt. No. 72.

The land at issue in the December 30, 2008 Notice consists of an 18.195 acre parcel located in Verona, New York, which the United States acquired in fee from a private landowner in 1952. See Defs.' Mem. in Supp. at 4 (Dkt. No. 111, Attach. 1); Second Am. Compl. ¶¶ 107, 109. The United States used the 18-acre parcel as part of the Verona Test Site, an annex to the Griffiss Air Force Base. See Second Am. Compl. ¶ 114; Defs.' Mem. in Supp. at 4. Griffiss Air Force Base closed in 1995, with the Verona Test Site vacated by the Air Force in 1996. See Defs.' Mem. in Supp. at 4; Second Am. Compl. ¶¶ 116-17. On January 23, 2001, the Air Force issued a Report of Excess Real Property for the 18-acre parcel. Dkt. No. 111, Attach. 4. In a letter dated May 24, 2002, DOI informed the General Services Administration ("GSA") that the Verona Test Site is situated within the exterior boundaries of the 1794 reservation set aside for the Oneida Indian Nation by the Treaty of Canandaigua. Dkt. No. 111, Attach. 6. GSA then issued a letter on May 28, 2002 stating that it "hereby transfers the Property to the BIA to be held in trust by the Department of the Interior, for the benefit and use of the Oneidas . . . ." Dkt. No. 111, Attach. 7. DOI acknowledged custody and accountability for the 18-acre parcel per the Notice issued on December 30, 2008. Dkt. No. 72.

On February 10, 2009, the parties stipulated to the filing of a Second Amended and

3

Supplemental Complaint, and the Court approved that stipulation on February 11, 2009. Dkt. Nos. 91, 92. Plaintiffs' Second Amended and Supplemental Complaint asserted seventeen causes of action challenging DOI's May 20, 2008 decision to accept over 13,000 acres in trust for the OIN, as well as five causes of action challenging DOI's December 30, 2008 acknowledgment of administrative custody over the 18-acre parcel. See generally Second Am. Compl. Plaintiffs raised constitutional, statutory, and regulatory claims, alleging, *inter alia*, violations of the nondelegation doctrine; the Tenth Amendment; the land into trust provision of the Indian Reorganization Act, 25 U.S.C. § 465; the regulations in 25 C.F.R. part 151; NEPA; the Freedom of Information Act; and the Indian Gaming Regulatory Act ("IGRA"). For relief, Plaintiffs sought a declaratory judgment that the Defendants' action in taking the subject land into trust was unlawful; an injunction prohibiting Defendants from taking any of the subject land into trust; a declaratory judgment that the 18-acre transfer is null and void; and an injunction prohibiting Defendants from transferring any other excess or surplus federal land into trust for the OIN. Id. at 73-74.

On September 29, 2009, this Court addressed several Motions filed by the parties, including Defendants' Motions to dismiss Plaintiffs' Supplemental Claims concerning the 18-acre parcel. Dkt. Nos. 110, 111. With respect to the supplemental causes of actions, the Court found that Plaintiffs did not meet the constitutional minimum for standing to pursue those claims. Accordingly, the five causes of action of that type were dismissed. See Dkt. No. 132. Specifically, the Court concluded that Plaintiffs failed to demonstrate the existence of a sufficient injury-in-fact and failed to show an adequate causal relationship between Defendants' action and their alleged injury. Id. Relatedly, it was determined to be merely speculative, as opposed to likely, that Plaintiffs claimed injury would be redressed upon successful resolution on the merits of their

supplemental claims. Along with this disposition, the September 29, 2009 Memorandum-Decision and Order dismissed Plaintiffs' First, Second and Seventeenth Causes of Action and denied summary judgment on Plaintiffs' Third Cause of Action, which involved claims challenging to the DOI's original trust decision. Id.

Approximately two weeks after the Court's Decision, on October 14, 2009, Plaintiffs brought the instant Motion to obtain entry of a final judgment on their Supplemental Claims so as to expedite an appeal of the Court's dismissal. The Court turns now to consider that Motion.

**III.    RULE 54(b)**

Federal Rule of Civil Procedure 54(b) instructs, in relevant part, that: "When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). "Thus, to have a final judgment under the rule, (1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment." Ginett v. Computer Task Group, 962 F.2d 1085, 1091 (2d Cir. 1992) (emphasis omitted). The degree of finality required for appealability under 28 U.S.C. § 1291 is "defined as a judgment which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Kahn v. Chase Manhattan Bank, N.A., 91 F.3d 385, 388 (2d Cir. 1996) (citations and quotations omitted).

Once a district court finds finality as to at least one claim, or the rights or liabilities of at

5

least one party, the court considers whether the Rule 54(b) certification sought is supported by reasons that justify departing from the normal process of appellate review, wherein all claims and parties are presented in a single proceeding. With respect to the third step, "[g]enerally, a district court may properly make a finding that there is 'no just reason for delay' only when 'there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 16 (quoting Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir. 1987)). There is, of course, an "historic federal policy against piecemeal appeals," and "a district court must take into account judicial administrative interests as well as the equities involved." Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 8 (1980); see also Ginett, 962 F.2d at 1095 ("The proper guiding star, as the Supreme Court has emphasized, is the interest of sound judicial administration . . . [which] must involve a proper regard for the duties of both the district court and the appellate court. We should avoid the possibility that the ultimate dispositions of the claims remaining in the district court could either moot our decision on the appealed claim or require us to decide issues twice."). Thus, a district court's power to enter a final judgment under Rule 54(b) should "be exercised sparingly." Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 629 (2d Cir. 1991). In general, "certification of the dismissal of fewer than all the claims in an action should not be granted if the same or closely related issues remain to be litigated." Id. (quotations and citations omitted). The determination that no just reason for delay exists in a given case, such that Rule 54(b) certification is warranted, is committed to the sound discretion of the district court and will be reversed only if clearly unreasonable. Curtiss-Wright Corp., 446 U.S. at 8-10. Nonetheless, when a district does grant certification under the Rule, "its certification must be accompanied by a reasoned, even if brief,

explanation of its conclusion." O'Bert v. Vargo, 331 F.3d 29, 41 (2d Cir. 2003).

**IV.   ANALYSIS**

As an initial matter, the Court finds that the first two steps of the Rule 54(b) inquiry are met. Plaintiffs are seeking an entry of final judgment on a subset of the numerous claims asserted in their Second Amended and Supplemental Complaint, namely the Eighteenth through Twenty-Second causes of action concerning the 18-acre parcel. The Court's disposition of that subset of claims, dismissing them for lack of standing, necessarily decides those claims within the meaning of 28 U.S.C. § 1291; by rejecting Plaintiffs' supplemental claims on the basis of deficient standing, the Court's ruling fully terminated the litigation of those claims before it, absent an appeal. See, e.g., Geneva Pharms. Tech. Corp. v. Barr Labs. Inc., 98-cv-861, 99-cv-3607, 2002 U.S. Dist. LEXIS 18177, at *3-4 (S.D.N.Y. Sept. 27, 2002). The parties do not dispute that the multiple claims and finality steps are met, but they exclusively contest whether the standard governing the third step is met.

Upon review of Plaintiffs' Motion, the Court finds that the interests of judicial economy and sound administration are served by following the regular sequence of appellate review rather than by severing the Court's rulings on the Supplemental Claims for immediate appeal. Plaintiffs do not show that they will suffer prejudice or harm without such an appeal, and they do not demonstrate why the instant matter should be considered unusual or exceptional for purposes of Rule 54 certification. Plaintiffs' argument in support of certification rests on the assertion that appeal is necessary to prevent not only the transfer of the 18 acres underlying the Supplemental Claims but transfer of other unspecified lands from the GSA to the DOI. Plaintiffs suggest that the Court's

decision on the standing issue will interfere with or prevent Plaintiffs from challenging future land transfers made pursuant to 40 U.S.C. § 523. For several reasons, this argument is not persuasive.

Assuming *arguendo* that a future land transfer under 40 U.S.C. § 523 which is not part of the instant case constitutes prejudice or harm which supports certification, there is no indication that such a transfer will take place before Plaintiffs' outstanding claims are resolved. Per stipulation of the parties, approved by the Court on February 23, 2010, "the GSA hereby represents that there are currently no outstanding reports of excess or surplus federal property located within the Area and no property located within the Area is currently in the process of being transferred by GSA to the DOI to be held in trust for the benefit of the Intervenor-Defendant or any other group . . . ." The stipulation, which renewed a substantially similar stipulation for another year, also provides that the GSA shall notify the Plaintiffs of any report of excess or surplus federal property within the Area, and that the GSA "agrees that it will not transfer any such property to the DOI to be held in trust . . . until at least sixty days after such notification." The GSA may, however, terminate the agreement upon 60 days notice. Plaintiffs' argument with respect to the possibility of other land transfers is conjectural and belied by the circumstances surrounding this case.

Moreover, Plaintiffs misconstrue the impact of the Court's decision; were there to arise a declaration of excess land by the GSA and a subsequent transfer pursuant to 40 U.S.C. § 523, Plaintiffs would be free to challenge that decision in court, as it would present a different case in which this Court's ruling is not binding. Temporally, given the parties' stipulation and the time it would take for a new transfer decision to be rendered and then challenged, the Court does not see how an interlocutory appeal in this case could be considered necessary to prevent a hypothetical and improbable prejudice arising from unspecified future land transfers. Because there is no "danger of

hardship or injustice through delay which would be alleviated by immediate appeal," Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005), Plaintiffs' speculation does not lend support to their Motion.

Plaintiffs also argue that an interlocutory appeal is needed to avert some form of harm relating directly to the 18-acre parcel. It is asserted that without such an appeal, the Court's standing decision results in or bars redress for harm to what is described as sovereignty interests concerning the communities adjacent to the parcel. This contention, of course, recycles the Plaintiffs' allegations of injury arising from the transfer determination, which this Court rejected in denying Plaintiffs' standing to bring the Supplemental Claims. The reasoning of that decision, wherein Plaintiffs were found to have failed, *inter alia*, to demonstrate the existence of a sufficient injury-in-fact, and that it was highly speculative that Plaintiffs' claimed sovereignty interest injury could be redressed by a successful resolution on the merits of their supplemental claims, is in clear conflict with Plaintiffs' instant argument. If the Court had understood there to be a legally cognizable harm from the decision to transfer the parcel from the GSA to the DOI, the Court would not have found standing to be lacking. The allegations offered as a basis for Plaintiffs' Motion have already been rejected for sound reasons, and it would defy sense to now accept the same allegations as representing a danger for which Rule 54 certification is appropriate.

Finally, the Court notes that have this litigation reach the appellate court in a single proceeding rather than in pieces is consistent with the guiding principle of good judicial administration. In this highly involved case, there are a number of substantive issues which are common to the Plaintiffs' surviving claims and the dismissed Supplemental Claims; were the Second Circuit to disagree with this Court's standing decision, it would expose those issues, as they

9

relate to the Supplemental Claims, as possible bases for that court's resolution of the appeal.  These issues include, among others, the application of the Enclave Clause and the current status of the Oneida reservation in terms of its legal establishment.  The better course is to have the Second Circuit review this Court's ruling together, after Plaintiffs' remaining claims have been addressed, which the Court anticipates will occur following certain discovery disputes.  In sum, given the absence of a sufficient showing by Plaintiffs as to why the particular circumstances of this case warrant an interlocutory appeal, there are no reasons for certification that outweigh the Court's view that judicial administration is best served by allowing this litigation to reach a full resolution at the district level before appellate review is undertaken.  This interest in judicial administration, in the present context, provides just reason to delay the interlocutory appeal sought by Plaintiffs.

### IV.     CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendants' Motion (Dkt. No. 134) to direct entry of a final judgment as to Plaintiffs' Eighteenth through Twenty-Second Causes of Action is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:     June 09, 2010
           Albany, New York

Lawrence E. Kahn
U.S. District Judge