UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK; *et al.*,

                Plaintiffs,

      -against-                         6:08-CV-0644 (LEK/DEP)

SALLY JEWELL, Secretary, United
States Department of the Interior;[1] *et al.*,

                Defendants,

      -and-

ONEIDA NATION OF NEW YORK,

                Intervenor-Defendant.

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

Presently before the Court are: (1) the Cayuga Nation's ("CN") Motion to intervene, which comes before the Court following a Report-Recommendation filed on September 11, 2013, by the Honorable David E. Peebles, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1; (2) the Stockbridge-Munsee Community, Band of Mohican Indians' ("SMC") Motion to intervene; and (3) a Letter Motion on behalf of all parties seeking the Court's approval of a stipulation of dismissal that incorporates the terms of a settlement agreement. Dkt. Nos. 280 ("CN Motion"); 300 ("Report-Recommendation"); 303 ("SMC Motion); 319 ("Letter Motion"); 319-1 ("Stipulation"); 319-2 ("Settlement Agreement" or "SA"). For the following reasons, the Motions to intervene are denied, the Settlement Agreement is approved, and the case is dismissed.

---

[1] As Secretary of the United States Department of the Interior, Sally Jewell replaces Kenneth Salazar as a Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

## II.    THE SETTLEMENT AGREEMENT[2]

On May 16, 2013, Governor Andrew Cuomo announced that Plaintiffs the State of New York ("State"), Oneida County, and Madison County (collectively, "Counties") (together with the State, "Plaintiffs") had reached an agreement with Intervenor-Defendant the Oneida Indian Nation ("OIN") encompassing the settlement of various disputes. Report-Rec. at 3; Dkt. No. 280-2 ("CN Memorandum") at 2. Although this case is only one of several disputes covered by the Settlement Agreement, the Settlement Agreement nevertheless provides for Plaintiffs and the OIN to submit before the Court a proposed order of dismissal incorporating the Settlement Agreement.[3] SA § VIII(C). In accordance with this provision, on December 12, 2013, the parties filed the Stipulation, along with the Settlement Agreement and the Letter Motion requesting that the Court approve the Stipulation. Stipulation; Letter Mot. The Settlement Agreement is extensive, and the Court recites only those provisions directly relevant to this Memorandum-Decision and Order.

### A. Settlement of Trust Litigation

Plaintiffs commenced this action on June 6, 2008, challenging the United States Department of the Interior's ("DOI") decision to take 13,000 acres of land into trust for the OIN pursuant to 28 U.S.C. § 465. Dkt. No. 1; see also Dkt. No. 238-12 ("2008 ROD"). The OIN subsequently intervened as a defendant. Dkt. Nos. 37, 48. On September 24, 2012, the Court remanded the case to the DOI for further proceedings. Dkt. No. 276 ("September 2012 Order").

---

[2] The Court assumes the parties' familiarity with the facts underlying this action and will recount only those pertinent to the pending Motions to intervene and the proposed Settlement Agreement.

[3] The remaining Defendants, all United States officers or agencies, have agreed to the Stipulation but are not parties to the Settlement Agreement.

Pursuant to the September 2012 Order, the DOI filed an Amendment to the 2008 ROD on February 5, 2014. Dkt. Nos. 334, 334-1.

Under the Settlement Agreement, Plaintiffs agree to dismiss their claims in this action with prejudice.[4] SA § VI(A)(1)(a). Plaintiffs also agree not to administratively or judicially oppose future OIN trust applications, subject to certain limitations. SA § VI(B).

**B. Settlement of Tax Foreclosure Litigation**

Madison and Oneida Counties each previously sought to foreclose on OIN-owned land for nonpayment of taxes. See Oneida Indian Nation v. Madison County, 665 F.3d 408, 413-14 (2d Cir. 2011). The OIN sued in federal court to enjoin the Counties from foreclosing, and extensive litigation ensued in the Northern District, the Second Circuit, and the Supreme Court. See id. The Settlement Agreement provides for the settlement of these disputes. SA § VI(A)(2)-(3). The Counties agree to undo all acts taken to foreclose on the OIN to collect property taxes. Id. § VI(A)(3). They also agree to stipulate to entries of final judgment in the district court actions before Judge Hurd, Oneida Indian Nation v. Madison County, No. 00-CV-0506 (N.D.N.Y. filed Mar. 30, 2000), and Oneida Indian Nation v. Oneida County, No. 05-CV-0945 (N.D.N.Y. filed July 27, 2005), and to withdraw their petition for a writ of certiorari filed in the Supreme Court in Madison and Oneida Counties v. Oneida Indian Nation, No. 12-604. SA § VI(A)(2). The State agrees to withdraw its amicus brief filed in the Supreme Court. SA § VI(A)(2)(a).

---

[4] The Settlement Agreement provides for dismissal of this case. It does not affect the four related cases challenging the 2008 ROD: Upstate Citizens for Equality v. United States, No. 08-CV-0633 (N.D.N.Y. filed June 16, 2008); Town of Verona v. Jewell, No. 08-CV-0647 (N.D.N.Y. filed June 19, 2008); City of Oneida v. Jewell, No. 08-CV-0648 (N.D.N.Y. filed June 19, 2008); and Cent. N.Y. Fair Bus. Ass'n v. Jewell, No. 08-CV-0660 (N.D.N.Y. filed June 21, 2008).

### C. The OIN Gaming Exclusivity Provision

Although until recently the New York State Constitution prohibited casino gaming, the federal Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721, preempted the State's ban and allowed the OIN to operate the Turning Stone Casino in Oneida County pursuant to a compact negotiated with the State in 1993. See Town of Verona v. Cuomo, No. 13-CV-1100, 2013 WL 5839839, at *1 (N.D.N.Y. Oct. 30, 2013) (Kahn, J.); Dalton v. Pataki, 835 N.E.2d 1180, 1189-92 (N.Y. 2005). The Settlement Agreement guarantees the OIN a ten-county geographic exclusivity zone, ensuring that it remains the only entity operating a casino in that region:

> [T]he [OIN] shall have total exclusivity with respect to the installation and operation of Casino Gaming and Gaming Devices, by the State or any State authorized entity or person, within the following geographic area: Oneida County, Madison County, Onondaga County, Oswego County, Cayuga County, Cortland County, Chenango County, Otsego County, Herkimer County and Lewis County. . . .
>
> The State shall not legalize, authorize or consent to or engage in, Casino Gaming or the installation or operation of any Gaming Device within the zone of exclusivity . . . .

SA § IV(A)-(B) ("Exclusivity Provision").

### D. Enforcement

The Settlement Agreement provides that the Court will reserve and retain exclusive jurisdiction to enforce it. SA § VII(E). The OIN and the State waive all immunity from suit for the limited purpose of enforcement of the Settlement Agreement. SA § VII(A). Although the Settlement Agreement provides for arbitration of alleged disputes, "material breaches"—which are defined to include breaches of the Exclusivity Provision and the trust and tax litigation provisions discussed *supra*—can be resolved only through judicial enforcement by the Court. SA §§ II(I), VII(C)-(D).

4

### III.    MOTION TO INTERVENE STANDARD

#### A.  Intervention as of Right

Federal Rule of Civil Procedure 24(a)(2) allows a proposed intervenor to intervene as of right.  The proposed intervenor must: "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action."  D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001).  "Denial of the motion to intervene is proper if any of these requirements is not met."  Id.

#### B.  Permissive Intervention

"[O]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b)(1)(B).  "The district court has broad discretion to deny an applicant's motion for intervention under Rule 24(b)(2)."  Catanzano ex rel. Catanzano v. Wing, 103 F.3d 223, 234 (2d Cir. 1996).  When deciding whether to exercise that discretion in favor of allowing intervention, "a court must examine whether intervention will prejudice the parties to the action or cause undue delay."  Envirco Corp. v. Clestra Cleanroom, Inc., No. 98-CV-0120, 2002 WL 31115664, at *4 (N.D.N.Y. Sept. 24, 2002) (citing D'Amato, 236 F.3d at 84).  The Court may also consider "the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986) (internal quotation marks omitted).

5

## IV. THE CAYUGA NATION'S MOTION TO INTERVENE

### A. Background

The CN is a federally recognized Indian nation. Indian Entities Recognized, 78 Fed. Reg. 26384-02 (May 6, 2013). It maintains a reservation in New York State, with more than half the reservation's land located in Cayuga County and the remainder in Seneca County. Dkt. No. 280-3 ("Halftown Declaration") ¶ 2. The CN has applied to the have some of its reservation land, including land within Cayuga County, taken into trust by the DOI. Id. ¶ 3.

#### 1. Motion to Intervene

Following announcement of the proposed Settlement Agreement, the CN sought to intervene in this action for the limited purpose of objecting to the Settlement Agreement. See CN Mot. Specifically, the CN argues that because the Exclusivity Provision's geographic exclusivity zone includes Cayuga County, which contains the majority of the CN's reservation land, approval of the Settlement Agreement will interfere with the CN's ability to conduct Class III gaming on its reservation land under IGRA.[5] CN Mem. at 6-7.

Plaintiffs, the OIN, and the United States opposed the CN's Motion. Dkt Nos. 288, 289,

---

[5] IGRA separates gaming into three classes. 25 U.S.C. § 2703(6)-(8). Class III gaming is the most highly regulated, and must be conducted pursuant to a valid tribal-state compact. 25 U.S.C. § 2710(d)(1); Dalton, 835 N.E.2d at 1187. A tribe seeking to conduct Class III gaming on Indian land must first request that the state negotiate with the tribe to develop a tribal-state compact to regulate gaming activity. 25 U.S.C. § 2710(d)(3). Upon receiving such a request, the state must negotiate with the tribe in "good faith." Id. If a state fails to engage in good-faith negotiations, the tribe may file suit in federal court against the state. Id. § 2710(d)(7)(A)(i). However, a state can invoke sovereign immunity to dismiss such a suit. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 47 (1996). If a tribe's suit is dismissed based on that defense, federal regulations allow a tribe to ask the DOI to issue Class III gaming procedures. 25 C.F.R. § 291.3. But see Texas v. United States, 497 F.3d 491, 509 (5th Cir. 2007) (invalidating 25 C.F.R. § 291 as an unreasonable interpretation of IGRA); Report-Rec. at 24-25 & n.9.

290.  On September 11, 2013, Judge Peebles issued a Report-Recommendation[6] finding that the

CN should be permitted to intervene for the sole purpose of lodging objections to the Settlement

Agreement.  Report-Rec. at 16-27.  Plaintiffs and the OIN filed Objections to the Report-

Recommendation, and the CN responded.  Dkt. Nos. 312 ("Plaintiffs' Objections"); 313 ("OIN's

Objections"); 316 ("CN Response").

    *2.  The Waiver*

Upon filing the Settlement Agreement and the Stipulation in December 2013, the parties

sought to eliminate the CN's need to intervene by including a waiver of the Exclusivity Provision

by the OIN to the extent it could preclude casino gaming by the CN in Cayuga County (the

"Waiver"):

> To address the Cayuga Nation's objection [to the Settlement Agreement], the Oneida
> Nation hereby forever waives its rights to enforce, and will not enforce, Section IV of
> the settlement agreement with regard to (a) the installation and operation of Casino
> Gaming and Gaming Devices by the Cayuga Nation pursuant to the IGRA on land
> within the boundaries of the area claimed by the Cayuga Nation to constitute its
> reservation acknowledged in Article II of the Treaty of Canandaigua or (b) negotiation
> or execution by the State of New York of a compact with the Cayuga Nation for such
> gaming rights in conformance with 25 U.S.C. § 2710(d)(3)(A).  The Oneida Nation
> understands that it is, and intends to be, permanently bound by its waiver.  The Oneida
> Nation further understands, upon the Court's approval of the parties' stipulation based
> in part on the Oneida Nation's waiver, that the Oneida Nation is and forever will be
> judicially estopped to take a different or contrary position.  The Oneida Nation requests
> that its foregoing enforcement waiver be incorporated by reference in the Court's Order
> of dismissal, and the United States and the State join in that request.

Letter Mot. at 2.  The State accepts the OIN's Waiver, and the Counties do not object.  Id.

Although the CN welcomes the Waiver, it argues that it should nevertheless be allowed to

---

    [6] Judge Peebles formatted his opinion on the CN's Motion as a report and recommendation
to the Court because he found it unclear whether a decision on a request to intervene is non-
dispositive and therefore within a magistrate judge's authority to decide absent consent of the
parties.  Report-Rec. at 11-13.

become a party to this action so that it may invoke the Court's jurisdiction to enforce the terms of the Waiver. Dkt. No. 328 at 1-2. The CN maintains that the Waiver does not moot its Motion. Id.

**B. Standard of Review**

A district court must review *de novo* any objected-to portions of a magistrate judge's report-recommendation or specific proposed findings or recommendations therein and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b); accord FED. R. CIV. P. 72(b); see also Morris v. Local 804, Int'l Bhd. of Teamsters, 167 F. App'x 230, 232 (2d Cir. 2006); Barnes v. Prack, No. 11-CV-0857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Chylinski v. Bank of Am., N.A., 434 F. App'x 47, 48 (2d Cir. 2011); Barnes, 2013 WL 1121353, at *1; Farid v. Bouey, 554 F. Supp. 2d 301, 306-07 & n.2 (N.D.N.Y. 2008).

**C. Discussion**

In recommending that the CN's Motion be granted for the limited purpose of objecting to the Settlement Agreement, Judge Peebles found that: (1) the CN has an interest in this action that might be impaired in light of the proposed Settlement Agreement; (2) the existing parties do not adequately represent that interest; and (3) the CN's Motion is timely. Report-Rec. at 16-27. Plaintiffs object to Judge Peebles's conclusion that the CN has an interest that might be impaired

by the Settlement Agreement. Pls.' Objs. at 5-12.[7]

The CN's purported interest in the litigation arises from the effect the Settlement Agreement's Exclusivity Provision could have on the CN's efforts to engage in casino gaming under IGRA. Report-Rec. at 16-17. More than half of the CN's reservation land lies in Cayuga County. Halftown Decl. ¶ 2. The CN has applied to the DOI to place certain of its reservation lands into trust. Id. ¶ 3. Although the pending application does not include a request to designate these trust lands for Class III gaming, the current CN leadership has stated an interest in pursuing Class III gaming under IGRA.[8] Report-Rec. at 9-10 & n.4, 25-26; Dkt. No. 290-4. The CN asserts that should it petition the State to engage in good-faith negotiations over a tribal-state gaming compact, good-faith negotiations would require considering the authorization of casino gaming within Cayuga County. Report-Rec. at 17; CN Resp. at 10-13. However, such authorization would provide grounds for the OIN to invoke the jurisdiction of the Court and enforce the Settlement Agreement against the State. Therefore, according to the CN, ratification of the

---

[7] Although the OIN filed Objections, it does not object to the "limited intervention defined by Judge Peebles." OIN's Objs. at 4. The OIN only objects to the Report-Recommendation: (1) to the extent it is "read as conferring [on the CN] a right to appeal an order approving" the Settlement Agreement; and (2) "[t]o the extent that the R&R is understood as having resolved merits issues . . . ." Id. at 5-6. The United States did not file objections. See Docket; Dkt. No. 304.

[8] Plaintiffs argue that a dispute within the CN has cast doubt on the current leadership's (the "Halftown Group") standing to assert claims under IGRA and to bring the CN's Motion. Pls.' Objs. at 7 n.5. In response to a CN resolution, the Bureau of Indian Affairs ("BIA") recognized new federal representatives of the tribe on August 19, 2011. See id.; Dkt. No. 290-6. That decision was stayed pending appeal to the Interior Board of Indian Appeals ("IBIA"). See 25 C.F.R. § 2.6; Report-Rec. at 10 n.4; Dkt. No. 289 at 3 n.2; CN Resp. at 9 n.5. Plaintiffs asserted in their Objections that were the IBIA to affirm the decision to recognize new federal representatives, the Halftown Group would lack standing to bring the CN's Motion. Pls.' Objs. at 7 n.5. The IBIA recently decided in favor of the Halftown Group and vacated the BIA decision of August 2011. Cayuga Indian Nation of N.Y., 58 I.B.I.A. 171 (2014).

Settlement Agreement will necessarily cause the State to take authorization of a CN casino in Cayuga County off the negotiating table. CN Resp. at 10-11. The CN asserts that this effect of the Exclusivity Provision infringes its rights under IGRA. See Report-Rec. at 17-18.

Judge Peebles agreed with the CN that, because approval of the Settlement Agreement would interfere with the CN's right to petition the State to engage in good-faith negotiations under IGRA, the CN has shown an interest sufficient to justify intervention. Id.

Plaintiffs raise three objections to this finding, arguing that the CN lacks an interest in the litigation because: (1) the CN does not have jurisdiction over its lands and therefore currently has no right to conduct Class III gaming on those lands; (2) even if the CN had a right to conduct Class III gaming on its lands, the Settlement Agreement does not impair that right because the Exclusivity Provision does not cover Seneca County; and (3) the Settlement Agreement in no way impairs the CN's right to demand that the State engage in good-faith negotiations under IGRA, which provides the exclusive remedy for any future injury the CN might suffer. Pls.' Objs. at 5-12. The CN responds that: (1) it does have jurisdiction over its lands such that it may pursue Class III gaming under IGRA; (2) by removing half of the CN's lands from consideration for a tribal-State gaming Compact, the Exclusivity Provision will necessarily prevent the State from negotiating in good faith; and (3) it is unclear that a future legal challenge against the State by the CN under IGRA would sufficiently protect the CN's right to engage in good-faith negotiations with the State. CN Resp. at 5-13.

The Court need not resolve these disputed questions as to the CN's rights under IGRA because the OIN's Waiver has rendered moot the CN's alleged interest in this litigation. That interest arises solely from the Exclusivity Provision, which bars the State from authorizing casino

gaming by any entity other than the OIN within the exclusivity zone, including within Cayuga County. The Settlement Agreement provides that the Court reserve and retain jurisdiction to enforce the terms of the Settlement Agreement, and that the Court is the exclusive forum for resolution of "material breaches," including breaches of the Exclusivity Provision. SA §§ II(I), VII(D)-(E). Therefore, the only potential infringement of the CN's rights under IGRA would be the judicial enforcement of the Settlement Agreement's Exclusivity Provision to preclude State authorization of casino gaming by the CN within Cayuga County. But the possibility of the Court issuing such an enforcement order has been irrevocably foreclosed by the Waiver. See Dkt. Nos. 328; 333. The CN therefore lacks an interest in this action and cannot intervene as of right under Federal Rule of Civil Procedure 24(a).

Furthermore, the Court finds no reason to permit the CN to intervene under Federal Rule of Civil Procedure 24(b). The CN states that, in spite of the Waiver, it wishes to become a party to this action so that the CN may "bind the parties to the commitments set forth in the [Waiver]." Dkt. No. 328 at 2. The CN argues that, absent intervention, it will be "left without any means of enforcing those commitments." Id. But neither the Settlement Agreement nor the Waiver creates any commitments between a party and the CN. Rather, the Waiver modifies commitments between the State and the OIN set forth in the Settlement Agreement. Additionally, the CN's interest in enforcement of the Waiver is adequately represented by the State: were the OIN to invoke the Exclusivity Provision to bar the State from authorizing CN casino gaming on its Cayuga County reservation lands, the State would invoke the Waiver. Finally, the OIN has bound itself to its commitments in the Waiver: the Waiver states that the OIN intends to be judicially estopped from ever arguing that it is not bound by the Waiver, and requests that the Court

11

incorporate the Waiver into the order of dismissal.  See  Oneida Indian Nation v. Madison County, 665 F.3d 408, 413-14 (2d. Cir. 2011) (stating that judicial estoppel bound the OIN to waiver of sovereign immunity, and that concern that waiving party could revoke waiver was therefore unfounded).  The Waiver has mooted the CN's interest in this litigation, and joinder of the CN would not contribute to the proper judicial enforcement of the Waiver's terms.  The CN's Motion is therefore denied.

## V.     THE STOCKBRIDGE-MUNSEE COMMUNITY'S MOTION TO INTERVENE

### A. Background

The SMC is a federally recognized Indian tribe and maintains a reservation in Wisconsin. Indian Entities Recognized, 78 Fed. Reg. 26384-02; Dkt. No. 303-8 ¶ 25.  The SMC claims that a tract of land in central New York was conveyed to it in the late eighteenth century and subsequently conveyed out of its possession through a series of unlawful transactions (the "New Stockbridge" reservation).  See Dkt. No. 303-1 ("SMC Memorandum") at 4-8.  The SMC has asserted its rights to this land in various fora.

### 1.  The Stockbridge Land Claim Action

In 1986, the SMC sued the State and the Counties for possession of the New Stockbridge reservation.  SMC Mem. at 9; see also Stockbridge-Munsee Cmty. v. New York, No. 86-CV-1140, 2013 WL 3822093, at *1 (N.D.N.Y. July 23, 2013) (Kahn, J.).  The OIN intervened in that action, arguing that the SMC's claim should be dismissed because the alleged New Stockbridge reservation was part of the OIN's reservation.  SMC Mem. at 9.  The Court dismissed the action on July 23, 2013, finding that the SMC's claims against the State were barred by Eleventh

Amendment sovereign immunity, its claims against the Counties were barred by <u>Sherrill</u> laches,[9] and its claims against the OIN were barred by tribal sovereign immunity. <u>Stockbridge-Munsee Cmty.</u>, 2013 WL 3822093, at *2-4. The SMC has appealed that dismissal to the Second Circuit. <u>See generally</u> <u>Stockbridge-Munsee Cmty. v. New York</u>, No. 13-3069 (2d Cir. filed Aug. 14, 2013).

### 2. Other Litigation

#### a. DOI Trust Litigation

In the 2008 ROD, the DOI—over the objections of the SMC—decided to accept lands claimed by the SMC into trust for the OIN. SMC Mem. at 13 n.11. The ROD noted that because "acquisition in trust status for Indian tribes under authority of Section 5 of the [Indian Reorganization Act] is separate from tribal land claims based on Federal common law and/or the Non-Intercourse Act, . . . . pending land claims of other Indian tribes to some or all of the lands claimed and owned by the [OIN], including the claims of . . . the [SMC], do not disqualify the Subject Lands from being acquired in trust for the [OIN]." 2008 ROD at 11.

The SMC first challenged the 2008 ROD by moving to enjoin the DOI from acquiring title to the land at issue until resolution of the SMC's land-claim action. <u>See</u> <u>Stockbridge-Munsee Cmty. v. New York</u>, No 86-CV-1140 (N.D.N.Y. July 23, 2008). The SMC withdrew that motion on July 17, 2008. <u>Id.</u>

The SMC also challenged the 2008 ROD by commencing an action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596, on June 17, 2008. <u>Stockbridge-Munsee Cmty. v. United States</u>, No. 09-CV-0050 (N.D.N.Y. filed Jan. 14, 2009). The SMC

---

[9] <u>See</u> <u>City of Sherrill v. Oneida Indian Nation of N.Y.</u>, 544 U.S. 197 (2005).

alleged that the DOI had failed to adequately analyze its property rights and the viability of its pending land-claim action, and had breached its trust responsibilities to the SMC. Id., Dkt No. 2 ¶¶ 90-105. On March 29, 2009, the SMC voluntarily dismissed the action under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Id., Dkt. No. 23.

### b. Tax Foreclosure Litigation

As described *supra*, the OIN previously brought suit in federal court to enjoin Madison and Oneida Counties from foreclosing on its property due to nonpayment of taxes. See supra Part II.B. The district court concluded in both cases that the Counties could not foreclose because: (1) the Nonintercourse Act, Act of July 22, 1790, ch. 33, 1 Stat. 137, rendered the OIN's properties inalienable; (2) tribal sovereign immunity barred suit against the OIN; (3) the foreclosure proceedings violated the Due Process Clause of the Fifth Amendment of the U.S. Constitution; and (4) the land at issue was exempt from taxation under New York law. See Oneida Indian Nation v. Madison County (Oneida I), 605 F.3d 149, 155 (2d Cir. 2010). The Second Circuit affirmed the district court judgment. Id. at 163.

The SMC had sought to intervene in both district court actions. See id. at 161 & n.9. The SMC argued that the tax foreclosure litigation threatened the property interests it asserted in its land-claim action. Id. at 161; SCM Mem. at 11. Both the district court and the Second Circuit rejected this argument and denied intervention, finding that the boundaries of the OIN and New Stockbridge reservations were not at issue. Oneida I, 605 F.3d at 161-63.

Following Oneida I, the Counties petitioned the Supreme Court for review. See Madison County v. Oneida Indian Nation, 131 S. Ct. 704, 704 (2011). While the petition was pending, the OIN's tribal council passed an ordinance waiving the OIN's sovereign immunity from

14

enforcement of real property taxation through foreclosure by state and local governments.  See

Oneida Indian Nation v. Madison County (Oneida II), 665 F.3d 408, 414 (2d Cir. 2011).  The

Supreme Court vacated and remanded to the Second Circuit, instructing it to address whether the

OIN's waiver ordinance required revisiting the issue of the OIN's sovereign immunity.  Madison

County, 131 S. Ct. at 704.  On remand, the Second Circuit vacated the district court's judgment to

the extent it rested on tribal sovereign immunity and the Nonintercourse Act, an argument the

OIN had abandoned on appeal.  Oneida II, 665 F.3d at 426-27.  The Second Circuit also held that

the foreclosure proceedings satisfied due process.  Id. at 427-36.  Therefore, the OIN's only

remaining claim was based on state law, specifically, state statutes providing that "[t]he real

property in any Indian reservation owned by the Indian nation, tribe or band occupying them shall

be exempt from taxation," N.Y. REAL PROP. TAX LAW § 454, and that "[n]o taxes shall be

assessed, for any purpose whatever, upon any Indian reservation in this state, so long as the land

of such reservation shall remain the property of the nation, tribe or band occupying the same,"

N.Y. INDIAN LAW § 6.  Oneida II, 665 F.3d at 436.  The SMC sought to intervene again, arguing

that if, in light of the OIN's sovereign immunity waiver, the Second Circuit proceeded to reach the

state-law claims, its decision could impair the SMC's asserted land claim because the state-law

question implicates the boundaries of the New Stockbridge reservation.  See id. at 442-43; SMC

Mem. at 11-12.  But the Second Circuit concluded that the district court could not properly

exercise supplemental jurisdiction over these state-law claims given the dismissal of the federal

claims, and therefore denied the SMC's renewed motion to intervene.  Oneida II, 665 F.3d at 443,

436-40.

On September 25, 2013, the SMC moved to intervene under Federal Rule of Civil

Procedure 24(a), or alternatively, under Rule 24(b), for the limited purpose of objecting to the

Settlement Agreement.  SMC Mot.; SMC Mem. at 2.  Plaintiffs, the United States, and the OIN

each filed Responses in Opposition to the SMC's Motion, and the SMC replied.  Dkt. Nos. 326

("Plaintiffs' Opposition"); 327 ("OIN's Opposition"); 329 ("United States' Opposition"); 332

("SMC Reply").

**B. Discussion**

The SMC asserts that approval of the Settlement Agreement will: (1) "resolve in the OIN's

favor a central issue" in the SMC's pending land-claim litigation by "defining the Stockbridge

treaty reservation as part of the Oneida Treaty Reservation"; (2) resolve the "reservation-boundary

issue" that was at issue in the tax-foreclosure litigation "in the OIN's favor"; and (3) allow the

DOI to acquire in trust lands claimed by the SMC, thereby "divest[ing]" the federal courts of

jurisdiction over its land-claim action.  Id. at 2-3, 17-18.  In opposing the SMC's Motion, the

parties make several arguments, including: (1) the SMC's Motion is untimely to the extent it

challenges the 2008 ROD; and (2) approval of the Settlement Agreement will not impair any

interest of the SMC.  See Pls.' Opp'n at 10-16; OIN's Opp'n at 2-14; United States' Opp'n at 5-

12.

*1. Timeliness*

Plaintiffs and the OIN both argue that the SMC's Motion is untimely to the extent it seeks

to challenge or clarify the 2008 ROD.  Pls.' Opp'n at 11-13; OIN's Opp'n at 12-14.  Specifically,

they point out that the SMC previously initiated an action challenging the 2008 ROD.  Pls.' Opp'n

at 11; OIN's Opp'n at 12.  The SMC voluntarily dismissed that action on March 29, 2009, and did

not move to intervene in this action until 2013, despite four-and-a-half intervening years of active

litigation.  Pls.' Opp'n at 12.  Additionally, in June 2008 the SMC moved in its land-claim action

for a temporary injunction against any transfers of OIN trust land claimed by the SMC.  OIN's

Opp'n at 12; see also supra Part V.A.2.a.  The SMC quickly withdrew that motion following

discussion with the DOI and the U.S. Department of Justice.  OIN's Opp'n at 12; see also supra

Part V.A.2.a.

"The determination of the timeliness of a motion to intervene is within the discretion of

the district court, 'evaluated against the totality of the circumstances before the court.'"  D'Amato

v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001) (quoting Farmland Dairies v. Comm'r of the

N.Y. Dep't of Agric. & Markets, 847 F.2d 1038, 1043-44 (2d Cir. 1988)).  Circumstances

considered in this determination include: "(1) how long the applicant had notice of the interest

before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay;

(3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating

for or against a finding of timeliness."  United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d

Cir. 1994).

To the extent the SMC asserts an interest in this litigation because the 2008 ROD could

affect its own land claims, the SMC has had notice of that interest since at least 2008.  The SMC

argues that although the "question of the existence of the New Stockbridge reservation" was not

previously at issue in this case because the 2008 ROD expressly avoided deciding that question,

the Settlement Agreement has raised the issue by purporting to resolve the boundary dispute in the

OIN's favor.  SMC Reply at 6.  However, as explained *infra*, the Settlement Agreement does no

such thing.  The SMC's interest in the outcome of the OIN land-into-trust litigation is the same now as it was prior to proposal of the Settlement Agreement.

The Court also finds that the existing parties would be substantially prejudiced by the SMC's joinder at this very late stage.  Indeed, granting the SMC's Motion might jeopardize, or at least delay, approval of a broad agreement between Plaintiffs and the OIN concerning numerous long-standing issues of substantial import.  See In re Holocaust Victim Assets Litig., 225 F.3d 191, 198 (2d Cir. 2000) (denying late-filed motion to intervene where granting it would jeopardize settlement agreement); Sokaogon Chippewa Cmty. v. Babbitt, 214 F.3d 941, 945-50 (7th Cir. 2000) (denying Indian tribe's motion to intervene where intervention was not sought until "settlement was imminent").  Finally, for the reasons explained *infra*, denial of the SMC's Motion will not cause it any prejudice.  The SMC's Motion is therefore untimely to the extent it seeks to clarify or challenge the 2008 ROD.

### 2.  Impairment of the Stockbridge-Munsee Community's Interests

#### a.  The Land-Claim Action

One issue left undecided in the SMC land-claim litigation was whether the SMC possesses property rights in the land at issue "because they are situated within the Stockbridge treaty reservation, or whether those lands are part of the Oneida treaty reservation."  SMC Mem. at 10. The SMC asserts that it has an interest in any legal determination of the ownership of those lands, and that the Settlement Agreement will impair that interest because it "purports to resolve" the issue "in the OIN's favor."  Id.  Specifically, the SMC objects to § II(Q) of the Settlement Agreement, which provides: "'Reservation', as used in this Agreement, means the land within Madison and Oneida County acknowledged as the reservation of the Oneida Nation in Article II of

the Treaty of Canandaigua, 7 Stat. 44 (1794), as depicted on the map attached as Exhibit I." The attached map depicts only the Oneida Reservation, with no reference to a Stockbridge reservation. See SA, Ex. I. The SMC therefore argues that the Court's approval of the Settlement Agreement—including its reference to the attached map—will constitute a court order judicially resolving the reservation-boundary dispute in favor of the OIN. SMC Mem. at 16.

For several reasons, the SMC is incorrect. First, nothing in the Settlement Agreement purports to resolve the reservation-boundary dispute between the SMC and the OIN. Rather, the definition of "Reservation" in § II(Q) limits it to "as used in this Agreement." The term "reservation" therefore simply defines an area of land for the purposes of other provisions of the Settlement Agreement.

Second, a settlement agreement, even when incorporated into a court order such that it becomes a consent decree, remains a contract between the parties to the agreement. See, e.g., P.J. ex rel. W.J. v. Katz, No. 10-3586-CV, 2013 WL 6726948, at *2 (2d Cir. Dec. 23, 2013) (stating that ordinary rules of contract interpretation apply to consent decree). "[A] party must consent to a consent decree before that decree can be enforced against that party." Tourangeau v. Uniroyal, Inc., 101 F.3d 300, 306 (2d Cir. 1996). "Those who are not parties to a consent decree are free to challenge the decree and actions taken under it." United States v. City of New York, 198 F.3d 360, 366 (2d Cir. 1999). Here, only Plaintiffs and the OIN are signatories to the Settlement Agreement. Accordingly, the Settlement Agreement's definition of "Reservation" is binding only between Plaintiffs and the OIN and only for the purposes of the Settlement Agreement. It cannot be invoked to bar the SMC from pursuing its land claim. See Arizona v. California, 530 U.S. 392, 414, supplemented, 531 U.S. 1 (2000) ("[C]onsent agreements ordinarily are intended to preclude

any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented." (quoting 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4443 (1981))).

Third, although the Settlement Agreement requires that Plaintiffs withdraw their opposition to the OIN's land-into-trust applications to the extent the OIN seeks trust status for certain lands, nothing in the Settlement Agreement binds the DOI as to the ultimate determination of the OIN's applications. The United States is *not* a signatory to the Settlement Agreement. That the United States does not object to the dismissal of Plaintiffs' claims does not somehow imply its consent to an agreement that it has not signed and that does not purport to have any binding effect on it. See Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 522 (1986) ("[I]t is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree."); see also United States v. Nozik, 149 F.3d 1185 (6th Cir. 1998) (holding that defendant who did not sign consent decree lacked standing to challenge decree because he was not bound by it and therefore had not suffered an injury). Therefore, no entity can invoke the terms of the Settlement Agreement to force the DOI to decide trust applications in a certain way.

Relatedly, the DOI is not free to arbitrarily decide trust applications. See United States' Opp'n at 11. Rather, it must make those determinations in accordance with the applicable federal regulations. See 25 C.F.R. §§ 151.10-151.11. If and when the DOI considers a future application by the OIN seeking to place in trust land that falls within the alleged New Stockbridge reservation, the DOI will need to decide the application based on the applicable regulations; the Settlement Agreement does not, and could not, alter those regulations. See United States' Opp'n

at 11.  Similarly, should the SMC ever request that the DOI accept into trust SMC's fee land within the New Stockbridge reservation, the DOI's decision will in no way depend on the terms of the Settlement Agreement.  Furthermore, the SMC remains free to challenge any future DOI trust decision through an action under the APA.  See Babbitt, 214 F.3d at 949 (denying tribe's motion to intervene to object to settlement agreement in suit challenging DOI's determination of other tribe's trust application because, *inter alia*, tribe remained free to challenge DOI's ultimate determination under APA).

Finally, the United States will not be able to invoke the Settlement Agreement in any future dispute with the SMC because—having argued that the Settlement Agreement's incorporation into the Court's order of dismissal will not determine the existence and boundaries of the New Stockbridge reservation, or influence future agency decisions in land-into-trust applications implicating the reservation-boundary dispute—the United States will likely be judicially estopped from taking a contrary position in future litigation.  See, e.g., United States v. Owens, 54 F.3d 271, 274-76 (6th Cir. 1995) (applying judicial estoppel to U.S. Postal Service based on arguments presented in previous litigation); N. Alaska Env. Cent. v. Lujan, 961 F.2d 886, 891 (9th Cir. 1992) (applying judicial estoppel to U.S. Park Service based on representations made in briefs before district court); see also 18B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4477 (2d ed. 2013).

Accordingly, the Court finds that an order of dismissal incorporating the Settlement Agreement will not impair any interest of the SMC based on its asserted land claim.

### b.  The Tax Foreclosure Litigation

In the federal tax foreclosure litigation, the courts never reached the question of whether

the taxation of certain OIN-owned lands was permissible under state law because they were located in the New Stockbridge reservation rather than the OIN reservation.  See Oneida II, 665 F.3d at 443.  The SMC argues that its interests will be impaired by approval of the Settlement Agreement because it resolves that reservation-boundary-dispute issue.  SMC Mem. at 3.  The SMC bases this argument on the definition of "reservation" in § II(Q) of the Settlement Agreement.  Id. at 17-18.  For the reasons discussed *supra*, this argument fails.  The definition of "reservation" in the Settlement Agreement applies only to the Settlement Agreement.  Accordingly, it is irrelevant to any subsequent proceeding resolving the merits of the OIN-SMC reservation-boundary dispute.

### c.  The Quiet Title Act

The SMC also asserts that the DOI's acquisition of lands it claims as its reservation might deprive the federal courts of jurisdiction over its land-claim action because the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a(a), "bars challenges by competing claimants to the federal government's interest in trust or restricted Indian lands."  SMC Mem. at 18.

The QTA waives the United States' sovereign immunity from quiet title suits.  28 U.S.C. § 2409a(a); see also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 132 S. Ct. 2199, 2205 (2012).  However, the QTA's waiver of immunity does not extend to "trust or restricted Indian lands."  28 U.S.C. § 2409a(a).  The SMC therefore speculates that if title to land it claims were transferred to the United States in trust for the OIN, the United States' sovereign immunity would bar the SMC from proceeding with its land-claim action as to any parcels placed into trust.  However, the SMC does not explain how this possibility gives it a right to intervene in this litigation.  To the extent the SMC seeks to prevent the transfer of title to lands taken into trust

pursuant to the 2008 ROD, its attempt to intervene in this action is untimely for the reasons stated *supra*. To the extent the SMC wishes to prevent transfers of land based on additional, future trust applications by the OIN, nothing in the Settlement Agreement precludes the SMC from challenging the determination of those future applications under the APA. The Settlement Agreement itself does not transfer title to any lands, and the QTA does not bar APA actions challenging the procedures employed by the DOI in determining trust applications. <u>Patchak</u>, 132 S. Ct. at 2204-10. Accordingly, approval of the Settlement Agreement does not place any new constraints on the SMC's pursuit of its land claim.[10]

For all these reasons, the Court's incorporation of the Settlement Agreement into its order of dismissal will not impair any interests of the SMC, and the SMC is therefore not entitled to intervention as of right. The Court furthermore finds no reason to allow the SMC to intervene under Rule 24(b), and so the SMC's Motion is denied.

## VI.     THE PARTIES' RULE 41(A)(2) STIPULATION OF DISMISSAL

Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff to obtain a court order dismissing an action "on terms that the court considers proper." All parties have agreed to a Stipulation of dismissal with prejudice conditioned on the approval of the Settlement Agreement, its incorporation into the order of dismissal, and the Court's retention of jurisdiction to enforce the

---

[10] As noted *supra*, the SMC's land-claim action was dismissed based on the State and the OIN's sovereign immunity and the Counties' invocation of <u>Sherrill</u> laches. <u>Stockbridge-Munsee Cmty.</u>, 2013 WL 3822093, at *2-4. Presumably, a dismissal of the land-claim action based on the United States' sovereign immunity would be no more prejudicial, and so the SMC's argument that such a dismissal would impair its interests necessarily implies that one or more of the bases for dismissal of the land-claim action will be overturned on appeal. Further consideration of this argument would therefore require a reconsideration of the dismissal of the land-claim action. Intervention in this action is not the appropriate vehicle for the reconsideration or appeal of that decision.

23

Settlement Agreement. Stipulation; Dkt. No. 321; see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994) ("When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), . . . the parties' compliance with the terms of the settlement contract (or the court's 'retention of jurisdiction' over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order."). The Court therefore dismisses this action, incorporates the terms of the Settlement Agreement and the Waiver into the order of dismissal, and retains jurisdiction to enforce the Settlement Agreement.

## VII.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the September 11, 2013 Report and Recommendation (Dkt. No. 300) is **REJECTED as moot**; and it is further

**ORDERED**, that the Cayuga Nation's Motion (Dkt. No. 280) to intervene is **DENIED as moot**; and it is further

**ORDERED**, that the Stockbridge-Munsee Community, Band of Mohican Indians' Motion (Dkt. No. 303) to intervene is **DENIED**; and it is further

**ORDERED**, that the parties' Stipulation (Dkt. No. 319-1) of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) is **GRANTED**; and it is further

**ORDERED**, that the Settlement Agreement (Dkt. No. 319-2) between Intervenor-Defendant Oneida Indian Nation, Plaintiff the State of New York, Plaintiff Madison County, and Plaintiff Oneida County, is **APPROVED**. The terms of the Settlement Agreement are **INCORPORATED** into this Order, and the Court **RETAINS JURISDICTION** to enforce the Settlement Agreement; and it is further

**ORDERED**, that Intervenor-Defendant Oneida Indian Nation's Waiver of its rights to enforce Section IV of the Settlement Agreement with regard to: (a) the installation and operation of Casino Gaming and Gaming Devices by the Cayuga Nation pursuant to the Indian Gaming Regulatory Act on land within the boundaries of the area claimed by the Cayuga Nation to constitute its reservation acknowledged in Article II of the Treaty of Canandaigua; or (b) negotiation or execution by the State of New York of a compact with the Cayuga Nation for such gaming rights in conformance with 25 U.S.C. § 2710(d)(3)(A), as set forth fully in the Letter Motion (Dkt. No. 319) on behalf of all parties, is **INCORPORATED** into this Order; and it is further

**ORDERED**, that Plaintiffs' claims are **DISMISSED with prejudice**, each party to bear its own costs; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties and on the putative Intervenors in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED:     March 04, 2014
           Albany, New York

Lawrence E. Kahn
U.S. District Judge